**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| RACHEL CYMBALISTA and ARIEL CYMBALISTA, on behalf of themselves and all others similarly situated,<br><br>Plaintiff,<br><br>- against –<br><br>JPMORGAN CHASE BANK, N.A.,<br><br>Defendant. | Case No.<br><br>JURY TRIAL DEMANDED |

## CLASS ACTION COMPLAINT

Plaintiffs Rachel and Ariel Cymbalista ("Plaintiffs"), individually on behalf of themselves and on behalf of all others similarly situated, brings this action, based upon personal knowledge as to themselves and on information and belief as to all other matters, against JPMorgan Chase Bank, N.A. ("JPMCB" or "Defendant"), and allege as follows:

## NATURE OF THE ACTION

1.     This is a class action based on Defendant's breaches of uniform mortgage agreements and violations of state statutes, including New York General Obligation Law §5-601 ("NY Gen. Oblig. Law §5-601"), that require mortgage lenders to pay the borrower interest for monies held by them or their loan servicing agents or affiliates in escrow accounts.  As alleged herein, during all or part of the Class Period (defined below), Plaintiffs and members of the Classes (defined below) paid their own monies into an escrow accounts controlled by Defendant and/or its loan servicing agents or affiliates, but have not received the interest due to them under the contracts and state laws that require the payment of interest on mortgage escrow accounts.

2.     Plaintiffs and the Classes bring this action for breach of contract based on violations of New York Gen. Oblig. Law §5-601 and similar state escrow interest statutes,

violations of New York Gen. Oblig. Law §5-601, violations of New York General Business Law ("GBL") §349 and similar consumer protection statutes and common law unjust enrichment.

3.    Plaintiffs seek, among other relief, for themselves and members of the Classes, (1) the damages, statutory damages, exemplary damages and all remedies for breach of contact and those provided in the identified state escrow interest statutes and state consumer protection statutes; (2) injunctive, equitable and declaratory remedies, including restitution, disgorgement and constructive trust; and (3) reasonable attorneys' fees and costs.

## JURISDICTION AND VENUE

4.    This Court has subject matter jurisdiction under 28 U.S.C. §1332(d) and the Class Action Fairness Act ("CAFA") because this is a class action in which the subject matter in controversy exceeds the sum or value of $5,000,000.00 (exclusive of interest and costs), there are in excess of 100 class members and Plaintiff and Defendant reside in different states.

5.    This Court also has personal jurisdiction over Defendant.  Defendant maintains its principle place of business in New York, maintains offices and employees in New York and this District, maintains continuous and systemic contacts with New York and this District, does business in New York and this District specifically related to the claims alleged in this Complaint, and have sufficient minimum contacts with New York so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

6.    Venue is proper in this District under 28 U.S.C. §1391.

## PARTIES

7.    Plaintiffs are husband and wife and citizens and residents of the State of New York, residing in Nassau County.  During the Class Periods and continuing to the present,

Plaintiffs were borrower mortgagors to mortgage loans originated by JPMC or its affiliates in 2004 and 2011.  The mortgaged property is a single-family home and has been owner-occupied at all times during the Class Periods.  During the Class Periods, JPMCB maintained, or required its affiliates and agents to maintain, an escrow account holding Plaintiffs' monies related to their JPMCB mortgage loan but did not pay interest on those escrow monies as required by their mortgage agreements and New York law.  Plaintiffs were injured as a direct and proximate result, in the same manner as other Class members.

8.      Defendant JPMCB is a national banking association organized under the laws of the United States of America.  JPMCB is one of the largest mortgage lenders and servicers in the nation, servicing nearly $800 billion in home loans according to its parent JPMorgan Chase & Company's 2019 Form 10-K filed with the United States Securities and Exchange Commission. JPMCB's main office is located in Ohio.  JPMCB listed its address on Plaintiffs' February 28, 2011 *Consolidated Mortgage* as 1 Chase Manhattan Plaza, New York, NY  10081.

## SUBSTANTIVE ALLEGATIONS

9.      Defendant and/or its agent loan servicing affiliates maintain escrow accounts for their customers and borrowers, which escrow accounts hold their customers' monies used to pay property taxes and/or insurance premiums. Defendant and/or its agent loan servicing affiliates collect from their customers and borrowers a projected amount that the borrower will owe for tax and property insurance on the mortgaged property. Then, Defendant and/or their agent loan servicing affiliates directly pay the taxes and insurance due on their customers' and borrowers' mortgaged properties from the escrow accounts.

