**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| RACHEL CYMBALISTA and ARIEL CYMBALISTA, on behalf of themselves and all others similarly situated, <br><br>          Plaintiffs, <br><br>     v. <br><br> JPMORGAN CHASE BANK, N.A., <br><br>        Defendant. | Case No. 2:20-CV-00456 <br><br> Hon. Rachel P. Kovner, USDJ <br> Hon. Steven M. Gold, USMJ <br><br> Date of Service:  July 3, 2020 <br><br> Oral Argument Requested |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION**
**TO DEFENDANT JPMORGAN CHASE BANK'S MOTION TO DISMISS**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ............................................................................................................. 1

BACKGROUND ............................................................................................................. 3

ARGUMENT ................................................................................................................... 4

     I.      GOL § 5-601 IS NOT PREEMPTED BY THE NBA ................................................. 4

           A.      THE APPLICABLE *BARNETT BANK* CONFLICT PREEMPTION STANDARD ........ 4

           B.      THE DODD-FRANK ACT STRONGLY INDICATES THAT CONGRESS DOES NOT BELIEVE THE ESCROW INTEREST STATUTES SIGNIFICANTLY INTERFERE WITH NATIONAL BANKS' POWERS ................................................................. 5

           C.      GOL § 5-601 DOES NOT "PREVENT OR SIGNIFICANTLY INTERFERE" WITH CHASE'S OPERATIONS OR POWERS ......................................................... 7

     II.     THE OCC'S REGULATION DOES NOT PREEMPT GOL § 5-601 .................... 10

           A.      SECTION 34.4 RECEIVES LIMITED *SKIDMORE* DEFERENCE AT MOST ........... 11

           B.      APPLICATION OF *SKIDMORE* IS NOT LIMITED IN TIME ................................... 13

           C.      SECTION 34.4 DOES NOT PERSUADE THAT PLAINTIFFS' CLAIMS ARE PREEMPTED ................................................................................................. 15

           D.      CHASE'S AUTHORITIES DO NOT SUPPORT ITS ARGUMENT ............................ 17

     III.    THE COMPLAINT SUFFICIENTLY ALLEGES A CLAIM FOR BREACH OF CONTRACT (OR, IN THE ALTERNATIVE, UNJUST ENRICHMENT); VIOLATION OF GOL § 5-601; AND VIOLATION OF GBL § 349 ................... 18

           A.      PLAINTIFFS STATE A CLAIM FOR BREACH OF CONTRACT ............................... 18

                 1.      Plaintiffs Were Not Required to Provide Pre-Filing Notice ............. 19

                 2.      Chase's Other Arguments for Dismissing the Contract Claims Lack . Merit ................................................................................................. 21

           B.      PLAINTIFFS STATE AN ALTERNATIVE CLAIM FOR UNJUST ENRICHMENT ..... 22

           C.      THE COMPLAINT STATES A CLAIM FOR VIOLATION OF GOL § 5-601 .......... 22

           D.      THE COMPLAINT STATES A CLAIM FOR VIOLATION OF GBL § 349 .............. 23

CONCLUSION ............................................................................................................. 25

i

## **TABLE OF AUTHORITIES**

CASES

*Adler v. Bank of Am., N.A.*, No. 13-cv-4866 (VB),
    2014 U.S. Dist. LEXIS 113288 (S.D.N.Y. July 17, 2014) .................................................... 4

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ........................................................................................................ 18

*Anderson Nat. Bank v. Luckett*,
    321 U.S. 233 (1944) ........................................................................................................ 18

*Ball v. Jamaica Sav. Bank*,
    49 A.D.2d 595 (N.Y. App. Div. 1975) .......................................................................... 23

*Banks v. Corr. Servs. Corp.*,
    475 F. Supp. 2d 189 (E.D.N.Y. 2007) .......................................................................... 21

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ........................................................................................................ 18

*Barnett Bank of Marion County, N.A. v. Nelson*,
    517 U.S. 25 (1996) ................................................................................................... *passim*

*Boule v. Hutton*,
328 F.3d 84 (2d Cir. 2003) ................................................................................................ 23

*City of N.Y. v. Tavern on the Green Int'l, LLC*,
    351 F. Supp. 3d 680 (S.D.N.Y. 2018) ...................................................................... 20, 21

*Clark v. Bank of America, N.A.*,
    No. 18-cv-3672, 2020 U.S. Dist. LEXIS 31454 (D. Md. Feb. 24, 2020) ................... *passim*

*Commerce Funding Corp. v. Comprehensive Habilitation Servs.*,
    No. 01-cv-3796 (PKL), 2005 U.S. Dist. LEXIS 2832 (S.D.N.Y. Feb. 24, 2005) .......... 22

*Cuomo v. Clearing House Ass'n, L.L.C.*,
    557 U.S. 519 (2009) .......................................................................................................... 4

*Deming v. Merrill Lynch & Co.*,
    528 F. App'x 775 (9th Cir. 2013) ................................................................................... 18

*English v. Gen. Elec. Co.*,
    496 U.S. 72 (1990) .......................................................................................................... 12

*Federal Nat'l Mortgage Ass'n v. Lefkowitz*,
    390 F. Supp. 1364 (S.D.N.Y. 1975) ................................................................................. 8

*Fidelity Federal Savings & Loan Association v. de la Cuesta,*
    458 U.S. 141 (1982) ........................................................................................................11, 12

*Flagg v. Yonkers Sav. & Loan Ass'n, FA,*
    396 F.3d 178 (2d Cir. 2005) ................................................................................................ 23

*Franklin National Bank of Franklin Square v. New York,*
    347 U.S. 373 (1954) ............................................................................................................... 9

*Geismann v. ZocDoc, Inc.,*
    909 F.3d 534 (2d Cir. 2018) ................................................................................................ 20

*Gen. Motors Corp. v. Abrams,*
    897 F.2d 34 (2d Cir. 1990) .................................................................................................... 4

*Giuffre Hyundai, Ltd. v. Hyundai Motor Am.,*
    756 F.3d 204 (2d Cir. 2014) ................................................................................................ 20

*Gomez-Jimenez v. New York Law Sch.,*
    103 A.D. 3d 13 (N.Y. App. Div. 2012) ............................................................................... 23

*Harris v. Crossland Mortg. Corp.,*
    160 Misc. 2d 520 (N.Y. Dist. Ct. 1994) .............................................................................. 23

*Hymes v. Bank of America, N.A.,*
    408 F. Supp. 3d 171 (E.D.N.Y. 2019) ........................................................................*passim*

*In re Dig. Music Antitrust Litig.,*
    812 F. Supp. 2d 390 (S.D.N.Y. 2011) ................................................................................. 22

*JPMorgan Chase Bank, N.A. v. Johnson,*
    719 F.3d 1010 (8th Cir. 2013) ............................................................................................ 18

*Kivett v. Flagstar Bank,*
    N.D. Cal. No. 18-cv-5131-WHA, Dkt. 120 (N.D. Cal. Nov. 20, 2019) .......................19, 20

*Koch v. Acker, Merrall & Condit Co.,*
    967 N.E.2d 675 (N.Y. 2012) ............................................................................................... 24

*Law Offices of K.C. Okoli, P.C. v. BNB Bank, N.A.,*
    481 F. App'x 622 (2d Cir. 2012) ........................................................................................ 25

*Landgraf v. USI Film Prod.,*
    511 U.S. 244 (1994) ............................................................................................................ 14

*Lusnak v. Bank of Am., N.A.,*
    883 F.3d 1185 (9th Cir. 2018) ....................................................................................*passim*

*McClellan v. Chipman,*
    164 U.S. 347 (1986) ........................................................................................................ 8

*McShannock v. JP Morgan Chase Bank N.A.,*
    354 F. Supp. 3d 1063 (N.D. Cal. 2018) ........................................................ 1, 2, 19, 20, 21

*Miller v. Wells Fargo Bank, N.A.,*
    994 F. Supp. 2d 542 (S.D.N.Y. 2014) .............................................................................. 20

*Mitchell v. Faulkner,*
    531 F. App'x 136 (2d Cir. 2013) ...................................................................................... 22

*Mozilla Corp. v. FCC,*
    940 F.3d 1 (D.C. Cir. 2019) ............................................................................................. 18

*National Bank v. Commonwealth,*
    76 U.S. 353 (1869) ............................................................................................................ 8

*Oliver Wyman, Inc. v. Eielson,*
    282 F. Supp. 3d 684 (S.D.N.Y. 2017) .............................................................................. 21

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.,*
    647 N.E.2d 741 (N.Y. 1995) ............................................................................................ 23

*Palkovic v. Johnson,*
    281 F. App'x 63 (2d Cir. 2008) ........................................................................................ 18

*RBFC One, LLC, v. Zeeks,* Inc.,
    171 F. Appx. 902 (2d Cir. 2006) ...................................................................................... 21

*Sacco v. Bank of Am., N.A.,*
    No. 12-cv-00006-RLV, 2012 U.S. Dist. LEXIS 178030 (W.D.N.C. Dec. 17, 2012) ................... 3, 4

*Salgado v. Carle,*
    No. 17-cv-6040 (NSR), 2019 U.S. Dist. LEXIS 53139 (S.D.N.Y. Mar. 28, 2019) ........................ 22