10.     Because the funds paid into an escrow account remain the *borrowers'* money, NY Gen. Obligation Law §5-601 requires all "mortgage investing institutions" to pay at least 2%

3

interest (or another rate set by the New York Department of Financial Services) on escrow account funds.  NY Gen. Oblig. Law §5-601 states as follows:

§5-601.  Interest on deposits in escrow with mortgage investing institutions:

Any mortgage investing institution which maintains an escrow account pursuant to any agreement executed in connection with a mortgage on any one to six family residence occupied by the owner or on any property owned by a cooperative apartment corporation, as defined in subdivision twelve of section three hundred sixty of the tax law, (as such subdivision was in effect on December thirtieth, nineteen hundred sixty), and located in this state shall, for each quarterly period in which such escrow account is established, credit the same with dividends or interest at a rate of not less than two per centum per year based on the average of the sums so paid for the average length of time on deposit or a rate prescribed by the superintendent of financial services pursuant to section fourteen-b of the banking law and pursuant to the terms and conditions set forth in that section whichever is higher. [1]

11.     Numerous other states where Class members reside and have mortgage loans owned by Defendant, including loans owned as a trustee of the trust holding the loans, have similar laws requiring that interest be paid on escrow accounts, including: California, Connecticut, Iowa, Maine, Maryland, Massachusetts, Minnesota, New Hampshire, Oregon, Rhode Island, Utah, Vermont and Wisconsin (collectively with NY Gen. Oblig. Law §5-601, the "State Escrow Interest Statutes").  *See* Cal. Civ. Code §2954.8(b) (California); Conn. Gen. Stat. §49-2a (Connecticut); Iowa Code §524.905(2) (Iowa); M.E. Rev. Stat. Ann. Tit. 33, §504 (Maine); M.D. Comm. Law Code Ann. §12-109 (Maryland); Mass. Gen. L. ch. 183 §61 (Massachusetts); Minn. Stat. Ann. §47.20 subd. 9 (Minnesota); N.H. Rev. Stat. Ann §384:16-c *et seq.* (New Hampshire); OR. Rev. Stat §§ 86.205, 86.245 (Oregon); R.I. Gen. Laws §19-9-2

---

[1]     As empowered by New York Banking Law §14-b, on January 19, 2018, the Superintendent of the New York Department of Financial Services issued an Order with respect to the interest required to be paid on escrow accounts established in connection with loans secured by 1-6 family owner-occupied residences or any property owned by a cooperative apartment cooperation.  Under the new rule, the rate must be at least equal to the lesser of 2.00% or (ii) the 6-month yield on U.S. Treasury securities on the last business day of the preceding calendar quarter.

(Rhode Island); Utah Code Ann. §7-17-3 *et seq.* (Utah); Vt. Stat. Ann. tit. 8, §10404 (Vermont); and Wis. Stat. §138.052(5) (Wisconsin).

12.      Plaintiffs have made and continued to make monthly payments into an escrow account maintained by Defendant and/or its agent loan servicing affiliates for the pre-payment of property taxes and insurance.  Nevertheless, although required by NY Gen. Oblig. Law §5-601, Defendant has not paid nor caused its agent loan servicing affiliates to pay Plaintiffs the interest mandated by NY Gen. Oblig. Law §5-601.  Defendant has therefore breached Mortgage agreements requiring it to pay escrow interest as required by New York law, violated NY Gen. Oblig. Law §5-601 and engaged in deceptive practices in violation of GBL §349.[2]

13.      Plaintiffs obtained their first mortgage loan for their Nassau County home from JPMorgan Chase Bank in 2004.  That loan was secured by a uniform Mortgage that stated, "This Mortgage is governed by Federal law and the law that applies in the place that the Property is located."

14.      Plaintiffs obtained another mortgage loan from JPMCB in 2011.  That loan was secured by a uniform Gap Mortgage, prepared on "New York – Single Family – Fannie Mae / Freddie Mac UNIFORM INSTRUMENT."   Section 3(b) of that 2011 Mortgage stated in relevant part:

> Lender will not be required to pay me any interest or earnings on the Escrow Funds *unless either* (1) Lender and I agree in writing that Lender will pay interest on the Escrow Funds, or *(2) Applicable Law requires Lender to pay interest on the Escrow Funds.*  (Emphasis added).

The "Applicable Law" for Plaintiff's 2011 Gap Mortgage is set forth in Section 16 ("Law That Governs This Security Instrument") and is defined to include both federal law and "the law of

---

[2]      Defendant's policy of failing to pay interest on escrow accounts is contrary to the practice of other nationally-chartered banks, such as but not limited to Wells Fargo Bank, N.A., the largest mortgage originator in the United States, which pays interest on it borrowers' escrow accounts.