*Sheriff's Silver Star Ass'n of Oswego Cty., Inc. v. Cty. of Oswego,*
    56 F. Supp. 2d 263 (N.D.N.Y. 1999) ............................................................................... 14

*Sims v. First Consumer Bank,*
    303 A.D.2d 288 (N.Y. App. Div. 2003) ........................................................................... 23

*St. John's Univ. v. Bolton,*
    757 F. Supp. 2d 144 (E.D.N.Y. 2010) .............................................................................. 22

*Surrey Strathmore Corp. v. Dollar Sav. Bank,*
    325 N.E.2d 527 (N.Y. 1975) ............................................................................................ 23

*Todd v. Exxon Corp.,*
    275 F.3d 191 (2d Cir. 2001) ........................................................................... 22

*Wachovia Bank, N.A. v. Burke,*
    414 F.3d 305 (2d Cir. 2005) ........................................................................... 17

*Watters v. Wachovia Bank, N.A.,*
    550 U.S. 1 (2007) ............................................................................................. 9

*Wolff & Munier, Inc. v. Whiting-Turner Contracting Co.,*
    946 F.2d 1003 (2d Cir. 1991) ......................................................................... 20

*Wyeth v. Levine,*
    555 U.S. 555 (2009) ................................................................................ *passim*


STATUTES

12 U.S.C. § 24 ....................................................................................................... 7

12 U.S.C. § 25 ................................................................................................. 12, 14

12 U.S.C § 43 ...................................................................................................... 12

12 U.S.C. § 371 ............................................................................................... 7, 14

15 U.S.C. § 1602 .............................................................................................. 5, 6

15 U.S.C. §1639 .......................................................................................... *passim*

21 U.S.C. § 360 ................................................................................................... 12

New York Banking Law § 14-B ................................................................ 7, 10, 21, 23

New York General Business Law § 349 ..................................... 2, 18, 23, 24, 25

New York General Obligations Law § 5-1709 .................................................. 23

New York General Obligations Law § 5-513 ................................................... 23

New York General Obligations Law § 5-601 ............................................ *passim*

Rules and Regulations:

3 N.Y.C.R.R §10.1(b) .......................................................................................... 7

12 C.F.R. § 34 ............................................................................................. 14, 18

Fed. R. Civ. P. 8 ............................................................................................... 22


Other Authorities:

Consumer Fin. Protection Bur.*, Escrow Requirements Under the Truth in Lending Act*,
   78 Fed. Reg. 4726 (Jan. 22, 2013) ................................................................ 6

*Office of Thrift Supervision Integration; Dodd-Frank Act Implementation,*
   76 Fed. Reg. 43549 (Jul. 21, 2011) ............................................................. 14

H.R. Rep. No. 111-94 (2009) ........................................................................... 6

S. Rep. No. 111-176 (2010) ....................................................................... 4, 14

*Hymes v. Bank of Am.,* E.D.N.Y. No. 18-cv-2352(RRM/ARL), Dkt. 63 (OCC *Hymes* Amicus Br.,),
   2019 WL 8195223 (Nov. 7, 2019) ........................................................ 12, 13

*Lusnak v. Bank of Am.,* 9th Cir. No. 14-56755, Dkt. 46 (OCC *Lusnak* Amicus Br.),
   2018 WL 3702582 (April 23, 2018) ...................................................... 12, 13

Catherine M. Sharkey, *Inside Agency Preemption*, 110 Mich. L. Rev. 521, 581 (2012) ............................. 16

Plaintiffs Rachel and Ariel Cymbalista ("Plaintiffs"), by and through their counsel, submit this memorandum of law in opposition to defendant JPMorgan Chase Bank, N.A.'s ("Chase") motion to dismiss (Dkt. 24-25) Plaintiffs' Class Action Complaint ("*Complaint*" or "Cpt.") (Dkt. 1).

## INTRODUCTION

Chase concedes that it never paid interest on Plaintiffs' escrow funds held by Chase.  That failure violates New York General Obligations Law ("GOL") § 5-601, and in turn breaches Chase's mortgage agreements with Plaintiffs, which promise to comply with New York laws.  GOL § 5-601 has always required *all* mortgage lending institutions to pay interest on New York borrowers' escrow accounts.  From its enactment in 1974, "mortgage lending institutions" was defined to include "national bank[s]."  Although Chase pays escrow interest on some mortgages, as do other national banks, Chase primarily argues that GOL § 5-601 is preempted by the National Banking Act ("NBA") and regulations issued by the Office of the Comptroller of Currency ("OCC").  Every court that has examined the exact same issue has held otherwise.  *See Hymes v. Bank of Am., N.A.*, 408 F. Supp. 3d 171 (E.D.N.Y. 2019) (Mauskopf, C.J.); *accord Lusnak v. Bank of Am., N.A.*, 883 F.3d 1185 (9th Cir. 2018), *rehearing and rehearing en banc denied* 2018 U.S. App. LEXIS 12745 (May 16, 2018), *cert. denied* 139 S. Ct. 567 (2018) (California escrow interest statute); *McShannock v. JP Morgan Chase Bank N.A.*, 354 F. Supp. 3d 1063 (N.D. Cal. 2018) (no preemption of California escrow interest statute under Home Owners Loan Act "HOLA"); *Clark v. Bank of Am., N.A.*, No. 18-cv-3672, 2020 U.S. Dist. LEXIS 31454 (D. Md. Feb. 24, 2020) (Maryland escrow interest statute).

A state law is preempted only if it "prevents or **significantly interferes** with the exercise by the national bank of its power" as Congress intends that power.  12 U.S.C. § 25b(1)(B); *Barnett Bank of Marion County, N.A. v. Nelson*, 517 U.S. 25, 33 (1996).  The courts unanimously have held that state escrow statutes do *not* significantly interfere with national banks' powers, and thus national banks must comply with state escrow statutes, a conclusion that is strongly supported by Congress itself, as

reflected in the Dodd-Frank Act.  15 U.S.C. § 1639d(g)(3). Contrary to Chase's suggestion, a speculative loss of profits that a national bank would otherwise gain from free use of a borrower's escrow monies is not significant interference.  *Hymes* and others rejected that precise argument.

Chase's argument that GOL § 5-601 is preempted by OCC regulation 12 C.F.R. § 34.4 fares no better.  In 12 C.F.R. § 34.4, the OCC purported to apply the *Barnett Bank* standard for NBA preemption ("significantly interferes"), but attempted to broaden *Barnett*'s language.  The OCC stuck to its broader position even after Congress in the Dodd-Frank Act explicitly amended the NBA to remedy the OCC's overbroad preemption regulations (§ 34.4) and restore the *Barnett Bank* standard (*i.e.*, *not* field preemption).  Congress and the Supreme Court have made clear that the OCC's preemption determinations receive at most "*Skidmore* deference"—*i.e.*, only to the extent the OCC's analysis is persuasive.  The OCC's own amicus briefs in *Hymes* and *Lusnak* agreed that *Skidmore* (not *Chevron*) deference applies.  Given the complete absence of any analysis in § 34.4 regarding the state escrow statutes, the OCC's opinion concerning the preemptive effect of § 34.4 on those statutes is not entitled to any weight.  Every court to look at this issue has reached that conclusion.

Chase's alternative arguments to dismiss Plaintiffs' breach of contract, GOL § 5-601, New York General Business Law ("GBL") § 349 and unjust enrichment claims are without merit.  Its "notice and cure" argument challenging Plaintiffs' breach claim should again be rejected for the reasons explained in *McShannock,* and separately because any pre-filing notice would have been futile given Chase's adamant position that GOL § 5-601 is preempted.  While Chase claims GOL § 5-601 lacks a private right of action, no court has reached that conclusion while numerous decisions have adjudicated § 5-601 claims on the merits.  Plaintiffs' GBL § 349 claim pleads Chase's deceptive practices by reason of its false representations, and omission of a contrary policy, that it would comply with New York laws, including GOL § 5-601.  Nor can Chase avoid Plaintiffs' unjust enrichment claim at this stage, as FED. R. CIV. P. 8(d) and the courts permit alternative pleading.

# BACKGROUND

### CHASE'S CONDUCT:

Like most mortgage lenders, Chase holds its borrowers' money in escrow accounts to protect Chase's security interest over the properties.  Those escrow accounts hold monies the borrowers will owe in taxes and insurance on the mortgaged property and pays those amounts for the borrower when they are due.  Cpt. ¶9.  Plaintiffs obtained a mortgage loan from Chase in 2004, secured by their home in Nassau County.  *Id.* ¶13.  That loan was refinanced with Chase in 2011.  *Id.* ¶14.  Both mortgage agreements, drafted by Chase, required Plaintiffs to pay monies into a Chase escrow account, which Plaintiffs did until their loan was repaid in June 2019.  *Id.* ¶12.  Chase never paid interest to Plaintiffs on those escrow funds, *id.* ¶17, a fact undisputed by Chase.  Chase Br. (Dkt. 25) at 3.  That conduct violates GOL § 5-601 (Cpt. ¶¶ 48-53), and in turn breaches Section 3(b)(2) of Plaintiffs' 2011 *Consolidated Mortgage* agreement, which states: "Lender will not be required to pay me any interest or earnings on the Escrow Funds *unless* … Applicable Law requires." (emphasis added).  Cpt. ¶¶15, 40-47.  "Applicable Law" is defined by the *Consolidated Mortgage* agreement to include the law of New York.  *Id.* ¶15; *see also* Dkt. 26-1 at 16.  Chase further misled Plaintiffs with statements that it would pay interest and omitting its contrary policy.  *Id.* ¶¶ 54-63.