New York State."

15.     Plaintiffs consolidated their two JPMCB mortgage loans into a single loan on February 28, 2011.  That consolidated mortgage loan was secured by a *Consolidated Mortgage* (the "Mortgage Agreement") listing the "Lender" as JPMorgan Chase Bank, N.A. and prepared on "New York – Single Family – Fannie Mae / Freddie Mac UNIFORM INSTRUMENT." Section 3(b) of the Mortgage Agreement stated in relevant part:

> Lender will not be required to pay me any interest or earnings on the Escrow Funds *unless either* (1) Lender and I agree in writing that Lender will pay interest on the Escrow Funds, or *(2) Applicable Law requires Lender to pay interest on the Escrow Funds.*  (Emphasis added).

The Applicable Law for Plaintiff's 2011 Mortgage Agreement is set forth in Section (I) ("Applicable Law") and Section 16 ("Law That Governs This Security Instrument") and is defined to include both federal law and "the law of New York State."

16.     According to the terms of the Plaintiffs' and JMPCB's February 28, 2011 *Consolidation, Extension and Modification Agreement*, Section IV, the *Consolidated Mortgage* "will supersede all terms, covenants and provision of the [consolidated] Mortgages."  That *Agreement* confirmed that Plaintiffs' home is a "one (1) or two (2) family dwelling only."  That Agreement further confirmed that Plaintiffs' 2004 Mortgage and 2011 Gap Mortgage were both given by Plaintiffs "in favor of JPMorgan Chase Bank, N.A."

17.     JPMCB did not pay Plaintiffs interest on the monies in Plaintiffs' escrow account maintained for their JPMCB loan as required by New York law.  By failing to pay interest on Plaintiff's escrow funds, as required by NY Gen. Oblig. Law §5-601, Defendant breached Section 3(b) of the Covenants set forth in the uniform Mortgage Agreement.

18.     Plaintiffs made the final payment on their JPMCB loan in or about June 2019.

19.     Upon information and belief, Class members' form mortgage agreements adopt and require compliance with the State Escrow Interest Statutes in the states where the State Escrow Interest Statutes apply.  *See e.g.*, *Lusnak v. Bank of Am., N.A.*, 883 F.3d 1185 (9th Cir. 2018), *rehearing and rehearing en banc denied* 2018 U.S. App. LEXIS 12745 (May 16, 2018), *cert. denied* 139 S. Ct. 567 (2018); *Hymes v. Bank of Am.*, *N.A.*, No. 18-cv-2352 (RRM), 18-cv-4157 (RRM), 2019 U.S. Dist. LEXIS 172107 (E.D.N.Y. Sept. 30, 2019); *McShannock v. JP Morgan Chase Bank N.A.*, 354 F. Supp. 3d 1063 (N.D. Cal. 2018) (denying motion to dismiss claims asserting JPMCB's violations of California escrow interest statute).

## NO FEDERAL PREEMPTION DEFENSE

20.     Neither NY Gen. Oblig. Law §5-601 nor any other State Escrow Interest Statute is preempted by federal law or regulation.

21.     Prior to July 21, 2010, Defendant may have been relying on the supposed preemption of New York law by the National Banking Act of 1864 ("NBA"), or other federal law.  However, the Dodd-Frank Wall Street Reform and Consumer Protection Act (Pub. L. No. 111-203, H.R. 4173) (the "Dodd-Frank Act"), enacted on July 21, 2010, clarified the relevant NBA preemption standard, as follows:

State consumer financial laws[3] are preempted, only if

(A)     application of a State consumer financial law would have a discriminatory effect on national banks, in comparison with the effect of the law on a bank chartered by that State;

(B)     in accordance with the legal standard for preemption in the decision of the Supreme Court of the United States in *Barnett Bank of Mario County, N.A. v. Nelson, Florida Insurance Commissioner, et al.*, 517 U.S. 25 (1996), the State consumer financial law prevents or significantly interferes with the exercise by

---

[3]     "State consumer financial law" means a state law that does not discriminate against national banks and that "directly and specifically" regulates financial transactions between a national bank and consumer.  12 U.S.C. §25(a)(2).

the national bank of its powers; and any preemption determination under this subparagraph may be made by a court, or by regulation or order of the Comptroller of the Currency on a case-by-case basis, in accordance with the applicable law; or

(C)    the State consumer financial law is preempted by a provision of Federal law other than [the National Bank Act].