### HISTORY OF NBA PREEMPTION, OCC REGULATION AND DODD FRANK:

Since 1996, *Barnett Bank* has governed NBA conflict preemption analysis.  *Barnett Bank* rejected field preemption for the NBA, holding the NBA does not "deprive States of the power to regulate national banks."  517 U.S. at 33.  In 2004, the OCC issued the first version of § 34.4, which "purported to adopt" the *Barnett Bank* standard, "but did so inaccurately."  *Lusnak*, 883 F.3d at 1193.  Specifically, the OCC sought to unilaterally *change* the *Barnett Bank* standard ("prevent or significantly interfere") to a lower standard ("obstruct, impair, or condition"— effectively field preemption).  *See id.* at 1192 & n.4; *Sacco v. Bank of Am., N.A.*, No. 12-cv-00006-RLV, U.S. Dist. LEXIS 178030, at *24

(W.D.N.C. Dec. 17, 2012); *see also Cuomo v. Clearing House Ass'n, L.L.C.*, 557 U.S. 519, 533 (2009) (rejecting OCC preemption rule that "attempts to do what Congress declined to do: exempt national banks from all state banking laws").

Congress recognized that the OCC's attempted expansion of NBA preemption beyond *Barnett Bank* created "an environment where abusive mortgage lending could flourish without State controls," and contributed to the 2008 financial meltdown. S. Rep. No. 111-176, at 17 (2010). In response, Congress passed Dodd-Frank with a clear intent:  the "standard for preempting State consumer financial law would return to what it had been for decades, those recognized by the Supreme Court in *Barnett Bank* … undoing broader standards adopted by rules, orders, and interpretations issued by the OCC in 2004." *Id.* at 175. Among the ways Dodd-Frank effectuated this was through 12 U.S.C § 25b, where, Congress expressly reaffirmed and codified *Barnett Bank* and limited *Skidmore* deference for OCC preemption regulations. 12 U.S.C. § 25b(b)(1) & (5)(B).

## ARGUMENT

## I.    GOL § 5-601 IS NOT PREEMPTED BY THE NBA

### A.    THE APPLICABLE *BARNETT BANK* CONFLICT PREEMPTION STANDARD

State laws are not preempted unless that is the clear and manifest purpose of Congress. *Wyeth v. Levine*, 555 U.S. 555, 565 (2009). A national bank asserting NBA preemption has the burden to establish this "affirmative defense." *Adler v. Bank of Am., N.A.*, No. 13-cv-4866 (VB), 2014 U.S. Dist. LEXIS 113288, at *9 (S.D.N.Y. July 17, 2014). Where, as here, the state law at issue is a consumer protection law — a field traditionally regulated by the states — "compelling evidence of an intention to preempt is required." *Gen. Motors Corp. v. Abrams*, 897 F.2d 34, 41-42 (2d Cir. 1990); *see also Cuomo*, 557 U.S. at 534; *Hymes*, 408 F. Supp. 3d at 175, 183 (under the dual banking system of federal and state regulation, "the Supreme Court has long recognized a role for state

regulation"). "The purpose of Congress is the ultimate touchstone in every preemption" determination. *Wyeth*, 555 U.S. at 565.

Preemption defenses based on the NBA are analyzed under a "conflict preemption" standard, as articulated by the Supreme Court in *Barnett Bank*:  a state law is not preempted by the NBA if it "does not prevent or significantly interfere with the national bank's exercise of its powers."  517 U.S. at 32-33; *see also id.* at 31 (court must determine whether the state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress"). In 2011, the *Barnett Bank* standard was codified by Congress in the Dodd-Frank Act. 12 U.S.C. § 25b(b)(1).  Chase does not dispute that *Barnett Bank* provides the applicable preemption standard.

**B.     THE DODD-FRANK ACT STRONGLY INDICATES THAT CONGRESS DOES NOT BELIEVE THE ESCROW INTEREST STATUTES SIGNIFICANTLY INTERFERE WITH NATIONAL BANKS' POWERS**

In the Dodd-Frank Act, Congress required that "[i]f prescribed by applicable State or Federal law, each creditor shall pay interest to the consumer on the amount held in any impound, trust, or escrow account that is subject to this section in the manner as prescribed by that applicable State or Federal law."  15 U.S.C. § 1639d(g)(3); *see also* 15 U.S.C. § 1602(g) (broadly defining "creditor" without excluding national banks).  While Plaintiffs do not plead a claim under § 1639d(g)(3), that section provides insight into the intent of Congress ("the ultimate touchstone" for preemption, *Wyeth*, 555 U.S. at 565) on the specific issue as to whether state escrow interest statutes "significantly interfere."  *See Lusnak*, 883 F.3d at 1196-97 (section 1639d(g)(3) "expresses Congress's view that [escrow interest] laws would not necessarily prevent or significantly interfere with a national bank's operations."); *Hymes*, 408 F. Supp. 3d at 196 ("section 1639d evinces a policy judgment that there is little incompatibility between requiring mortgage lenders to maintain escrow accounts and requiring them to pay a reasonable rate of interest on sums thereby received.").

Chase insists § 1639d(g)(3) is irrelevant because, it argues, the word "applicable" in the section means "if not preempted."[1]  Chase Br. at 9-10.  However, Chase's interpretation has been rejected in favor of the logical reading that Congress used "applicable" because it was aware not all states have escrow interest laws — *i.e.*, by "applicable" Congress meant "if the state where the property is located has such a law."  *See Lusnak*, 883 F.3d at 1194-95 ("We may reasonably presume that Congress was aware of existing law when it legislated … and that it used the term 'applicable' to refer to state escrow interest laws *where they exist*.") (internal quotation marks and brackets omitted; emphasis added); *Hymes*, 408 F. Supp. at 187-89 (engaging in thorough analysis and concluding that "applicable" meant "relevant" and the statute "evinces a clear congressional purpose to subject *all* mortgage lenders to state escrow laws."); *Clark*, 2020 U.S. Dist. LEXIS 31454 at *14 (same).[2]

Chase attributes significance to the codification of § 1639d(g)(3) as part of the Truth in Lending Act (TILA) rather than the NBA.  Chase Br. at 8-9.  But the OCC's own regulations dispel that argument.  *See* 12 C.F.R. § 34.4(b)(9) (state laws "made applicable by Federal law" not preempted, without limitation to where in the Code such federal law may appear).  Moreover, it makes perfect sense that this statute was inserted in TILA because TILA governs consumer mortgage lending.  *See* 15 U.S.C. § 1602(dd)(5).[3]  Chase similarly questions why the NBA "never suggested that § 1639d affected NBA preemption."  Chase Br. at 9.  But "pre-emption jurisprudence

---

1  Chase's interpretation would render § 1639d(g)(3)'s reference to "State" law essentially surplussage:  if it did not apply to national banks (or to federal savings banks) because of preemption, and of course state-chartered banks do not need Congress to tell them to comply with state laws, what application would the section have?

2  The legislative history supports this interpretation.  A House Report noted that under §1639d(g)(3), loan "servicers must administer such accounts in accordance with …  the law of the State where the real property securing the transaction is located, including making interest payments on the escrow accounts *if required under such laws*."  H.R. Rep. No. 111-94, at 91 (2000) (emphasis added).  As the *Lusnak* court noted, "[t]his passage shows Congress's view that creditors, including large corporate banks like Bank of America, can comply with state escrow interest laws without any significant interference with their banking powers."  883 F. 3d at 1196; *see also* Consumer Financial Protection Bureau, *Escrow Requirements Under the Truth in Lending Act*, 78 Fed. Reg. 4726, 4,745 (Jan. 22, 2013) ("Under some State regulations, creditors are not required to pay interest on consumers' funds held in escrow accounts.").

3  Chase cites cases to purportedly show that "[c]ourts are reluctant to read Congress's preservation of state law in one federal statute as implying a limit on preemption in a different statute."  Chase Br. at 8-9.  But Plaintiffs do not contend § 1639d(g)(3) "saves" state escrow interest laws; rather, by mandating all creditors comply with those laws, the section demonstrates Congress's view that those statutes do not "significantly interfere" with national banks' powers.

6

explicitly rejects the notion that mere congressional silence on a particular issue may be read as pre-empting state law." *Wyeth*, 555 U.S. at 602-03. The more pertinent silence here is the fact that Congress could have, but did not, exclude national banks from § 1639d(g)(3). What matters under a *Barnett Bank* analysis is that § 1639d(g)(3) strongly supports the view that Congress did not believe the state escrow interest statutes significantly interfere with national banks' powers.