15 U.S.C. §25(b)(1).

22.    The question of whether a State Escrow Interest Statute is preempted by the NBA was resolved by the Dodd-Frank Act itself, in which Congress expressly mandated that, "[i]f prescribed by applicable State or Federal law, each creditor shall pay interest to the consumer on the amount held in any impound, trust, or escrow account that is subject to this section in the manner as prescribed by that applicable State or Federal law." 15 U.S.C. §1639d(g)(3) (amending the Truth in Lending Act).  This provision reflects Congress's intent to permit States to enact and enforce laws that require mortgage lenders to pay interest on escrow accounts, and that a state law requiring payment of interest on an escrow account does not "prevent or significantly interfere with" a national bank's powers.[4]  Notably, the NBA does not preempt state laws that afford "greater protection" than federal finance laws (12 U.S.C §551(a)).

23.    15 U.S.C. §1639d(g)(3) is consistent with the regulations of the United States Department of Housing and Urban Development ("HUD"), which states that, "[w]here escrow funds are invested, the net income derived from this investment must be passed on to the mortgagor in the form of interest  *... in compliance with any state and/or regulatory agency requirements* governing the handling and/or payment of interest earned on a mortgagor's escrow account."  HUD Handbook 4330.1, Rev-5, §§ 2-5 (emphasis added).

---

[4]    The latest that 15 U.S.C. §1639d(g)(3) could have taken effect is January 21, 2013.  *See* Pub. L. 110-203, §1400(c)(3) (Title XIV of Dodd-Frank takes effect 18 months after transfer date unless regulations were previously issued); Bureau of Consumer Financial Protection Designated Transfer Date, 75 Fed. Reg. 57, 252 (Sept. 20, 2010) (indicating a "transfer date" of July 21, 2011).

24.     Defendant could not have reasonably relied on federal preemption of NY Gen. Oblig. Law §5-601 and similar State Escrow Interest Statutes after the enactment of the Dodd-Frank Act because neither the NBA nor federal banking regulations promulgated by the OCC preempt the State Escrow Interest Statutes.  *See e.g., Lusnak v. Bank of Am., N.A.*, 883 F.3d 1185 (9th Cir. 2018), *rehearing and rehearing en banc denied* 2018 U.S. App. LEXIS 12745 (May 16, 2018), *cert. denied* 139 S. Ct. 567 (2018); *Hymes v. Bank of Am*., *N.A.*, No. 18-cv-2352 (RRM), 18-cv-4157 (RRM), 2019 U.S. Dist. LEXIS 172107 (E.D.N.Y. Sept. 30, 2019); *McShannock v. JP Morgan Chase Bank N.A.*, 354 F. Supp. 3d 1063 (N.D. Cal. 2018).

25.     Further undercutting an argument that NY Gen. Oblig. Law § 5-601 substantially interferes with Defendant's banking operations, on information and belief, Defendant has paid or pays escrow interest on some, but not all, escrow accounts on New York mortgage loans.

## CLASS ACTION ALLEGATIONS

26.     Plaintiffs bring this action as a class action pursuant to Fed. R. Civ. P. 23(a), (b)(2) and (b)(3) on behalf of themselves and the following "Multi-State Class:"

> All mortgagors in the states of California, Connecticut, Iowa, Maine, Maryland, Massachusetts, Minnesota, New Hampshire, New York, Oregon, Rhode Island, Utah, Vermont and Wisconsin, who (i) were mortgagors for a mortgage loan owned by Defendant during the Class Period that was secured by property located in those states; (ii) paid monies into an escrow account held by Defendant or its servicing agents or affiliates; and (iii) received from Defendant or its loan servicing agents or affiliates less than the amount of interest owed under the law of the State in which the property was located.

27.     Plaintiffs further brings this action as a class action pursuant to Fed. R. Civ. P. 23(a), (b)(2) and (b)(3) on behalf of themselves and the following "New York Subclass:"

> All mortgagors who (i) were mortgagors for a mortgage loan owned by Defendant during the Class Period that was secured by an owner-occupied one-to-six family residence or property owned by a cooperative apartment corporation located in New York; (ii) paid monies into an escrow account held by Defendant or its loan servicing agents or affiliates; and (iii) received from

Defendant or its loan servicing agents or affiliates less than the amount of interest required under NY Gen. Oblig. Law §5-601.