## C.  GOL § 5-601 DOES NOT "PREVENT OR SIGNIFICANTLY INTERFERE" WITH CHASE'S OPERATIONS OR POWERS

Chase (like Bank of America in *Lusnak*, *Hymes* and *Clark*) insists that state escrow interest statutes, like GOL §5-601, "impose a significant and fundamental condition" on the powers granted to it under the NBA to make loans (12 U.S.C. § 371(a)) and receive deposits (12 U.S.C. § 24 (Seventh)). Chase Br. at 3-6. In its view, any law that even marginally impacts escrow accounts goes "to the heart of the transaction—dictating specifically and directly the price that a national bank must pay simply to exercise the powers that the NBA … grants the bank." *Id.*

Chase dramatically overstates the impact of GOL § 5-601, which merely requires Chase to pay an interest rate of 2% *or less*, for holding and investing its mortgage customers' own money.[4] While that may reduce Chase's profits, it is not the sort of significant interference or imposition that "stand[s] as an obstacle to the accomplishment and execution of the full purposes of Congress." *Barnett Bank*, 517 U.S. at 31-32. As Chief Judge Mauskopf explained in *Hymes*:

> Of course, compliance with GOL § 5-601 will cost the Bank money, as will compliance with its analogues in other states. But as the Supreme Court's precedents illustrate, 'significant interference' is not a question of cost – it is not this Court's role to determine the bottom-line impact of escrow interest laws on the business operations of national banks, or to allocate the benefits of mortgage lending between borrower and lender. Such policy judgments are the domain of legislatures. The 'significant interference' test is a question of law. It asks the Court to determine

---

4  Banking Law §14-b provides the N.Y. Superintendent of Financial Services (formerly Banking Department) power to revise the interest rate. The rate has never been raised above 2%, and on January 19, 2018, the Superintendent actually lowered the rate to the *lesser of* 2% or the 6-month yield on U.S. Treasuries. Cpt. n.4. In 2019, the rate fell below 2%. Interest is due only on the "daily balances … from the date the funds are received to the date the funds are disbursed …." 3 N.Y.C.R.R §10.1(b).

whether the power specifically authorized by Congress may be exercised relatively unimpaired and unhampered by the state law.

*Hymes*, 408 F. Supp. 3d at 195.  *Federal Nat'l Mortgage Ass'n v. Lefkowitz*, 390 F. Supp. 1364 (S.D.N.Y. 1975), cited in *Hymes*, is instructive.  There, a three-judge constitutional court held that compliance with New York's escrow interest statute did not place an undue burden on a federal instrumentality:

> All that New York State has done is to act upon funds which are kept by the [Federal National Mortgage Association] for the ultimate benefit of the original homeowner-mortgagor.  The purpose of prepaying certain insurance and tax expenses is not to provide FNMA with income but rather to protect the mortgagees' interest in the mortgaged property.  Chapter 119 in no way impairs this purpose.  It is also significant that the statute does not regulate how FNMA must keep or invest the escrow funds in its possession.  Thus, there is no attempt by the state to interfere directly with the internal management of the corporation.

*Id.* at 1370-71.  After surveying the Supreme Court precedent for NBA preemption of state statutes, *Hymes* held that GOL § 5-601 did not "significantly interfere" with "national banks' power to administer mortgage escrow accounts. … It does not bar the creation of mortgage escrow accounts, or subject them to state visitorial control, or otherwise limit the terms of their use." *Hymes*, 408 F. Supp. 3d at 195.[5]  Every other court that has addressed the question has reached the same conclusion — no NBA preemption, under *Barnett Bank*, due to the absence of significant interference.  *See Lusnak*, 883 F. 3d at 1194-95; *Clark*, 2020 U.S. Dist. LEXIS 31454 at *7-10, 16-25.

Further undermining Chase's "significantly interferes" argument, the *Complaint* alleges (and Chase does rebut) that Chase pays escrow interest on some escrow accounts. Cpt. ¶25.  Numerous national banks pay escrow interest (including Wells Fargo which does so for *all* escrow accounts),

---

5  The other cases cited in *Barnett Bank* are further instructive.  *See Anderson Nat. Bank v. Luckett*, 321 U.S. 233, 247-52 (1944) (concluding Kentucky law that required banks to transfer inactive deposit accounts over to the state only minimally interfered with national bank powers and that the Kentucky law would not "deter [customers] from placing their funds in national banks" any more than "would the tax laws, the attachment laws, or the laws for the administration of estates of decedents ... which a state may maintain and apply to depositors in national banks."); *McClellan v. Chipman*, 164 U.S. 347, 358 (1986) (application to national banks of state statute forbidding certain real estate transfers by insolvent transferees would not "destroy" or "hamper" national bank functions); *National Bank v. Commonwealth*, 76 U.S. 353 (1869) (national banks subject to state laws that do not "interfere with, or impair [national banks'] efficiency in performing the functions by which they are designed to serve [the Federal] Government")).

Cpt. ¶12 n.2, demonstrating that doing so does not significantly interfere with banking operations. *See Hymes*, 408 F. Supp. 3d at 195 (noting relevance of Wells Fargo's compliance with GOL § 5-601).

Chase's relies on the preemption results in *Barnett Bank* and on *Franklin Nat. Bank v. New York*, 347 U.S. 373 (1954), but that reliance is misplaced.  In *Barnett Bank*, a federal statute expressly permitted national banks to sell insurance in small towns, while a state statute prohibited them from selling insurance in small towns.  Given this direct and "irreconcilable conflict," the Court held that the state law was preempted, *Barnett*, 517 U.S. at 30-31, but made clear that states are not deprived "of the power to regulate national banks, where [] doing so does not prevent or significantly interfere with the national bank's exercise of its powers," *id.* at 33.  Likewise, in *Franklin*, the state law prohibited the use of the word "savings" in federal banks' advertisements, conflicting with a federal law that permitted national banks to receive *savings* deposits.  347 U.S. at 377-78 (plaintiff was advocating "an interpretation that would permit a national bank to engage in a business but gave no right to let the public know about it.").  There is no such conflict here.  Moreover, because *all* lenders must comply with GOL § 5-601, it does not favor state banks, as was the case in *Franklin*.[6]

Chase criticizes the preemption analysis in *Hymes*, ***falsely*** arguing that Chief Judge Mauskopf "interpreted 'significant interference' so restrictively as to limit preemption solely to the 'prevents' prong of that standard … and thus [holding that preemption] occurs only if the effect of a law is 'practical abrogation of the banking power at issue.'"  Chase Br. at 6-7.  However, like the courts in *Lusnak* and *Clark*, *Hymes* applied the correct *Barnett Bank* "prevent or significantly interfere" standard.  Just as *Barnett Bank* does not limit preemption to instances of "practical abrogation," so too it does not support finding preemption merely because state laws provide consumer benefits.  Put differently, "significantly," in the *Barnett Bank* standard, has significance.

---

6  Chase also relies on *Watters v. Wachovia Bank, N.A.*, 550 U.S. 1, 10-11 (2007).  Chase Br. at 1, 3, 5.  But *Watters* merely held that national banks are not subject to a state's "visitorial powers" such as state audits and surveillance.  GOL § 5-601 does not concern any sort of "visitorial powers."

Finally, Chase attacks *Lusnak* as being overly reliant on § 1639d(g)(3). However, while the Ninth Circuit found that Congress's "requiring banks to pay interest on escrow account balances '[i]f prescribed by applicable State law' expresses Congress's view that such laws would not *necessarily* prevent or significantly interfere with a national bank's operations," *Lusnak*, 883 F.3d. at 1195-96 (emphasis added), its *Barnett Bank* analysis went beyond § 1639d(g)(3). *See Lusnak*, 883 F.3d at 1196 (concluding that:  "No legal authority supports Bank of America's position that California's [escrow interest law] prevents or significantly interferes with the exercise of its powers.").  Likewise, *Hymes* and *Clark* both found the state escrow interest statutes did not — *as a matter of law* — significantly interfere with national banking power, without relying on § 1639d(g)(3) to reach their conclusions.  *See Hymes*, 408 F. Supp. 3d at 190 (finding that § 1639d(g)(3) merely "informs" the analysis of significant interference); *Clark*, 2020 U.S. Dist. LEXIS 31454, at \*20 ("this Court's decision does not rest primarily on an interpretation of § 1639d").[7]

## II.    THE OCC'S REGULATION DOES NOT PREEMPT GOL § 5-601

Chase next argues that this Court can dispense with conducting a *Barnett Bank* conflict preemption analysis and simply defer to the OCC's blanket preemption "determination" in 12 C.F.R. § 34.4.  According to Chase, § 34.4 mandates finding preemption as long as it is "an authorized and nonarbitrary exercise of the preemptive power Congress delegated to the OCC." Chase Br. at 13.  Unfortunately for Chase, the Supreme Court in *Wyeth*, and then Congress in Dodd-Frank, made it clear that courts adjudicating NBA preemption defenses must conduct their own *Barnett Bank* conflict analysis, and that the OCC's § 34.4 receives at most *Skidmore* deference — *i.e.*, only to the extent it has the power to persuade.  *See Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944).

---

[7]  Chase also cites a 2018 N.Y. Department of Financial Services order, which Chase claims "recognized that the NBA preempts 5-601."  Chase Br. at 20.  Chase misinterprets that order, as GOL § 5-601 requires all mortgage investing institutions to pay escrow interest, which is defined in Banking Law § 14-b to include "national bank[s]."  The Superintendent is without power to change that result, but does have the power to change the interest rate paid. *Id.* The 2018 order merely did just that, lowering the interest rate paid.