28.     The Multi-State Class and New York Subclass (collectively, the "Classes") excludes (1) Defendant's officers, directors, employees, and agents as well as any outside counsel in this litigation; (2) any judge to whom this case is assigned, along with his or her staff, and (3) immediate family of any individual excluded by (1) or (2).  The Class Period for each Class runs for the entire statute of limitations for each claim, until the Class(es) are certified.  To the extent the same loan made to any Class or Subclass member is certified in more than one Class, the Classes seek to recover for that loan only once.

29.     Also excluded from the Multi-State Class are all mortgage loan customers included within the proposed class defined in Paragraph 24 of *Plaintiffs' First Amended Consolidated Class Action Complaint* (Feb. 4, 2019) in the action styled *McShannock v. JP Morgan Chase Bank N.A.*, N.D. Cal. Case No. 18-cv-01873-EMC, unless and until the *McShannock* action is dismissed without the right to amend.

30.     Plaintiffs reserve the right under Fed. R. Civ. P. 23 to amend or modify the Class descriptions with greater specificity or further divide into subclasses or limitation to particular issues, based on the results of discovery.

31.     This action has been brought and may properly be maintained as a class action against Defendant pursuant to the provisions of Fed. R. Civ. P. 23 because there is a well-defined community of interest in the litigation and there is an administratively feasible way to identify Class Members.

32.     **Numerosity of the Class.  Rule 23(a)(1).**  The members of the Classes are so numerous that their individual joinder is impracticable.

33.     **Existence and Predominance of Common Question of Law and Fact.  Rule**

**23(a)(2).**  There are questions of law and fact common to the class.  These questions predominate over any questions affecting only individual Class members.  These common legal and factual issues include, but are not limited to:

    a.    Whether Defendant and/or its loan servicing agents or affiliates were required to pay interest on the escrow accounts to the members of the Classes;

    b.    Whether Defendant and/or its loan servicing agents or affiliates were unjustly enriched based on its use of Class members' escrow monies while not paying the interest required by the State Escrow Interest Statutes;

    c.    Whether Defendant must pay damages, statutory damages, exemplary damages, restitution, disgorgement and/or reimbursement to borrowers in the amount of unpaid interest on funds held in escrow accounts based on the causes of action asserted herein; and

    d.    Whether injunctive, equitable or declaratory relief is appropriate to prohibit Defendant's continuing unlawful and inequitable conduct.

34.    **Typicality.  Rule 23(a)(3).**  Plaintiffs' claims are typical of the claims of all Class members.  Plaintiffs, like all other members of the Classes, have sustained damages arising from Defendant's violations of the uniform mortgage agreements, the State Escrow Interest Statutes and the other laws alleged herein.  Plaintiffs and the members of the Classes were and are similarly or identically harmed by the same unlawful, deceptive, unfair, systematic, and pervasive pattern of misconduct engaged in by Defendant.

35.    **Adequacy.  Rule 23(a)(4).**  Plaintiffs will fairly and adequately represent and protect the interests of the Class members and has retained counsel who are experienced and competent trial lawyers in complex litigation and class action litigation.  There are no material

conflicts between the claims of the representative Plaintiffs and the members of the Classes that would make class certification inappropriate.  Counsel for the Classes will vigorously assert the claims of all Class members.

36. **Injunctive and Declaratory Relief.   Rule 23(b)(2).**   Defendant's actions regarding its borrowers' and customers' escrow accounts are uniform as to members of the Classes.  Defendant has acted or refused to act on grounds that apply generally to the Classes so that final injunctive relief as requested herein is appropriate with respect to the Classes as a whole.

37. **Predominance and Superiority of Class Action.  Rule 23(b)(3).**  This action may be maintained as a class action because questions of law and fact common to the Classes predominate over the questions affecting only individual members of the Classes and a class action is superior to other available means for the fair and efficient adjudication of this dispute. The damages suffered by individual Class members are small compared to the burden and expense of individual prosecution of the complex and extensive litigation needed to address Defendant's conduct.  Further, it would be virtually impossible for the members of the Classes to individually redress effectively the wrongs done to them.   In addition, individualized litigation increases the delay and expense to all parties and to the court system resulting from complex legal and factual issues of the case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. By contrast, the class action device presents far fewer management difficulties; allows the hearing of claims that might otherwise go unaddressed because of the relative expense of bringing individual lawsuits; and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

38. The prosecution of separate actions by individual Class members would create a

risk of inconsistent or varying adjudications with respect to individual Class members, which would establish incompatible standards of conduct for Defendant.

39.     The absent Class members are readily identifiable by reference to internal banking records of the Defendant and/or its loan servicing agents or affiliates.