Not surprisingly, then, every court to consider the issue has applied *Skidmore* deference to § 34.4 and held that OCC's interpretation of § 34.4 carries little or no weight as to whether state escrow statutes are preempted.  *See Lusnak*, 883 F.3d at 1192-93, 1196; *Clark*, 2020 U.S. Dist. LEXIS 31454, at \*10-25; *Hymes*, 408 F. Supp. 3d at 190-93.  As with its NBA preemption argument, Chase provides no valid basis for straying from these well-reasoned decisions.

**A.      SECTION 34.4 RECEIVES LIMITED *SKIDMORE* DEFERENCE AT MOST**

In *Wyeth*, the Supreme Court clarified the deference given to a federal agency's conflict preemption determinations.  While certain agency determinations are entitled to *Chevron* deference, "[r]egulations that reflect the 'agency's conclusion that ... state law is pre-empted' receive lesser, *Skidmore* deference."  *Hymes*, 408 F. Supp. 3d at 190 (quoting *Wyeth*, 555 U.S. at 576).  Such agency determinations guide a court's preemption inquiry only to the extent of their "thoroughness, consistency, and persuasiveness."  *Wyeth*, 555 U.S. at 576 (citing *Skidmore*, 323 U.S. at 140).

Chase attempts to limit the significance of *Wyeth* by noting it involved the FDA, not the OCC.  However, if any confusion remained about application of *Wyeth* to the OCC (there was none), Congress clarified in the Dodd-Frank Act that "any" OCC preemption determinations receive only *Skidmore* deference, 12 U.S.C. § 25b(5)(A); *Hymes*, 408 F. Supp. 3d at 190.  Specifically, Congress stated that a court adjudicating a NBA preemption defense must make its own "prevent or significantly interfere" determination, under *Barnett Bank*, regarding whether the state law in question is preempted, considering the OCC's view only to the extent "the court finds [it] persuasive and relevant to its decision."  12 U.S.C. § 25b(b)(1) & (5)(A); *Hymes*, 408 F. Supp. 3d at 190.

Chase insists the correct standard of review is not set forth in *Wyeth* and Dodd-Frank, but in *Fidelity Federal Savings & Loan Association v. de la Cuesta*, 458 U.S. 141 (1982), and argues the *Hymes*, *Lusnak*, and *Clark* courts "went astray" by not following *de la Cuesta*.  In essence, Chase argues that § 34.4 is entitled to *Chevron* deference (though Chase studiously avoids citing *Chevron* by name), and

that this Court must defer to § 34.4 as long as it is a "valid exercise of the OCC's authority." Chase Br. 12-13. Chase goes on to argue "*Wyeth* has no bearing here," because Congress empowered the OCC to preempt state law directly. Chase Br. at 14. Chase's argument contradicts Congress' *actual statements* that *Skidmore* deference applies. Congress confirmed, in no uncertain terms, that the OCC's NBA preemption determinations receive only *Skidmore* deference. 12 U.S.C § 25b(b)(1) & (5(A); *see also Wyeth*, 555 U.S. at 565 (the "purpose of Congress is the ultimate touchstone in every pre-emption case"); *English v. Gen. Elec. Co.*, 496 U.S. 72, 79 (1990) (where "Congress has made its intent known through explicit statutory language, the courts' task is an easy one."). Chase points to 12 U.S.C. § 43 as "direct authority" to preempt, insisting that § 43 brings the OCC's regulations within an exception to *Wyeth*. Chase Br. at 13. But § 43 simply does not provide the unfettered agency authority (or require the high level of deference) Chase suggests.[8] *De la Cuesta* does not support applying heightened deference. Not only did it pre-date *Wyeth* by 27 years, it did not involve the OCC and NBA conflict preemption. Unlike here, *de la Cuesta* did not have a clear congressional command to apply only *Skidmore* deference.[9]

Chase's argument also contradicts *the OCC's own admissions*. The OCC has repeatedly acknowledged that its NBA conflict preemption determinations concerning including § 34.4 — before and after Dodd-Frank — receive only *Skidmore* deference. *See Hymes v. Bank of Am.*, E.D.N.Y. No. 18-cv-2352(RRM/ARL), Dkt. 63 (OCC *Hymes* Amicus Br.), 2019 WL 8195223, at 8-9, n.5 (Nov. 7, 2019) (acknowledging *Skidmore* applies); *Lusnak v. Bank of Am.*, 9th Cir. No. 14-56755, Dkt. 46 (OCC *Lusnak* Amicus Br.), 2018 WL 3702582, at *15 n.2 (April 23, 2018) (same).

---

[8] In contrast to 12 U.S.C. § 43, the examples cited in *Wyeth*, 555 U.S. at 576 & n.9, of Congress "authoriz[ing an agency] to pre-empt state law directly" involved statutes stating Congress's intention that state laws *should* be preempted, and granting the agencies authority to enforce preemption. *See e.g.*, 21 U.S.C. § 360k (stating that "no State … may establish" different requirements relating to medical device safety, except as the FDA may "exempt" upon application). 12 U.S.C. §43 is not such a statute, as reinforced by the fact that it remains on the books with 12 U.S.C. § 25b.

[9] Even where it applied (not to the OCC), *de la Cuesta*'s language about deference, which pre-dated major changes in administrative law on agency deference—including *Chevron*—may be partially abrogated. *See Wyeth*, 555 U.S. at 576.

**B.**   **APPLICATION OF *SKIDMORE* IS NOT LIMITED IN TIME**

Chase next argues that *Skidmore* deference only applies to OCC preemption determinations that post-date Dodd-Frank's 2011 effective date, and that OCC preemption determinations from before that time (such as the 2004 version of § 34.4) supposedly receive greater deference.  That argument directly contradicts the OCC's admissions in its *Hymes* and *Lusnak amicus* briefs that *Skidmore* deference is and was the applicable standard before and after Dodd-Frank.  *See* OCC *Hymes* Amicus Br., at *8-9 (OCC stating § 25b(b)(5)(A) "provides that the [OCC's] opinion regarding the degree to which state law conflicts with a national bank power receives a variable degree of deference under *Skidmore* … this provision **did not represent a change to existing law**") (emphasis added); OCC *Lusnak* Amicus Br., at *15 n.2 ("Dodd-Frank provides only that the OCC's opinion as to the degree of conflict receives a variable degree of deference under *Skidmore* … that *Skidmore* provision **did not represent a change of law**.") (emphasis added).  As the OCC admits, Congress's amendment of § 25b(b)(5)(A) was a *clarification* regarding the already *existing* standard of review, not a new standard.  *See Lusnak*, 883 F.3d at 1192-93 n.5 (Dodd-Frank's provisions regarding *Barnett Bank* and *Skidmore* "merely codified existing law as set forth by the Supreme Court").

Chase's "retroactivity" argument fails for additional reasons.  *First*, § 25b(b)(5)(A) sets forth the standard of review that ***courts*** "shall" use in "reviewing *any* determinations made by the [OCC] regarding preemption of a State law by [12 U.S.C. § 371]." (emphasis added).[10]  It is a prospective instruction directed to "court[s] reviewing" OCC preemption determinations, not to the OCC when issuing them.  There is no indication this section intended to apply only to a courts' review of ***future*** OCC preemption determinations, and indeed § 25b(b)(5)(A)'s language says otherwise—*i.e.*, courts

---

10  Section 34.4 purports to preempt pursuant to 12 U.S.C. § 371.  *See* 12 C.F.R. § 34.4 ("A national bank may make real estate loans under 12 U.S.C. 371 … without regard to ….").

"shall" use this standard for "any determinations made" by the OCC.[11]  Thus, even if this section created a new standard of review, it applies to this Court's adjudication of Chase's motion.  *See Landgraf v. USI Film Prod.*, 511 U.S. 244, 274-75 (1994) (changes to jurisdiction or procedural rules typically do not raise retroactivity concerns because they regulate courts, not private conduct).[12]

*Second*, § 25b(b)(5)(A) *still* would apply to the operative version of § 34.4, which the OCC promulgated on July 21, 2011—the same day Dodd-Frank's relevant provisions took effect.  *See* 76 Fed. Reg. 43549 (July 21, 2011) (date of OCC's 2011 regulation).

*Third*, Chase's suggestion that Congress intended to except pre-Dodd-Frank OCC regulations from post-Dodd-Frank judicial review flies in the face of Dodd-Frank's history. Undoing the OCC's blanket, thinly supported (to put it generously) preemption regulations leading to the 2008 financial crisis (including § 34.4) was a major impetus for Congress's enacting the relevant Dodd-Frank provisions.  *See Lusnak*, 883 F.3d at 1189 (in Dodd-Frank "Congress aimed to undo broad preemption determinations"); *Hymes*, 408 F. Supp. 3d at 180, 185 ("the agency failed to meaningfully revise [§34.4] after [Congress in] Dodd–Frank repudiated the agency's approach to preemption[,]" including ignoring Dodd-Frank's new procedural requirements); *see also Clark*, 2020 U.S. Dist. LEXIS 31454, at *11 (same; citing *Hymes*); S. Rep. No. 111-176, at 175 (2010) (Congress's intent was that the "standard for preempting State consumer financial law would return to what it had been for decades, those recognized by the Supreme Court in *Barnett Bank* … undoing broader standards adopted by rules, orders, and interpretations issued by the OCC in 2004.").   Chase's

---

11  To support its "retroactivity" argument, Chase tries to group all provisions of 12 U.S.C. § 25b together (including the procedural prescriptions of § 25b(b)(3)) and frame them, collectively, as a "new preemption regime."  Chase Br. at 15. Chase cannot use this framing to avoid the fact that several provisions of § 25b, including the *Barnett Bank* and *Skidmore* provisions, "merely codified existing law as set forth by the Supreme Court."  *Lusnak*, 883 F.3d at 1192.  Notably, 12 U.S.C. § 25b is titled: "State law preemption standards for national banks and subsidiaries <u>clarified</u>." (emphasis added).