## FIRST CAUSE OF ACTION

### BREACH OF CONTRACT
### (ON BEHALF OF PLAINTIFFS, THE MULTI-STATE CLASS AND THE NEW YORK SUBCLASS)

40.     Plaintiffs incorporate by reference and re-allege all paragraphs previously alleged herein.

41.     Plaintiffs and all Class members are parties to mortgage agreements or other loan agreements that require the payment of interest on escrow account monies.

42.     During the relevant Class Periods and statutes of limitations, Defendant was party to and/or acquired or serviced mortgage agreements or other loan agreements pertaining to Plaintiffs and other members of the Multi-State Class that require the payment of interest on escrow account monies based on the state laws in where the subject properties were located.

43.     Plaintiffs' Mortgage Agreement and Class members' mortgage agreements or other loan agreements were generally uniform instruments that contained standard language obligating the lender to pay interest on escrow account monies if required by the state law where the subject properties were located.  That standard language is set forth Plaintiffs' Mortgage Agreement, which states in relevant part:

> Lender will not be required to pay me any interest or earnings on the Escrow Funds *unless either* (1) Lender and I agree in writing that Lender will pay interest on the Escrow Funds, or *(2) Applicable Law requires Lender to pay interest on the Escrow Funds.*  (Emphasis added).

44.     Defendant was and continues to be in breach of contract in all instances and for all times when it and/or its loan servicing agents or affiliates did not pay interest on Plaintiffs' and Class members' escrow account monies.

45.     For Plaintiffs individually, Defendant breached Plaintiffs' Mortgage Agreement dated February 28, 2011, and the 2004 and 2011 mortgage agreements consolidated into the Mortgage Agreement, for the reasons set forth in this *Complaint*.

46.     As a direct and proximate result of Defendant's breaches of contract, Plaintiffs and members of the Multi-State Class and New York Subclass have suffered economic injury equal to the interest they were entitled to receive in connection with their escrow accounts.

47.     On behalf of themselves and members of the Multi-State Class and the New York Subclass, Plaintiffs seek (1) the interest due to Plaintiffs and Class members pursuant to their mortgage agreements and other loan agreements; (2) an injunction ending Defendant's unlawful conduct and other available equitable remedies including disgorgement, restitution and constructive trust; (3) pre-and post-judgment interest; and (4) costs and reasonable attorneys' fees.

## SECOND CAUSE OF ACTION

### VIOLATIONS OF NEW YORK GENERAL OBLIGATION LAW §5-601
### (ON BEHALF OF PLAINTIFFS AND THE NEW YORK SUBCLASS)

48.     Plaintiffs incorporate by reference and re-allege all paragraphs previously alleged herein.

49.     Defendant is a "mortgage investing institution" as defined by NY Gen. Oblig. Law §5-601 and New York Banking Law §14-b(5).

50.     Plaintiffs and all New York Subclass members are borrowers and parties to a agreement in connection with a mortgage for a one to six family residence or a property owned by a cooperative apartment corporation related to a property located within New York State.

51.     By the acts and practices alleged herein, Defendant violated NY Gen. Oblig. Law §5-601 by failing to pay interest on escrow account monies owned by Plaintiffs and New York Subclass members.

52.     As a direct and proximate result of Defendant's violation of NY Gen. Oblig. Law §5-601, Plaintiffs and members of the New York Subclass have suffered economic injury equal to the interest they were entitled to receive in connection with their escrow accounts.

53.     On behalf of themselves and members of the New York Subclass, Plaintiffs seek (1) the interest due pursuant to NY Gen. Oblig. Law §5-601 but not paid by Defendant and/or its agent servicing affiliates; (2) an injunction ending Defendant's unlawful conduct and other available equitable remedies including disgorgement, restitution and constructive trust; (3) pre- and post-judgment interest; and (4) costs and reasonable attorneys' fees.