12  Courts regularly apply newly defined judicial standards of review to conduct that pre-dates the announcement of that new standard.  *See e.g.*, *Sheriff's Silver Star Ass'n of Oswego Cty., Inc. v. Cty. of Oswego*, 56 F. Supp. 2d 263, 267 & n.4 (N.D.N.Y. 1999) (applying Supreme Court's 1996 *United States v. Virginia* standard of review for sex classifications to a sex-segregation policy in place since 1995).

suggestion that Congress intended to shield § 34.4 from juridical review contradicts 12 U.S.C. § 25b, all the decisional law to consider the issue, and the legislative history.  *See supra*, Background § II.

## C.  SECTION 34.4 DOES NOT PERSUADE THAT PLAINTIFFS' CLAIMS ARE PREEMPTED

Applying *Skidmore*, it is easy to see why every court to consider § 34.4's persuasiveness as to the state escrow interest statutes has afforded § 34.4 little or no weight.  To the extent the broad statements within § 34.4 are even a determination applicable to these particular state laws—neither § 34.4 nor any associated findings of record reference such laws—the Court is to afford such determination weight commensurate with "the thoroughness evident in the consideration of the agency, the validity of the reasoning of the agency, the consistency with other valid determinations made by the agency, and other factors which the court finds persuasive and relevant to its decision." 12 U.S.C § 25b(b)(5)(A) (reciting *Skidmore* standards).  There is no indication the OCC gave *any* consideration to state escrow interest laws (in either 2004 or 2011), let alone the extent, if any, such laws interfere with national banks.  As Chief Judge Mauskopf summarized in *Hymes*:

> [T]here [is] no evidence that, when the agency first promulgated the regulations in 2004, it had engaged in a careful, considered analysis of whether the NBA preempts state laws limiting escrow accounts. ... The OCC did not conduct its own review of specific potential conflicts on the ground. ... Nor is there evidence that, at this time, the agency gave any thought whatsoever to the specific question raised in this case, which is whether the NBA preempts escrow interest laws. The agency's proposed and final rulemakings do not offer a specific rationale for preempting state laws limiting escrow accounts, and they do not even mention escrow interest laws…. The agency's 2011 regulations, which updated the 2004 regulations in the wake of Dodd–Frank, did nothing to remedy this oversight. Explaining that it had "re-reviewed" the list of preempted state laws "to confirm that the specific types of laws cited in the rules are consistent with the standard for conflict preemption," the OCC declined to amend the list…. But, once again, the agency did not get more specific. It failed to explain why or to what extent the NBA preempted state laws limiting escrow accounts, and it did not mention escrow interest laws. It is therefore difficult to conclude that the OCC has ever considered the question before the Court. And to the extent it has, its regulations do nothing to persuade the Court that it answered the question thoughtfully or carefully.

408 F. Supp. 3d at 191 (citations omitted).[13]  It also bears mentioning that the OCC's wholesale "reaffirmation" in 2011 of the 2004 regulation failed to provide "substantial evidence, made on the record of the proceeding" "concerning the impact of a particular state consumer financial law" "on a case-by-case basis" that "supports the specific finding" "in accordance with" the fact-dependent standard of *Barnett Bank*, as required under the Dodd-Frank procedural requirements that took effect on the same day.  12 U.S.C. § 25b(b)(1)(B), (b)(3)(a), (c).  But even if those procedural requirements are ignored here, under the applicable *Skidmore* standard, the result is the same whether considering the 2004 or 2011 version of § 34.4:  little or no deference is warranted.

Chase, for its part, identifies no evidence that the OCC gave any consideration (in 2004 or 2011) to the state escrow laws at issue here or their level of interference, if any, with national banking powers.  Rather, Chase merely repeats the OCC's own generalized statements about its experience and expertise in the field, and the exceedingly vague "considerations" the OCC claimed supported promulgating § 34.4.  Chase Br. at 16-19.  None of this contains any substance, nor reflects anything remotely approaching a thorough evaluation of the level of interference, if any, that these laws cause to national banking operations.  The OCC's "consideration" and "reasoning" (or lack thereof), fail to persuade on the issue at all.

Chase complains this "is not a fair criticism" of the OCC.  Chase Br. 17.  This is not about criticizing the OCC.  The OCC's lack of consideration or analysis as to whether application of the state escrow statutes "prevent or significantly interfere" under *Barnett Bank* is exactly what the Supreme Court and Congress have directed this Court to consider in deciding what weight, if any, to give the OCC's conflict preemption determination reflected in § 34.4.  While Chase asks this Court

---

13  *Accord Lusnak*, 883 F.3d at 1193; *Clark*, 2020 U.S. Dist. LEXIS 31454 at *10-12; *see also* Catherine M. Sharkey, *Inside Agency Preemption*, 110 Mich. L. Rev. 521, 581 (2012) (2004 OCC preemption regulations had "no factual findings … explaining why preemption was necessary in the specific case or what conflicts between state authorities and federal banks justified preemption").

to simply defer to the OCC's (blanket) conclusion without meaningful (or any) scrutiny of its basis, Congress and the Supreme Court have directed the Court to take a hard look at that basis.

Section 34.4 deserves particularly little weight given that Congress made its view known in 15 U.S.C. 1693d(g)(3).  *See supra* § I.B; *Lusnak*, 883 F.3d at 1194-95; *Hymes*, 408 F. Supp. 3d at 196; *see also Wyeth*, 555 U.S. at 575 ("The case for federal pre-emption is particularly weak where Congress has indicated its awareness of the operation of state law in a field of federal interest, and has nonetheless decided to stand by both concepts and to tolerate whatever tension there [is] between them.").  And while the *OCC* has not conducted any "on the ground" analysis of the impact of the state escrow laws, Chase cannot avoid the fact that several of Chase's competitor national banks (including Wells Fargo), and even Chase itself in some cases, pay escrow interest in New York and elsewhere.  *See* Cpt. ¶¶12 n.2, 25; *Hymes*, 408 F. Supp. 3d at 195.

## D.  CHASE'S AUTHORITIES DO NOT SUPPORT ITS ARGUMENT

Chase's OCC preemption argument leans heavily on *Wachovia Bank, N.A. v. Burke*, 414 F.3d 305 (2d Cir. 2005).  However, as Chief Judge Mauskopf explained, *Burke* is outdated (if not abrogated) and distinguishable.  *Hymes*, 408 F. Supp. 3d at 190.  *Burke* pre-dates both *Wyeth* and Dodd-Frank, where the Supreme Court and Congress, respectively, erased any doubt that *Skidmore* applies to OCC preemption determinations.  The apparent grant of *Chevron* deference in *Burke*, 414 F.3d at 315, 321, thus would appear to be contrary to binding law.  And *Burke* did not have the benefit of 15 U.S.C. § 1639d(g)(3) (or any equivalent), which provides unique insight into Congress's own view on the "significant interference" question.  Moreover, *Burke* concerned far more invasive state laws relating to licensing, record maintenance and state visitation rights, and state enforcement powers, 414 F.3d at 310, implicating a more complicated "collection of other regulations" beyond just § 34.4, affecting "the full panoply of banking activities," *Hymes*, 408 F. Supp. 3d at 190.

Also misplaced is Chase's reliance on *Mozilla Corp. v. FCC*, 940 F.3d 1 (D.C. Cir. 2019). There, the court held the FCC lacked authority to issue the regulation at issue. The court stated in passing that "if a federal law expressly confers upon the agency the authority to preempt, that legislative delegation creates and defines the agency's power to displace state laws." *Id.* at 75. Putting aside whether that is an accurate (or fulsome) statement of the law, *Mozilla* obviously did not address whether *OCC* preemption regulations are subject to *Wyeth* and *Skidmore* deference. Congress has definitely answered that question in the affirmative and the OCC has admitted to that application of *Skidmore* before and after Dodd-Frank.[14]

## III. THE COMPLAINT SUFFICIENTLY ALLEGES A CLAIM FOR BREACH OF CONTRACT (OR, IN THE ALTERNATIVE, UNJUST ENRICHMENT); VIOLATION OF GOL § 5-601; AND VIOLATION OF GBL § 349

In order to survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In applying this standard, the court must accept all allegations as true and "draw[] all reasonable inferences and resolv[e] all conflicts and ambiguities in favor of plaintiffs." *Anderson News, LLC v. Am. Media, Inc.*, 680 F.3d 162, 168 (2d Cir. 2012) (citations omitted). "The appropriate inquiry is not whether a plaintiff is likely to prevail, but whether the plaintiff is entitled to offer evidence to support her claims." *Palkovic v. Johnson*, 281 F. App'x 63, 66 (2d Cir. 2008).