## THIRD CAUSE OF ACTION

### VIOLATION OF NEW YORK GENERAL BUSINESS LAW §349
### (ON BEHALF OF PLAINTIFFS AND THE NEW YORK SUBCLASS)

54.     Plaintiffs incorporate by reference and re-allege all paragraphs previously alleged herein.

55.     Plaintiffs and the members of the New York Subclass are "persons" within the meaning of GBL §349(h).

56.     GBL §349(a) states: "Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful."

57.     Defendant and its loan servicing agents or affiliates engaged in deceptive methods, acts, practices, and conduct in the form of misrepresentations and/or material omissions during the conduct of business in New York in violation of GBL §349(a) by engaging in the methods, acts, practices, and conduct described in this Complaint, including the following:

a.   Deceptively misrepresenting in uniform mortgage agreements and other loan agreements originated or assigned to Defendant and/or its loan servicing agents or affiliates that they would pay interest on escrow accounts where required by applicable state laws;

b.   Deceptively omitting to disclose in uniform mortgage agreements and other loan agreements originated or assigned to Defendant and/or its loan servicing agents or affiliates, or omitting to disclose in a timely fashion including before mortgage agreements and loan agreements were executed, that neither Defendant nor its loan servicing agents or affiliates pay interest on escrow accounts where required by applicable state laws;

c.   Deceptively and unlawfully failing to pay interest to Plaintiffs and Class members on

17

monies held in escrow accounts, even though required by state laws where Plaintiff's and Class members' homes are or were located;

d.   Investing Plaintiff's and Class members' escrow funds for Defendant's or its loan servicing agents or affiliates financial gain, while not paying interest to Plaintiffs and Class members on monies held in escrow accounts.

58.   The foregoing methods, acts, practices, and conduct were directed at consumers and therefore consumer orientated.

59.   The foregoing deceptive methods, acts, practices, and conduct were and continue to be misleading in a material way because they misrepresent and omit the characteristics and benefits of maintaining an escrow account with Defendant and its loan servicing agents or affiliates.

60.   As a result of Defendant's acts and practices, Plaintiffs and members of the New York Subclass have suffered an ascertainable pecuniary and out-of-pocket financial losses equal to the loss of interest they should have received on monies held in their escrow accounts.

61.   In addition to their pecuniary losses, Plaintiffs and the New York Subclass suffered actual harm as a result of Defendant and its loan servicing agents or affiliates' violations of GBL §349(a), including but not limited to the annoyance, harassment, time, frustration, anger, and anxiety.

62.   On behalf of themselves and other members of the New York Subclass, pursuant to GBL §349(h) Plaintiffs seek (1) to recover the greater of actual damages or $50 dollars, or three times actual damages up to $1,000 if it is determined that Defendant acted willfully or knowingly in violation of applicable laws; (2) an injunction ending Defendant's unlawful conduct and other available equitable remedies including disgorgement, restitution and

constructive trust; (3) pre-and post-judgment interest; and (4) costs and reasonable attorneys' fees.

63.    New York Subclass members who were sixty-five years of age or older at the time of Defendant's violations of GBL §349 are entitled to additional remedies pursuant to GBL §349-c to redress Defendant's violations of GBL §349(a) perpetrated against elderly persons.

## FOURTH CAUSE OF ACTION
### VIOLATIONS OF STATE CONSUMER PROTECTION STATUTES
### (ON BEHALF OF PLAINTIFFS AND THE MULTI-STATE CLASS)

64.     Plaintiffs incorporate by reference and re-allege all paragraphs previously alleged herein.

65.     In addition to Defendant's violations of New York GBL §349, Plaintiffs plead claims on behalf of themselves and members of the Multi-State Class for the similar violations by Defendant of those state statutes that protect consumers for unfair, deceptive, misleading and/or unconscionable acts, practices and conduct, whether in the form of misrepresentations or omissions:

a.  The California Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.* and/or the California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.* (California);

b.  The Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. §§ 42-110a, *et seq.* (Connecticut);

c.  The Maine Unfair Trade Practices Act, Me. Rev. Stat. Ann. tit. 5, §§ 205A, *et seq.* (Maine);

d.  The Maryland Consumer Protection Act, Md. Com. Law. Code Ann. §§ 13-101, *et seq.* (Maryland);

e.  The Massachusetts Regulation of Business Practice and Consumer Protection Act, Mass. Gen. Laws Ann. Ch. 93A (Massachusetts);

f.  The Minnesota Prevention of Consumer Fraud Act, Minn. Stat. Ann. §§ 325F.68, *et seq.* (Minnesota);

g.  The New Hampshire Consumer Protection Act, N.H. Rev. Stat. Ann., §§ 358-A:1, *et seq.* (New Hampshire);

h.  The Oregon Unlawful Trade Practices Law, Or. Rev. Stat., §§ 646-605 *et seq.* (Oregon);

i.  The Rhode Island Unfair Trade Practices and Consumer Protection Act, R.I. Gen. Law §§ 6-13.1-1, *et seq.* (Rhode Island);

j.  Utah Code Ann. §7-17-1 *et seq.* (Utah);

k.  The Vermont Consumer Fraud Act, Vt. Stat. Ann. tit. 9, §§ 2451, *et seq.* (Vermont); and

l.  Wisc. Stat. Ann. §100.18 (Wisconsin).