### A. PLAINTIFFS STATE A CLAIM FOR BREACH OF CONTRACT

Plaintiffs allege that Chase failed to pay them escrow interest in compliance the "applicable law" that is incorporated into their mortgage agreements. Cpt. ¶¶ 13-17, 43-47. Both courts to

---

14 Chase's other cases likewise do not support its arguments. *JPMorgan Chase Bank, N.A. v. Johnson* merely applied *Barnett Bank* to hold that Arkansas cannot prevent Chase from statutorily foreclosing on its mortgages. 719 F.3d 1010, 1017-18 (8th Cir. 2013). *Deming v. Merrill Lynch & Co.*, an unpublished memorandum decision, held with little analysis (and without citing Dodd-Frank or *Barnett Bank*) that the plaintiff's consumer protection claims regarding certain fees were preempted. 528 F. App'x 775, 777 (9th Cir. 2013). That has no bearing on the weight, if any, this Court should give § 34.4 in conducting a *Barnett Bank* conflict preemption analysis here.

consider this issue have found such allegations sufficient to state a breach of contract claim. *See Hymes*, 408 F. Supp. 3d at 199; *Clark*, 2020 U.S. Dist. LEXIS 31454 at *25 (because bank agreed "it would pay interest on Plaintiff's escrow account if 'Applicable law requires interest to be paid on the Funds … Plaintiff has made a plausible claim that by failing to pay interest on her escrow account, [bank] breached its contract with Plaintiff.'").  This Court should do the same.

### 1.   Plaintiffs Were Not Required to Provide Pre-Filing Notice

Chase first argues that Plaintiffs' contract claim should be dismissed because Plaintiffs did not provide pre-suit notice and an opportunity for Chase to cure its breach.  Chase does not argue it was without notice of the state escrow statutes.[15]  Chase's notice argument should be rejected for two reasons.  *First*, the notice and cure provision Chase relies on is inapplicable.  By its terms, that provision is limited to instances where an alleged breach "arises from" 1) Chase's "actions pursuant to" the mortgage; or 2) Chase's failure to fulfill obligations under the mortgage.  *See* Dkt. 26.1 at 24. Notably, Chase invoked substantially similar same language in support of the same notice and cure argument in *McShannock*.  The *McShannock* court rejected the argument, correctly finding that Chase's duty to pay escrow interest derives from a statute incorporated into the mortgage, rather than from the mortgage itself.  *McShannock*, 354 F. Supp. 3d at 1072.[16]  Notably, the same argument applies when the plaintiffs plead both the statutory violation and a breach of contract claims. *See Kivett v. Flagstar Bank*, N.D. Cal. No. 18-cv-5131-WHA, Dkt. 120 (N.D. Cal. Nov. 20, 2019) ("*Kivett* Order"), at 6 (granting class certification of breach of contract and statutory escrow interest claims, and following *McShannock* in rejecting notice and cure argument as preventing certification, concluding that "[t]he duty to comply with the law did not originate from the deed of trust — it originated from

---

15 Chase was certainly on notice of its obligation to pay escrow interest under applicable state laws by *McShannock, Hymes*, and the Ninth Circuit's *Lusnak* decision, all of which pre-dated the filing of this case.
16 Even though the *McShannock* plaintiffs did not plead a breach of contract claim, Chase moved to dismiss arguing that the notice and cure provision in the deed of trust prevented the filing of all claims.

[California's escrow interest law]").  *Kivett* further held than any ambiguity on this issue must be construed against the mortgage bank, as the drafter.  *Kivett* Order at ,6.

*Second*, Chase's conduct demonstrates that pre-filing notice would have been futile.  "[T]he law is clear that providing notice and cure is not required where it would be futile."  *City of N.Y. v. Tavern on the Green Int'l, LLC*, 351 F. Supp. 3d 680, 692-93 (S.D.N.Y. 2018) (internal quotation marks and citation omitted); *accord Giuffre Hyundai, Ltd. v. Hyundai Motor Am.,* 756 F.3d 204, 209 (2d Cir. 2014) ("New York common law will not require strict compliance with a contractual notice-and-cure provision if providing an opportunity to cure would be useless ...."); *Wolff & Munier, Inc. v. Whiting-Turner Contracting Co.,* 946 F.2d 1003, 1009 (2d Cir. 1991) ("[S]trict adherence to the ... cure provision would have been a 'useless act' in the face of [continued breach].").  This same rule applies to the mortgage agreements used by national banks.  *See Miller v. Wells Fargo Bank, N.A.,* 994 F. Supp. 2d 542, 552 n.6 (S.D.N.Y. 2014) ("Wells Fargo Bank also argues plaintiff's breach of contract claim must be dismissed because he failed to comply with the Mortgage's notice and cure provision.  But a party need not provide notice of and an opportunity to cure a breach when doing so would be futile.") (citing *Bausch & Lomb Inc. v. Bressler*, 977 F.2d 720, 728 (2d Cir. 1992)).

Chase maintains a policy of not paying escrow interest to borrowers like Plaintiffs, irrespective of the state escrow statutes, believing those laws to be preempted.  Chase argued that position in *McShannock* (and to the Ninth Circuit on interlocutory appeal) based on HOLA, and argues in this case for NBA preemption of GOL § 5-601.  Chase has not changed its position, nor offered to remedy its breach since this case was filed.[17]  To the contrary, it is telling this Court it does not have to pay interest.  Chase is so resolute in its insistence on not paying interest, that even

---

[17]  An attempt to unilaterally resolve Plaintiffs' claim alone without offering similar relief to all class members in an effort to prevent the class claims from proceeding would likely run afoul of the Second Circuit's rule against "picking off" class representatives.  *See Geismann v. ZocDoc, Inc.*, 909 F.3d 534, 543 (2d Cir. 2018).

were it to lose this motion (*i.e.*, even if the Court finds that GOL § 5-601 is not preempted), Chase has already sought permission for interlocutory appeal to the Second Circuit.  Chase Br. at 25.

As in *Tavern on the Green*, pre-filing notice was futile "in light of [defendant's] insistence that" its conduct was "in full conformity" with the parties' agreement permitting it to continue the disputed acts.  351 F. Supp. 3d at 693.  Even if futility here were not evident from Chase's conduct and motion arguments, it is at most a disputed "issue of fact" inappropriate for resolution at the pleading stage.  *See Oliver Wyman, Inc. v. Eielson*, 282 F. Supp. 3d 684, 697 (S.D.N.Y. 2017).[18]

### 2.  Chase's Other Arguments for Dismissing the Contract Claims Lack Merit

Chase next argues that "applicable [New York] law" incorporated in Plaintiffs' mortgages did not require the payment of escrow interest until recently.  Chase Br. at 2-3, 23.  That is wrong. New York GOL § 5-601 was enacted in 1974, decades before Plaintiffs originated their Chase mortgages, and although Chase is apparently referring to the decisions in *Lusnak*, *Hymes*, *Clark* and *McShannock*, none of those courts held that their preemption decisions created new interpretations of the state escrow statutes that apply only prospectively.  As to GOL § 5-601 in particular, New York has always defined a "mortgage investing institution" to *include* "national bank[s]" among those that must pay escrow interest.  N.Y. Banking Law § 14-b(5) (also enacted in 1974).  Even if the statute is viewed to have changed, the agreements require compliance with New York law at all times.

Chase relatedly speculates that Plaintiffs did not possess the "inten[t]" to receive escrow interest when agreeing to their Chase mortgages.  Chase Br. at 23.  Chase has no basis whatsoever to opine that Plaintiffs' "intended" anything other than the parties would comply with the "applicable" New York laws that required the payment of escrow interest.  *See Banks v. Corr. Servs. Corp.*, 475 F. Supp. 2d 189, 196 (E.D.N.Y. 2007) (motion to dismiss contract breach claim denied where issues of

---

18  The facts in *RBFC One, LLC, v. Zeeks*, Inc., 171 F. App'x 902, 903 (2d Cir. 2006), cited by Chase, stand in stark contrast to the facts here.  In *RBFC*, "the defendants effectively cured the alleged breaches."  Neither *RBFC* nor any of Chase's other cases (Chase Br. at 22) address the situation where notice would be objectively futile or where the alleged breach was of a statutory obligation incorporated into the contract.

party intent must be made in plaintiff's favor). Further, unless and until Chase can prove its own form mortgage agreements were ambiguous, the parties' intent should not even be considered for a breach of contract claim. *See Commerce Funding Corp. v. Comprehensive Habilitation Servs.*, No. 01-cv-3796 (PKL), 2005 U.S. Dist. LEXIS 2832, at *43 (S.D.N.Y. Feb. 24, 2005). Regardless, disputed issues of intent are factual issues that should be decided on a motion to dismiss. *See Todd v. Exxon Corp.*, 275 F.3d 191, 198, 203 (2d Cir. 2001); *Salgado v. Carle*, No. 17-cv-6040 (NSR), 2019 U.S. Dist. LEXIS 53139, at *29 (S.D.N.Y. Mar. 28, 2019).