66.  Plaintiffs possess standing to plead and represent the claims of the Multi-State Class for violations of the above-referenced state statutes. *See Langan v. Johnson & Johnson Consumer Cos.*, 897 F.3d. 88, 95-96 (2d. Cir. 2018).

67.  By the acts, practices, misrepresentations and/or omissions alleged herein, Defendant violated the above-referenced state consumer protection statutes by failing to pay interest on escrow account monies owned by Multi-State Class members.

68.  As a direct and proximate result of Defendant's violation of the above-referenced state consumer protection statutes, members of the Multi-State Class have suffered economic injury equal to the interest they were entitled to receive in connection with their escrow accounts.

69.  On behalf of members of the Multi-State Class, Plaintiffs seek (1) the interest due pursuant to the above-referenced State Escrow Statutes but not paid by Defendant and/or its agent servicing affiliates; (2) an injunction ending Defendant's unlawful conduct and other

available equitable remedies including disgorgement, restitution and constructive trust; (3) pre-

and post-judgment interest; and (4) costs and reasonable attorneys' fees.

## FIFTH CAUSE OF ACTION

### Unjust Enrichment

### (On Behalf of Plaintiffs and the Multi-State Class)

70.     Plaintiffs incorporate by reference and re-allege all paragraphs previously alleged herein.

71.     Pursuant to FED. R. CIV. P. 8(d), claims for unjust enrichment are pleaded in the alternative to claims of Plaintiffs and the Multi-State Class for breach of contract stated in the First Cause of Action herein.

72.     Plaintiffs and the other members of the Multi-State Class conferred a benefit on Defendant by paying money into escrow accounts, and making that money fully useable by Defendant and/or its loan servicing agents or affiliates before payments from the escrow accounts on the mortgaged property were due.

73.     As a result of Defendant's failure to comply with the State Escrow Statutes and form mortgage agreements, Defendant and/or its loan servicing agents or affiliates was enriched at the expense of Plaintiffs and members of the Multi-State Class.

74.     Under the circumstances, it would be against equity and good conscience to permit Defendant and/or its loan servicing agents or affiliates to retain the ill-gotten benefits that it received from Plaintiffs and members of the Multi-State Class.

75.     Because Defendant's and/or its loan servicing agents' or affiliates' retention of the benefits conferred on it by Plaintiffs and members of the Multi-State Class would be unjust and inequitable, Plaintiffs seek restitution from Defendant and an order from the Court requiring Defendant to disgorge all profits, benefits, and other compensation obtained due to its wrongful conduct.

### PRAYER FOR RELIEF

Wherefore, Plaintiffs, on behalf of themselves and all others similarly situated, pray for judgment against Defendant as follows:

1.      An order certifying this case as a class action under FED. R. CIV. P. 23 and appointing Plaintiffs and their counsel to represent the Classes;

2.      An order declaring that Defendant's alleged acts and practices constitute breaches of mortgage agreements and other applicable loan agreements;

3.      An order declaring that Defendant has committed the violations alleged herein;

4.      Granting damages, statutory damages where applicable, and exemplary damages where applicable to Plaintiffs and the Classes;

5.      A permanent injunction to remedy Defendant's continuing breaches of contract and violations of the laws alleged herein;

6.      To further remedy Defendant's unlawful and inequitable conduct, an order requiring restitution and disgorgement by Defendant to Plaintiffs and the Classes and the creation of a constructive trust for the benefit of Plaintiffs and the Classes;

7.      Pre-judgment and post-judgment interest to the fullest extent permitted by law;

8.      Attorneys' fees and costs required to reasonably investigate and prosecute this action; and

9.      Granting further relief as this Court may deem proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury.

DATED:  January 27, 2020

**TUSA P.C.**

By: */s/* Joseph S. Tusa
Joseph S. Tusa
joseph.tusapc@gmail.com
P.O. Box 566
55000 Main Road
Southold, NY  11971
Tel. (631) 407-5100

**GISKAN SOLOTAROFF
 & ANDERSON LLP**

By: */s/* Oren Giskan
Oren Giskan
ogiskan@gslawny.com
Michael Jaffe, Of Counsel
90 Broad Street, 10th Floor
New York, NY  10013
Tel. (646) 964-9644

*Attorneys for Plaintiffs and
Proposed Classes*