## B. PLAINTIFFS STATE AN ALTERNATIVE CLAIM FOR UNJUST ENRICHMENT

Plaintiffs plead unjust enrichment in the alternative to the breach of contract claim. Cpt. ¶¶70-75 (citing FED. R. CIV. P. 8(d)). Rule 8(d) permits this approach, especially since Chase is moving to dismiss the contract claim. *See Mitchell v. Faulkner*, 531 F. App'x 136, 137 (2d Cir. 2013) ("In the district court, plaintiffs asserted a claim for unpaid royalties based, in the alternative, on contract and unjust enrichment. Such an alternative pleading is permissible under New York law."); *In re Dig. Music Antitrust Litig.*, 812 F. Supp. 2d 390, 411, n.11 (S.D.N.Y. 2011) ("The Court rejects Defendants' first argument: that unjust enrichment is disallowed where an adequate remedy at law exists. This argument is premature because Plaintiffs may plead in the alternative."); *St. John's Univ. v. Bolton*, 757 F. Supp. 2d 144, 183 (E.D.N.Y. 2010) ("Defendants argue that Plaintiff fails to state a cause of action for unjust enrichment, because the conduct alleged to form the basis of this claim is governed by the contracts alleged in the Complaint. [] This argument is plainly premature.").[19]

## C. THE COMPLAINT STATES A CLAIM FOR VIOLATION OF GOL § 5-601

Chase argues only that GOL § 5-601 does not create a private right of action. Chase Br. at 19-20. However, since the law's enactment 46 years ago, courts have repeatedly resolved claims involving GOL §5-601 on the merits, never holding a private right of action was lacking. *See e.g.*,

---

[19] *Hymes* dismissed the plaintiffs' unjust enrichment claim only *after* denying dismissal of the alternative contract claim.

*Flagg v. Yonkers Sav. & Loan Ass'n, FA*, 396 F.3d 178 (2d Cir. 2005) (dismissed on different grounds); *Ball v. Jamaica Sav. Bank*, 49 A.D.2d 595 (N.Y. App. Div. 1975), *aff'd*, 39 N.E. 843 (N.Y. 1976); *Harris v. Crossland Mortg. Corp.*, 160 Misc. 2d 520, 523 (N.Y. Dist. Ct. 1994).

Chase does not cite any case holding that GOL § 5-601 lacks a private right of action, and its citations to N.Y. GOL §§ 5-513 and 5-1709(b) are inapposite because those laws fall under Title 5 of Article 5 and are *not* part of the same "legislative scheme." *Carrier v. Salvation Army*, 667 N.E.2d 328, 329 (N.Y. 1996) (discussing standards for when a private right of action is "'fairly implied' in the statutory provisions and their legislative history."). A more appropriate reference is N.Y. Banking Law § 14-b, which Chase cites but misconstrues. Chase Br. at 19. Banking Law § 14-b was enacted alongside GOL § 5-601 on July 1, 1974. As explained by the New York Court of Appeals: "By enactment of chapter 119 of the Laws of 1974, sections 14-b and 5-601 were added to the Banking Law and the General Obligations Law, respectively, to require the payment of interest, at rates set by the Banking Board, on tax accounts with respect to mortgages on one to six-family owner-occupied residences commencing July 1, 1974." *Surrey Strathmore Corp. v. Dollar Sav. Bank*, 325 N.E.2d 527, 530 (N.Y. 1975). The laws were passed to effectuate the payment of interest on mortgage escrow accounts, and contemplated private remedies for "any individual:"

> If any provision of this section, or the application of such provision *to any individual, company, corporation or circumstance*, shall be held invalid, the remainder of this section, and the application of such section to individuals, companies, corporations, or circumstances other than those to which it is held invalid, shall not be affected thereby.

Banking Law § 14-b(8) (emphasis added). Because GOL § 5-601 and Banking Law § 14-b collectively evince the legislature's intent that they may be brought by private citizens.

## D.   THE COMPLAINT STATES A CLAIM FOR VIOLATION OF GBL § 349

Plaintiffs plead Chase's violations of GBL § 349 by reason of its deceptive representation that it would comply with state laws requiring the paying of escrow interest and by omitting

disclosure of its contrary policy to not pay interest.  Cpt. ¶57 (listing deceptive practices).[20]  Chase's misrepresentations and omissions were "deceptive" because they were capable of misleading a reasonable borrower.  *See Boule v. Hutton*, 328 F.3d 84, 94 (2d Cir. 2003); *see also Gomez-Jimenez v. New York Law Sch.*, 103 A.D. 3d 13, 16-17 (N.Y. App. Div. 2012) (in addition to misrepresentations, omission of "material information that is relevant to the consumer" states a GBL § 349 claim).  Analyzing essentially the same allegations, the *Clark* court declined to dismiss the plaintiff's state statutory deceptive practices claim.  *Clark*, 2020 U.S. Dist. LEXIS 31454 at *27-30.

Chase challenges only the "deceptive practices" element of the GBL § 349 claim, not whether its challenged practices were consumer oriented and caused injury.  *See Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 647 N.E.2d 741, 744-45 (N.Y. 1995) (reciting elements of a GBL § 349 claim).  With respect to "deceptive practices," Chase offers two arguments for dismissal.  *First*, it contends that the GBL § 349 claim should be dismissed because the deceptive practices were "fully disclosed."   However, because Chase's assertion is contradicted by the allegations in the *Complaint* (*see* Cpt. ¶57(b)), this issue is not properly resolved at the pleading stage.  *See Sims v. First Consumer Bank*, 303 A.D.2d 288, 289-90 (N.Y. App. Div. 2003) (reversing dismissal; "[w]hether defendants' conduct was deceptive or misleading is a question of fact"); *see also Koch v. Acker, Merrall & Condit Co.*, 967 N.E.2d 675, 676 (N.Y. 2012) (a full disclosure defense "do[es] not … bar [plaintiff's] claims for deceptive trade practices at this stage of the proceedings, as they do not establish a defense as matter of law.") (citation and quotation marks omitted; ellipsis in original).

Chase alternatively argues that its conduct is within the "safe harbor" of GBL § 349(d), specifically that its alleged conduct is "subject to and complies with the rules and regulations of" the statutes administered by the OCC.  Chase Br. at 21.  Chase's argument is foreclosed by the failing of

---

20  GBL § 349 claims are not preempted by the NBA.  *In re HSBC Bank, USA, N.A.*, 1 F. Supp. 3d 34, 46-48 (E.D.N.Y. 2014); *Jacobs v. ABN-Amro Bank N.V.*, No. 03-cv-4125 (NGG), 2004 U.S. Dist. LEXIS 6888, at *11-16 (E.D.N.Y. April 21, 2004).

its preemption arguments.  *See supra* §§ I, II.  In that vein, Chase omits a crucial part of § 349(d):  *the final three words.*  The full text provides:

> In any such action it shall be a complete defense that the act or practice is, or if in interstate commerce would be, subject to and complies with the rules and regulations of, and the statutes administered by, the federal trade commission or any official department, division, commission or agency of the United States as such rules, regulations or statutes are interpreted by the federal trade commission or such department, division, commission or agency or **the federal courts**.

Here, the NBA and OCC regulations, as considered and interpreted by *three* federal courts, do not preempt GBL § 5-601.  Chase relies on *Law Offices of K.C. Okoli, P.C. v. BNB Bank, N.A.*, 481 F. App'x 622, 626 (2d Cir. 2012), but in that case the plaintiff's complaint acknowledged that the defendant bank had complied with a federal statute and regulations.  *See* 481 F. App'x at 626.  No similar concession is made in Plaintiffs' *Complaint*, which pleads Chase's violation of the applicable escrow statute, deceptive misstatements and material omissions.

## CONCLUSION

For the foregoing reasons, the motion to dismiss should be denied in its entirety.  To the extent the Court grants any part of Chase's motion to dismiss, Plaintiffs respectfully request leave to file an amended complaint.[21]

DATED:  July 3, 2020

Respectfully submitted**,**

**GISKAN SOLOTAROFF**
**  & ANDERSON LLP**

By:  _/s/ Oren Giskan_____
Oren Giskan
ogiskan@gslawny.com
Michael Jaffe, Of Counsel
90 Broad Street, 10th Floor
New York, New York 10013
Tel. (646) 964-9644

---

[21]  If this Court denies its motion to dismiss Chase requests that the Court certify the issue of federal preemption for interlocutory appeal under 28 U.S.C. §1292(b).  Chase Br. at 24.  Plaintiffs oppose that request, but respectfully request that if the Court is inclined to entertain such a request, that it permit post-decision briefing on the issue.

**TUSA P.C.**

By:  */s/* Joseph S. Tusa

Joseph S. Tusa
joseph.tusapc@gmail.com
55000 Main Road
P.O. Box 566
Southold, NY  11971
Tel. (631) 407-5100

**LIEFF, CABRASER, HEIMANN**
  **& BERNSTEIN, LLP**

Rachel Geman
regeman@lchb.com
Roger Heller (*pro hac vice* forthcoming)
rheller@lchb.co
Avery S. Halfon
ahalfon@lchb.com
250 Hudson Street, 8th Floor
New York, NY 10013-1413
Tel. (212) 355-9500

*Attorneys for Plaintiffs*
*and proposed Class Counsel*

26