**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| RACHEL CYMBALISTA and ARIEL CYMBALISTA, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> JPMORGAN CHASE BANK, N.A., <br><br> Defendant. | Case No. 2:20-CV-00456 <br><br> Hon. Rachel P. Kovner, USDJ <br> Hon Lois Bloom, USMJ |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF**
**CONSENT MOTION FOR PRELIMINARY APPROVAL**
**OF PROPOSED CLASS ACTION SETTLEMENT**

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 1

BACKGROUND ........................................................................................................... 4

I.    PROCEDURAL HISTORY .................................................................................. 4

II.   NATURE OF THE CASE ..................................................................................... 7

III.  TERMS OF THE SETTLEMENT ....................................................................... 7

      A.    CHASE WILL PAY $11.5 MILLION ......................................................... 7

      B.    CHASE WILL PAY IOE IN THE SETTLING STATES PROSPECTIVELY FOR 3 YEARS ........ 8

      C.    SETTLEMENT CLASS NOTICE PROGRAM .................................................. 9

      D.    SETTLEMENT ADMINISTRATOR AND CALCULATION ADVISOR ....................... 9

      E.    ATTORNEYS' FEES AND EXPENSES; PLAINTIFF SERVICE AWARDS ............... 10

      F.    SETTLEMENT CLASS MEMBERS' IOE CLAIMS WILL BE RELEASED ............. 10

ARGUMENT .............................................................................................................. 11

I.    THE PROPOSED SETTLEMENT SATISFIES THE REQUIREMENTS FOR PRELIMINARY APPROVAL ....................................................................... 11

      A.    STANDARDS FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENTS ......... 11

      B.    THE PROPOSED SETTLEMENT IS PROCEDURALLY FAIR AND THE RESULT OF ARMS-LENGTH NEGOTIATIONS BY EXPERIENCED AND KNOWLEDGEABLE COUNSEL ........................................................................ 12

      C.    THE PROPOSED SETTLEMENT IS SUBSTANTIVELY FAIR ............................. 13

            1.    Plaintiffs and Plaintiffs' Counsel Have Zealously Represented the Class (FED. R. CIV. P. 23(e)(2)(A)) ............................................ 14

            2.    The Settlement Represents a Strong Result for the Settlement Class, Particularly Given the Substantial Risk and Challenges They Face (FED. R. CIV. P. 23(e)(2)(C); Grinnell Factors 1 & 4-9) ................... 14

            3.    The Settlement Treats Settlement Class Members Equitably (FED. R. CIV. P. 23(e)(2)(D) ................................................................ 16

4.      The Proposed Notices Comply with Rule 23(e)(1)(B) and Due Process ....... 17

5.      The Additional Rule 23(e) Factors Support Preliminary Approval................. 18

II.      THE COURT SHOULD PROVISIONALLY CERTIFY THE CLASS .............................. 19

A.      THE SETTLEMENT CLASS .................................................................................. 19

B.      THE SETTLEMENT SATISFIES THE CERTIFICATION REQUIREMENTS OF RULE 23 ...... 21

1.      The Numerosity Requirement Is Satisfied ........................................................ 22

2.      The Commonality Requirement is Satisfied...................................................... 22

3.      Plaintiffs' Claims Are Typical of The Settlement Class.................................... 22

4.      Plaintiffs and Class Counsel Will Fairly and Adequately
Represent the Settlement Class ........................................................................ 23

5.      The Settlement Class Satisfies Rule 23(b)(3)
Predominance ................................................................................................... 23

6.      The Settlement Class Satisfies Rule 23(b)(3)
Superiority ........................................................................................................ 24

7.      The Settlement Class is Ascertainable ............................................................. 24

CONCLUSION ..................................................................................................................... 25

# TABLE OF AUTHORITIES

**CASES:**

*Alleyne v. Time Moving & Storage Inc.,*
    264 F.R.D. 41 (E.D.N.Y. 2010) ........................................................................................ 16

*Amchem Products, Inc. v Windsor,*
    521 U.S. 591 (1997) .................................................................................................... 20, 23

*Becher v. Long Island Lighting Co.,*
    64 F. Supp. 2d 174 (E.D.N.Y. 1999) ............................................................................ 19

*In re Cablevision Consumer Litig.,*
    No. 10-cv-4992 JS AKT, 2014 U.S. Dist. LEXIS 44983 (E.D.N.Y. Mar. 31, 2014) ............... 21, 22

*City of Detroit v. Grinnell Corp.,*
    495 F.2d 448 (2d Cir. 1974) .......................................................................................... 13

*Clark v. Bank of Am., N.A.,*
    No. 18-cv-3672, 2020 U.S. Dist. LEXIS 31454 (D. Md. Feb. 24, 2020) ......................... 15

*Consolidated Rail Corp. v. Town of Hyde Park,*
    47 F.3d 473 (2d Cir. 1995) ............................................................................................ 22

*In re Drexel Burnham Lambert Group, Inc.,*
    960 F.2d 285 (2d Cir. 1992) .......................................................................................... 23

*In re Exxon Valdez,*
    229 F.3d 790 (9th Cir. 2000) ........................................................................................ 11

*Gross v. Washington Mut. Bank, F.A.,*
    No. 02-cv-4135 (RML), 2006 U.S. Dist. LEXIS 16975 (E.D.N.Y. Feb. 8, 2006) ................. 11, 16

*Guevoura Fund Ltd. v. Sillerman,*
    No. 15-cv-07192 (CM), No. 18-cv09784 (CM),
    2019 U.S. Dist. LEXIS 218116 (S.D.N.Y. Dec. 18, 2019) ............................................ 12

*In re GSE Bonds Antitrust Litig.,*
    No. 19-cv-1704 (JSR), 2019 U.S. Dist. LEXIS 218621 (S.D.N.Y. Dec. 16, 2019) ......................... 16

*Hasemann v. Gerber Prod. Co.,*
    331 F.R.D. 239 (E.D.N.Y. 2019) ............................................................................ 24, 25

*Hymes v. Bank of Am., N.A.,*
    408 F. Supp. 3d 171 (E.D.N.Y. 2019) ........................................................................ 2, 3

*Hymes v. Bank of Am., N.A.,*
No. 18-cv-2352 (RRM) (ARL), 2020 U.S. Dist. LEXIS 186376 (E.D.N.Y. Sep. 29, 2020) ........... 2

*Kindle v. Dejana,*
315 F.R.D. 7 (E.D.N.Y. 2016) ............................................................................................................ 22

*Kivett v. Flagstar Bank, FSB,*
N.D. Cal. No. 18-cv-5131-WHA, Dkt. 120 (N.D. Cal. Nov. 20, 2019) ................................... 19, 24

*Lusnak v. Bank of Am., N.A.,*
883 F.3d 1185 (9th Cir. 2018),
*rehearing and rehearing en banc denied* 2018 U.S. App. LEXIS 12745 (May 16, 2018),
*cert. denied* 139 S. Ct. 567 (2018) .................................................................................................... 15

*Lusnak v. Bank of Am., N.A.,*
C.D. Cal. No. 14-cv-1855-GW(GJSx), Dkt. 117 (C.D. Cal. Jan. 30, 2020) ................................... 19

*Maley v. Del. Glob. Techs. Corp.,,*
186 F. Supp. 2d 358 (S.D.N.Y. 2002) ............................................................................................... 16

*McShannock v. JPMorgan Chase Bank, N.A.,*
976 F.3d 881 (9th Cir. 2020) ............................................................................................................. 15

*In re Medical X-Ray Film Antitrust Litig.,*
No. 93-cv-5904 (CPS), 1997 U.S. Dist. LEXIS 21936 (E.D.N.Y. Dec. 10, 1997) ......................... 11

*In re Namenda Direct Purchaser Antitrust Litig.,*
462 F. Supp. 3d 307 (S.D.N.Y. 2020) ......................................................................................... 12, 14

*Omar v. 1 Front St. Grimaldi, Inc.,*
No. 16-cv-5824, 2019 U.S. Dist. LEXIS 4242 (E.D.N.Y. Jan. 8, 2019) .......................................... 23

*Perez v. Allstate Ins. Co.,*
No. 18-cv-1812 (AKT), 2019 U.S. Dist. LEXIS 59792 (E.D.N.Y. Mar. 29, 2019) ........................ 12

*In re Petrobras Sec. Litig.,*
862 F.3d 250 (2d Cir. 2017) ......................................................................................................... 21, 25

*Phillips Petroleum Co. v. Shutts,*
472 U.S. 797 (1985) ........................................................................................................................... 20

*In re Prudential Sec. Inc. Ltd. Partnerships Litig.,*
163 F.R.D. 200 (S.D.N.Y. 1995) ....................................................................................................... 20

*Reade-Alvarez v. Eltman, Eltman, & Cooper, P.C.,*
237 F.R.D. 26 (E.D.N.Y. 2006) ............................................................................................. 11, 17, 18

*In re Restasis Antitrust Litig.*,
    335 F.R.D. 1 (E.D.N.Y. 2020) ........................................................................................ 21

*Reynolds v. Lifewatch, Inc.*,
    136 F. Supp. 3d 503 (S.D.N.Y. 2015) ............................................................................. 21

*Robidoux v. Celani*,
    987 F.2d 931 (2d Cir. 1993) ........................................................................................... 22

*Rosario v. EMZ Sols. LLC*,
    No. 18-cv-3287(RPK)(CLP), 2020 U.S. Dist. LEXIS 142824 (E.D.N.Y. Aug. 7, 2020)
    *adopted by* 2020 U.S. Dist. LEXIS 245333 (E.D.N.Y. Dec. 31, 2020) (Kovner, J.) ......................... 12

*Shahriar v. Smith & Wollensky Rest. Grp., Inc.*,
    659 F.3d 234 (2d Cir. 2011) ........................................................................................... 22

*Sosna v. Iowa*,
    419 U.S. 393 (1975) ......................................................................................................... 23

*Springer v. Code Rebel Corp.*, No. 16-cv-3492(AJN),
    No. 16-cv-3492 (AJN), 2018 U.S. Dist. LEXIS 61155 (S.D.N.Y. Apr. 10, 2018) ......................... 19

*Sullivan v. DB Invs., Inc.*,
    667 F.3d 273 (3d Cir. 2011) ........................................................................................... 21

*In re Stock Exchs. Options Trading Antitrust Litig.*,
    Nos. 1283, M-21-79 (RCC), 2005 U.S. Dist. LEXIS 13734 (S.D.N.Y. July 8, 2005) ................. 11

*In re Toys "R" Us Antitrust Litig.*,
    191 F.R.D. 347 (E.D.N.Y. 2000) .................................................................................... 20

*Tyson Foods, Inc. v. Bouaphakeo*,
    136 S. Ct. 1036 (2016) ................................................................................................... 22

*In re U.S. Foodservice Inc. Pricing Litig.*,
    729 F.3d 108, (2d Cir. 2013) .................................................................................... 23, 24

*Walsh v. Northrop Grumman Corp.*,
    No. 94-cv-5105 (TCP), 1999 U.S. Dist. LEXIS 3645 (E.D.N.Y. 1999) ........................... 12

*Weil v. Long Island Sav. Bank*, FSB,
    188 F. Supp. 2d 164 (E.D.N.Y. 2001) .......................................................................... 15

*Weil v. Long Island Sav. Bank, FSB*,
    200 F.R.D. 164 (E.D.N.Y. 2001) .................................................................................. 22

*Zaslavskiy v. Weltman*,
    No. 18-cv-4747 (DLI)(SMG), 2020 U.S. Dist. LEXIS 194633 (E.D.N.Y. Oct. 19, 2020) .......... 11

**STATUTES & RULES**

Fed. R. Civ. P. 15.................................................................................................................... 6

Fed. R. Civ. P. 23....................................................................................................... *passim*

Conn. Gen. Stat. §49-2a .......................................................................................................... 7

MD. Comm. Law Code Ann. §12-109....................................................................................... 7

Minn. Stat. Ann. §47.20 subd. 9.............................................................................................. 7

New York General Obligations Law §5-601 ........................................................................ 4, 7

New York General Business Law §349 ................................................................................... 4

R.I. Gen. Laws §19-9-2.......................................................................................................... 7

Wis. Stat. §138.052 ............................................................................................................... 7

**MISCELLANEOUS:**

Herbert Newberg & Alba Conte, *Newberg on Class Actions* (4ᵗʰ Ed. 2002)................................... 12, 19, 20

Manual for Complex Litigation, Fourth (2004) ......................................................................... 12

Plaintiffs Rachel and Ariel Cymbalista ("Plaintiffs"), by and through their counsel, respectfully submit this *Memorandum of Law* and the accompanying Declarations of Joseph S. Tusa, Oren Giskan and Roger Heller in support of their consent motion for preliminary approval of the proposed *Settlement Agreement and Release* (the "Agreement"), conditional certification of the Settlement Class and entry of the proposed Preliminary Approval Order.

## **INTRODUCTION**

With the assistance of JAMS mediator and retired federal magistrate judge Hon. Elizabeth D. LaPorte, Plaintiffs and defendant JPMorgan Chase Bank, N.A. ("Chase" and collectively with Plaintiffs, the "Parties") have negotiated a settlement that provides significant monetary benefits to Settlement Class Members. The Settlement follows from hard-fought negotiations between experienced counsel, aided by an experienced mediator and lasting several months. The Parties' Agreement setting forth the terms of their settlement (the "Settlement") is annexed as Exhibit 1 to the accompanying Tusa Declaration and contains the following exhibits:

- Exhibit A: Proposed Preliminary Approval Order;
- Exhibit B: Proposed Final Approval Order
- Exhibit C: Summary Notice of Class Action Settlement (mail and email);
- Exhibit D: Long-Form Notice of Class Action Settlement

The Settlement achieves a favorable result for the Settlement Class, comprising borrowers of mortgage loans serviced by Chase in Connecticut, Maryland, Minnesota, New York, Rhode Island and Wisconsin (the "Class States"). Each of those states has enacted a statute requiring mortgage loan servicers to pay interest on monies held in escrow to pay costs such as property taxes and hazard insurance. Chase did not pay interest on escrow ("IOE") to certain borrowers in these states, based upon its determination that federal laws and/or regulations preempted the Class States' IOE laws. The Settlement Class comprises those borrowers in the 6 Class States whose loans were serviced by Chase and who were not paid IOE.

To settle the classwide claims in this action, Chase has agreed to make a non-reversionary Settlement payment of $11,500,000.00 (defined as the "Cash Settlement Amount"), which will be used to make payments to the Settlement Class, pay the costs of notice and other administrative costs, and pay any court awarded attorneys' fees and expenses for Settlement Class Counsel and any service awards for Plaintiffs. In addition, the Settlement requires Chase to pay Settlement Class members, who were not receiving IOE prior to this lawsuit, 100% of the IOE owed to them under the Class States' IOE laws for 3 years going forward (subject to the sole limitation that Chase may cease these prospective payments if there is a controlling mandatory appellate court decision holding that IOE need not be paid). The $11.5 million Cash Settlement Amount, alone, represents approximately 53% of the Settlement Classes' damages. And combining the $11.5 million Cash Settlement Amount and the prospective IOE payments Chase has also agreed to make, Plaintiffs' counsel estimates that the total value of the Settlement is approximately $18.75 million,[1] an overall recovery of 65% of IOE damages owed through the end of the prospective relief period.

The Settlement represents a very strong result for the Settlement Class, particularly in light of the remaining litigation risks in this case and delay from further litigation. Among those risks is the pending interlocutory appeal of the decision by Chief Judge Mauskopf denying another national bank defendant's argument there that the state IOE statutes are preempted by federal law—the same argument Chase has advanced in this case. *See Hymes v. Bank of Am., N.A.*, 408 F. Supp. 3d 171 (E.D.N.Y. 2019) *certified for appeal* 2020 U.S. Dist. LEXIS 186376 (E.D.N.Y. Sep. 29, 2020). On February 19, 2021, the Second Circuit accepted interlocutory appeal of the *Hymes* decision.

Based upon their investigation, discovery obtained in the litigation and during settlement negotiations, the Parties' motion to dismiss briefing, and the extensive settlement negotiations, Plaintiffs and Plaintiffs' counsel, who are proposed Settlement Class Counsel, believe that the terms

---

[1] Since the IOE laws in some of the Class States are based on a variable interest rate pegged to floating indicators, and because the number of loans owed IOE prospectively will fluctuate, the actual damages may vary.

of the Settlement are fair, reasonable and adequate. Plaintiffs' counsel's informed opinion considers, *inter alia*, the risks and complexity of class litigation, including the expense and length of time necessary to prosecute the action through trial; the uncertainty of outcome at trial and the likelihood of an appeal by either side following the trial; the pending *Hymes* appeal; and the substantial consideration being paid to Settlement Class Members under the terms of this Agreement. Indeed, Chase has denied and continues to deny any wrongdoing.

Accordingly, with the consent of Chase, Plaintiffs move this Court to enter the proposed Preliminary Approval Order that would, among other things: (1) grant Preliminary Approval of the Agreement; (2) certify the Settlement Class for settlement purposes; (3) appoint Plaintiffs as the named representatives for the proposed Settlement Class; (4) appoint the law firms of Tusa P.C., Giskan Solotaroff & Anderson LLP and Lieff Cabraser Heimann & Bernstein, LLP as Settlement Class Counsel; (5) approve KCC Class Action Services LLC as the Settlement Administrator; (6) stay all ongoing and future proceedings unrelated to Settlement; (7) approve the proposed class notice program, including the form, content and methods of distribution of the forms of notice; (8) schedule a Final Approval Hearing to consider whether the Settlement should be granted final approval; (9) set deadlines and procedures for Settlement Class Members to opt-out or object to the Settlement; (10) set deadlines and a procedure for the Parties to submit papers in support of final approval of the Settlement; and (11) set deadlines and a procedure for Plaintiffs' counsel to submit an application for the payment of their attorneys' fees and reasonable expenses and for service awards to the Plaintiffs.

# BACKGROUND

## I.  PROCEDURAL HISTORY

On January 27, 2020, Plaintiffs filed a *Class Action Complaint* (Dkt. 1) alleging breach of contract for Chase's violations of the laws in 13 states requiring the payment of IOE.[2]  That original complaint pled related counts for violations under the New York IOE statute, New York General Obligations Law ("GOL") §5-601, violations of New York General Business Law ("GBL") §349, consumer protection statutes in other States and common law unjust enrichment.

With the Court's permission, Chase filed its motion to dismiss on June 3, 2020, principally arguing that the National Bank Act ("NBA") and regulations issued by the Office of the Comptroller of the Currency ("OCC") preempt state IOE statutes and do not require nationally-chartered banks like Chase to pay IOE.  Dkt. 24.  Chase also made arguments to dismiss Plaintiffs' individual claims, including arguments that New York GOL §5-601 does not permit a private right of action, that GBL §349 contains a safe harbor for conduct approved by the OCC, and that Plaintiffs had failed to provide Chase with the pre-filing notice required by their mortgage agreement. *Id.*  Plaintiffs opposed the motion to dismiss on all grounds.  Dkt. 31.  Chase filed its reply on July 24, 2020.  Dkt. 38.  The briefing on the motion to dismiss ensured that Plaintiffs' Counsel gained a thorough understanding of the arguments Chase would make in defense of the Settlement Classes' claims. On December 23, 2020, the Court denied Chase's motion to dismiss, without prejudice, pending the outcome of the Parties' settlement discussions.  12/23/20 Elec. Order.

Chase sought to stay discovery while its motion to dismiss was pending.  Dkts. 21, 22. Plaintiffs opposed that request during the Initial Conference, held on April 8, 2020.  In a series of conferences and rulings, Magistrate Judge Gold permitted Plaintiffs to take discovery regarding Plaintiffs' Chase loan and Chase's companywide policies and procedures regarding the payment and

---

[2] In addition to the 6 Class States that are covered by the Settlement, the original complaint also included 7 additional states:  Iowa, Maine, Massachusetts, New Hampshire, Oregon, Utah and contingent claims for California.

non-payment of IOE. In accordance with Judge Gold's ruling, Plaintiffs conducted the discovery on these issues. *See* 4/8/20 Elec. Order & Minute Entry; Dkt. 29. The Parties also exchanged Rule 26(a) disclosures on April 6, 2020. Discovery was otherwise stayed pending a decision on the then-pending dismissal motion. *Id.* Chase's discovery production informed Plaintiffs' counsel of Chase's IOE policies and procedures and confirmed Plaintiffs' claims and the typicality of their injuries.

While the dismissal motion was pending, the Parties commenced settlement discussions. Dkts. 40, 41; Tusa Decl. ¶5. Given those discussions, the Court stayed the case for 45 days. 10/2/20 Elec. Order. On November 12, 2020, the Parties informed the Court that they had agreed to mediate before JAMS mediator Hon. Elizabeth LaPorte (Ret.). Dkt. 43. In advance of the meditation, both sides prepared and submitted to Judge LaPorte respective mediation statements. A full-day mediation occurred on December 15, 2020 by video conference. *Id.*; Tusa Decl. ¶6.

In advance of the mediation, Chase supplemented its litigation discovery production by producing to Plaintiffs' counsel data from Chase's loan servicing platform containing escrow balances for all loans in each of the 13 states included in the original complaint that were not paid IOE, and related data, sufficient to allow Plaintiffs' counsel to calculate the approximate amount of unpaid IOE for the mortgagors whose loans were serviced by Chase. Tusa Decl. ¶7. Using information produced by Chase, counsel for the Parties were able to independently estimate the amount of IOE alleged owed and not paid to these mortgagors. *Id.*

The December 15, 2020 mediation was attended by counsel for Plaintiffs and both outside and in-house counsel for Chase. Tusa Decl. ¶8. No agreement was reached at the end of the December 15 mediation, although Judge LaPorte was able to bring the Parties substantially closer than their pre-mediation settlement positions. *Id.* Following Plaintiffs' counsel's analysis of additional loan data provided by Chase, the Parties resumed settlement negotiations. *Id.* at ¶9. The Court therefore extended the stay until January 31, 2021. *See* 12/22/20 Elec. Order. By the end of

January 2021, the Parties still had not reached agreement, but were continuing negotiations. The stay was extended for another 2 weeks. *See* 2/1/21 Elec. Order.

With the further assistance of Judge LaPorte, the Parties were able to reach an agreement in principle. Tusa Decl. ¶11. The amount of the Cash Settlement Payment ($11.5 million) to be combined with the Parties' agreement as to prospective relief were the result of a mediator's proposal that Judge Laporte presented following the extensive negotiations, which both parties accepted. *Id.* The parties did not discuss Plaintiffs' counsel's attorneys' fees and expenses as part of their negotiations (other than that any such amounts granted by the Court would be paid from the Cash Settlement Amount.

On February 11, 2021, the Parties informed the Court of their agreement in principle. Dkt. 46. The Court granted the Parties' request to complete formalizing their agreement in a settlement agreement and related exhibits, and submit a motion for preliminary approval by April 1, 2021. 2/12/21 Elec. Order. On March 31, 2021, the Parties requested an extension to April 9, 2021, which the Court granted. Dkt. No. 48; 4/1/21 Elec. Order.

On April 9, 2021, with the consent of Chase and pursuant to FED. R. CIV. P. 15, Plaintiffs filed the operative *First Amended Class Action Complaint* (the "FAC"). Dkt. 49. The FAC limits the claims made in this action to IOE claims in the 6 Class States. Based on their analysis of the loan data, Plaintiffs' counsel formed the opinion that sufficient damages were not present in 7 of the 13 states included in the original complaint (*i.e.* California, Iowa, Massachusetts, Maine, New Hampshire, Oregon, Utah and Vermont), and that the Parties' negotiations should focus on the 6 Class States included in the Settlement. In most of the 7 excluded states, the IOE rate applicable during the relevant statutes of limitation was at or near 0% for much of the relevant time period. The FAC includes only claims for the 6 Class States. *See* Tusa Decl. at n.2. Claims relating to the other 7 states are not being settled by the proposed Settlement and no releases are being sought for

claims that may exist for mortgagors in those 7 states. The FAC also conforms the definition of the class to the definition of the "Settlement Class" in the Agreement. The FAC is otherwise the same as the original complaint. On April 9, 2021, the Parties and their counsel executed the Agreement.

## II.    NATURE OF THE CASE

The Class States have each enacted statutes requiring mortgage lending banks and/or loan servicers to pay IOE to mortgagors, with certain statutory exceptions. *See* Conn. Gen. Stat. §49-2a; MD. Comm. Law Code Ann. §12-109; Minn. Stat. Ann. §47.20 subd. 9; N.Y. GOL §5-601; R.I. Gen. Laws §19-9-2); and Wis. Stat. §138.052(5) (collectively the "State IOE Statutes"). This action alleges that Chase has not always paid the IOE owed to those mortgagors in the Class States. By not paying the IOE required by the State IOE Statutes, Plaintiffs maintain that Chase has violated those laws, breached standardized loan agreements that incorporate those laws and engaged in unfair and deceptive practices by not paying interest owed to mortgagors.

Chase is a nationally chartered bank that makes and services mortgage loans. Chase maintains, as have some (but not all) other national banks, that the NBA and OCC regulations, among other federal laws, preempt the application of State IOE Statutes to national banks. Chase denies that it has engaged in any wrongdoing and denies that Plaintiffs are entitled to relief under any claims asserted in this action. Plaintiffs dispute Chase's claims of federal preemption.

## III.    TERMS OF THE SETTLEMENT

### A.    CHASE WILL PAY $11.5 MILLION

Chase has agreed to pay $11,500,000.00 (defined as the "Cash Settlement Amount") to create a non-reversionary common settlement fund. That common fund will be used to pay: 1) settlement payments to the Settlement Class Members; 2) the costs of class notice and other administrative costs; 3) Court-approved attorneys' fees and expenses for Settlement Class Counsel; and 4) Court-approved service awards to the Plaintiffs. Agreement ¶84. None of the $11.5 million

will revert to Chase. *Id.* ¶47. Based on their analysis of Chase's loan data and the applicable interest rates under the State IOE Statutes, Plaintiffs' counsel estimate that the $11.5 million Cash Settlement Amount is approximately 53% of the unpaid IOE for the Settlement Class through December 31, 2020.

Importantly, all Settlement Class Members who do not exclude themselves will receive a Settlement distribution by mail without the need to file a claim. *Id.* ¶¶ 26, 95. The amount owed to each Settlement Class Member will be calculated by an independent Calculation Advisor using Chase's loan data for each borrower's escrow account. *Id.* ¶¶ 97-98. The "Net Cash Settlement Amount" (defined as the $11.5 million Cash Settlement Amount less Settlement administrative costs, Court-awarded attorneys' fees and expenses and Plaintiff service awards) will be distributed to the Settlement Class Members by mailed check. *Id.* ¶100. The Settlement payments will be calculated using the unpaid IOE for each Settlement Class Members during the Settlement Class Periods. Specifically, all Settlement Class Members will receive a $5.00 minimum payment, and thereafter the Net Cash Settlement Amount will be paid to Settlement Class Members based on the respective amount of the unpaid IOE for their loans. *Id.* ¶ 98.

Following the distributions to Settlement Class Members, any residual funds (consisting of uncashed or undeliverable Settlement payment checks) will be used to make a second distribution to those Settlement Class Members who cashed their first check if the residual amount is sufficient to justify the administrative cost of such second distribution or will be paid as *cy pres*. ¶105.

**B.      CHASE WILL PAY IOE IN THE SETTLING STATES PROSPECTIVELY FOR 3 YEARS**

In addition to the $11,500,000.00 Cash Settlement Amount, the Settlement obligates Chase to pay IOE to Settlement Class Members prospectively for 3 years beginning within 10 days of entry of Preliminary Approval by this Court of the Agreement. Agreement ¶48. During this time, Chase will pay IOE under the law of the applicable State at 100% of the applicable IOE interest rates of

the Class States. *Id.* Chase can discontinue the prospective relief in any State only if the federal Court of Appeals encompassing that State or the U.S. Supreme Court issues a decision establishing that federal banking law preempts state interest-on-escrow requirements. Prior to the filing of this Action, the Settlement Class Members were not receiving IOE payments. Based on their analysis of Chase's loan data, Settlement Class Counsel estimates that the 3-years of prospective IOE payments provide an additional approximately $7.3 million to the Settlement Class.

## C.    SETTLEMENT CLASS NOTICE PROGRAM

The Settlement proposes a robust notice program that includes direct notice to all Settlement Class Members by both mail (all Settlement Class Members) and email (for all Settlement Class Members for whom Chase has a valid email address). The Administrator will also establish a Settlement Website, where Settlement Class Members can get additional information and view the Long Form Notice, the Agreement, FAC, the Preliminary Approval Order and other key case documents. The notices and Settlement Website will also include a toll-free telephone number where Settlement Class Members can get more information about the Settlement and the case. Agreement ¶¶61, 63-68.

## D.    SETTLEMENT ADMINISTRATOR AND CALCULATION ADVISOR

The Settlement proposes that the Court appoint KCC Class Action Services ("KCC") to serve as Administrator for the Settlement. KCC has been appointed as the settlement administrator for hundreds of class action settlements. *See* https://www.kccllc.com/our-services/class-action/what-we-do. The Administrator will implement the notice program, administer the settlement fund, distribute settlement payment checks to the Settlement Class Members, process opt-out requests, and perform other administrative tasks as set forth in the Settlement. The Administrator will be paid from the $11.5 million common settlement fund. Agreement ¶¶1, 84(d).

Plaintiffs chose KCC, with Chase's consent, after receiving bids from two experienced settlement administrators.

The Settlement also proposes that the Court approve Arthur Olsen of Cassis Technology, LLC, to serve as the independent Calculation Advisor. The Calculation Advisor is charged with calculating the Settlement payments due to all Settlement Class Members, under the formula set in the Settlement and based the Chase's loan records. *Id.* ¶4. Mr. Olsen was approved by the federal court in *Lusnak v. Bank of Am., N.A.*, to serve in this same capacity in the class settlement of that case. Mr. Olsen is an often-approved expert witness with an expertise in data and database analysis, particularly in cases involving bank and loan records. *See In re Checking Account Overdraft Litig.*, 307 F.R.D. at 637-38 ("Plaintiffs propose to have their expert, Arthur Olsen, mine Wells Fargo's data to determine who the members of the class are, just as he has done numerous times before in this MDL as well as in the California Wells Fargo case.").

## E. ATTORNEYS' FEES AND EXPENSES; PLAINTIFFS' SERVICE AWARDS

Plaintiffs' counsel will move the Court for an award of attorneys' fees and reimbursement of their litigation expenses in a total amount not to exceed one-third of the Cash Settlement Amount. Plaintiffs will also move the Court for service awards of up to $10,000 to each Plaintiff, who will serve as the proposed Settlement Class representatives, to compensate them for their efforts and commitment on behalf of the Settlement Class. Any attorneys' fees, expenses and service awards granted by Court will be paid from the $11.5 million common settlement fund. Agreement ¶¶47, 84.

## F. SETTLEMENT CLASS MEMBERS' IOE CLAIMS WILL BE RELEASED

The Settlement provides that Settlement Class Members will receive notice of this Settlement and their rights to receive Settlement payments, object or seek exclusion from this Settlement. Agreement ¶64. The parties propose that the deadline for Settlement Class Members to seek exclusion or to object be set for forty-five (45) days after the Notice Deadline. Agreement ¶¶

24-25, 70, 74.  Settlement Class members who do not timely request exclusion will release Chase and its affiliates from all claims related to Chase's failure to pay IOE.  *Id.* ¶106 & n.1.  No Settlement Class Member is releasing any future claims beyond the approval of the Settlement or any or claims unrelated to the IOE claims made in this action.  *Id.*

## ARGUMENT

## I.    THE PROPOSED SETTLEMENT SATISFIES THE REQUIREMENTS FOR PRELIMINARY APPROVAL

### A.    STANDARDS FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENTS

There is a public interest in settling class actions.  *See In re Exxon Valdez*, 229 F.3d 790, 795 (9th Cir. 2000) ("The general policy of federal courts to promote settlement before trial is even stronger in the context of large-scale class actions.") (cited by *Bano v. Union Carbide Corp.*, 273 F.3d 120, 129- (2d Cir. 2001)); *Gross v. Wash. Mut. Bank, F.A.*, No. 02-cv-4135(RML), 2006 U.S. Dist. LEXIS 16975, *12 (E.D.N.Y. Feb. 8, 2006) (Granting preliminary approval; "the law looks favorably upon class action settlements because avoiding a trial conserves scarce judicial resources.").

Federal Rule of Civil Procedure 23(e) requires court approval of all class action settlements. Courts generally apply a two-step process to class action settlements. *See In re Stock Exchs. Options Trading Antitrust Litig.*, Nos. 1283, M-21-79(RCC), 2005 U.S. Dist. LEXIS 13734, *16 (S.D.N.Y. July 8, 2005) ("Preliminary approval is generally the first step in a two-step process before a class-action settlement is approved.") (citations omitted).  Under Rule 23(e)(1)(B)(i), preliminary approval should be granted if it is "likely" that the settlement will be finally approved under Rule 23(e)(2).  Final approval of a settlement is the second step in the approval process.

Preliminary approval of a class settlement "requires only an initial evaluation of the fairness of the proposed settlement on the basis of written submissions and an informal presentation by the settling parties." *Zaslavskiy v. Weltman*, No. 18-cv-4747 (DLI)(SMG), 2020 U.S. Dist. LEXIS 194633, at *13 (E.D.N.Y. Oct. 19, 2020) (internal quotation marks and citations omitted).  "[P]reliminary

approval should be granted and notice of the proposed settlement given to the class if there are no obvious deficiencies in the proposed settlements[,]" *In re Medical X-Ray Film Antitrust Litig.*, No. 93-cv-5904 (CPS), 1997 U.S. Dist. LEXIS 21936, *19 (E.D.N.Y. Dec. 10, 1997), and settlement "is the result of serious, informed and non-collusive negotiations." *Reade-Alvarez v. Eltman, Eltman, & Cooper, P.C.*, 237 F.R.D. 26, 33 (E.D.N.Y. 2006); *see also Manual for Complex Litigation ("MCL"), Fourth* §21.632 (2004) (Upon a request for preliminary approval, "The judge makes a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing."). "Usually the court will informally review these proposed settlement papers with counsel and then direct that notice of the proposed settlement and the hearing thereon be issued to all class members by mail, published notice, or a combination thereof." Herbert B. Newberg & Alba Conte, *Newberg on Class Actions*, (4th Ed. 2002) §11.24 (hereafter "Newberg").

## B. THE PROPOSED SETTLEMENT IS PROCEDURALLY FAIR AND THE RESULT OF ARMS-LENGTH NEGOTIATIONS BY EXPERIENCED AND KNOWLEDGEABLE COUNSEL

For preliminary approval, the Court should assess the procedural and substantive fairness of the settlement. *See In re GSE Bonds Antitrust Litig.*, No. 19-cv-1704(JSR), 2019 U.S. Dist. LEXIS 218621, at *10-11 (S.D.N.Y. Dec. 16, 2019). A settlement is procedurally fair if was negotiated at arms-length by experienced counsel and is not the product of collusion. *See Rosario v. EMZ Sols. LLC,* No. 18-cv-3287(RPK)(CLP), 2020 U.S. Dist. LEXIS 142824, at *9-11 (E.D.N.Y. Aug. 7, 2020) *adopted by* 2020 U.S. Dist. LEXIS 245333 (E.D.N.Y. Dec. 31, 2020) (Kovner, J.) (granting preliminary approval). "A strong initial presumption of fairness attaches to a proposed settlement if it is reached by experienced counsel after arm's-length negotiations, and great weight is accorded to counsel's recommendation." *In re Namenda Direct Purchaser Antitrust Litig.*, 462 F. Supp. 3d 307, 311 (S.D.N.Y. 2020) (citing *Guevoura Fund Ltd. v. Sillerman*, No. 15-cv-07192(CM), No. 18-cv09784 (CM), 2019 U.S. Dist. LEXIS 218116, at *16 (S.D.N.Y. Dec. 18, 2019*)); see also Perez v. Allstate Ins. Co.*, No.

18-cv-1812 (AKT), 2019 U.S. Dist. LEXIS 59792, *3-5 (E.D.N.Y. Mar. 29, 2019) (granting preliminary approval; finding settlement was "the result of extensive, arms'-length negotiations by counsel, well-versed in the prosecution of [pertinent] class and collective actions," and was reached with the assistance of an "experienced class-action … mediator," which "reinforces the non-collusive nature of the settlement"); *Walsh v. Northrop Grumman Corp.*, No. 94-cv-5105(TCP), 1999 U.S. Dist. LEXIS 3645, *9 (E.D.N.Y. 1999).

The proposed Settlement is procedurally fair. It is the result of hard-fought litigation and negotiations between the Parties and experienced counsel. The Parties negotiated for several months at arms-length, with the assistance of a retired federal judge as the mediator. Moreover, Plaintiffs' counsel was well positioned to negotiate, having engaged in the pre-filing investigation of this case and discovery, which was then supplemented by additional discovery produced during the settlement process. *See supra* at 4-7. The Lieff Cabraser firm, lead counsel and settlement class counsel in the *Lusnak* action, an IOE class action discussed below that recently obtained final settlement approval, brought unique additional knowledge to this litigation.

### C.    THE PROPOSED SETTLEMENT IS SUBSTANTIVELY FAIR

For substantive fairness, the nine factors identified by the Second Circuit in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448. 463 (2d Cir. 1974) (the "*Grinnell* factors") are "instructive." *Rodario*, 2020 U.S. Dist. LEXIS 142824, at *13. The *Grinnell* factors comprise:

> (1) [T]he complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation[.]

Rule 23(e)(2) also provides factors for the Court's consideration, which overlap considerably with the *Grinnell* factors. Under FED. R. CIV. P. 23(e)(2), a court should consider whether: (a) the

class representatives and class counsel have adequately represented the class; (b) the proposal was negotiated at arm's length; (c) the relief provided for the class is adequate, taking into account the costs, risks, and delay of trial and appeal, the effectiveness of any proposed method of distributing relief to the class, including the method of processing class member claims, the terms of any proposed award of attorney's fees, including timing of payment, and any agreement required to be identified under Rule 23(e)(3); and (d) the proposal treats class members equitably relative to each other). *See In re Namenda*, 462 F. Supp. 3d at 311 ("The factors set forth in Rule 23(e)(2) have been applied in tandem with the Second Circuit's *Grinnell* factors and focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal.") (citation omitted).

The relevant factors heavily favor preliminary approval of the Settlement, which was mediated and proposed by Judge LaPorte. The Settlement provides fair, reasonable and adequate consideration to the Settlement Class, while entirely mitigating the litigation risk.

### 1. Plaintiffs and Plaintiffs' Counsel Have Zealously Represented the Class (FED. R. CIV. P. 23(e)(2)(A))

Plaintiffs and their counsel worked for months to investigate their individual and classwide claims and to prepare the case for filing. After the case was filed, Plaintiffs and their counsel opposed Chase's dismissal motion and efforts to stay discovery. *See supra* at 4. Plaintiffs' counsel continued their zealous representation during Settlement negotiations, refusing to provide their recommendation for settlement approval until after being satisfied that the terms were favorable to Plaintiffs and the Settlement Class. After meditating for a full day before Judge LaPorte on December 15, 2020, Plaintiffs' counsel still did not recommend a settlement of this action on the terms offered. *Id.* Only after additional settlement discovery was provided, negotiation and mediation continued for another several weeks and Judge LaPorte made a mediator's proposal to settle this case, did Plaintiffs and their counsel agree to the Settlement.

2.     **The Settlement Represents a Strong Result for the Settlement Class, Particularly Given the Substantial Risk and Challenges They Face (FED. R. CIV. P. 23(e)(2)(C); Grinnell Factors 1 & 4-9)**

The Settlement provides approximately $18.75 million in payments to the Settlement Class, combining the non-reversionary $11.5 million Cash Settlement Amount and 3-years of prospective IOE payments.  The $11.5 million Cash Settlement Amount alone represents approximately 53% of the Settlement Classes' IOE damages through December 31, 2020.  And the combined $18.75 million value of the Settlement represents an estimated 65% of the Settlement Class' IOE damages during the Settlement Class Period and 3-year prospective payment period.  Under either metric, the Settlement provides a very strong result for the Settlement Class.

While Plaintiffs believe they would have prevailed in defeating Chase's dismissal motion, obtained litigated certification of the class, defeated any summary judgment motions and prevailed at trial and appeal, those results are far from assured.  *Weil v. Long Island Sav. Bank*, FSB, 188 F. Supp. 2d 164, 264 (E.D.N.Y. 2001) ("It is axiomatic that anything can happen at trial.").  In fact, if Plaintiffs failed to prevail at *any* stage of this case (dismissal, certification, summary judgment, trial or appeal), the Settlement Class would likely not receive any recovery.

Among other remaining risks and challenges in this case, Plaintiffs' counsel had to consider that the *Hymes* dismissal opinion, which rejected the national bank defendant's argument that the NBA and OCC regulations preempt state IOE laws,[3] could be reversed in the ongoing interlocutory appeal in that case.  If that happened, Plaintiffs and the Settlement Classes' claims in this action would most likely be subject to dismissal.  Plaintiffs also expect that Chase would argue that loans in the Settlement Class that are or were serviced by Chase, but originated by a federal savings association that was subject to the Home Owners Loan Act and legacy regulations issued by the

---

[3] The *Hymes* court followed the result of *Lusnak v. Bank of Am., N.A.*, 883 F.3d 1185 (9th Cir. 2018), *rehearing and rehearing en banc denied* 2018 U.S. App. LEXIS 12745 (May 16, 2018), *cert. denied* 139 S. Ct. 567 (2018).  *See also Clark v. Bank of Am., N.A.*, No. 18-cv-3672, 2020 U.S. Dist. LEXIS 31454 (D. Md. Feb. 24, 2020) (denying motion to dismiss).

Office of Thrift Supervision, are preempted under those federal laws and regulations. *See McShannock v. JPMorgan Chase Bank, N.A.*, 976 F.3d 881 (9th Cir. 2020).[4] Moreover, Chase has raised other defenses beyond preemption. While Plaintiffs believe they would have overcome those as well, they present additional risk of continued litigation.

In light of the remaining risks and delay of continued litigation, the result of the Settlement returning between approximately 53% (the $11.5 million only) and 65% (inclusive of the prospective Settlement payments) is an exemplary result warranting approval. *See Rosario*, 2020 U.S. Dist. LEXIS 142824 at *17 ("When the proposed settlement provides a meaningful benefit to the class when considered against the obstacles to proving plaintiff's claims with respect to damages in particular, the agreement is reasonable."); *In re GSE Bonds Antitrust Litig.*, 2019 U.S. Dist. LEXIS 218621 at *17 ("While the 10.9% to 21.3% is only fraction of the best possible recovery, courts in this district have approved similar percentages."); *Alleyne v. Time Moving & Storage Inc.*, 264 F.R.D. 41, 58 (E.D.N.Y. 2010) ("As a benchmark, in *Grinnell*, the Second Circuit found that a 12% recovery was reasonable. *See* 495 F. 2d at 461-62. One to five percentage points higher than *Grinnell*, the settlement fund is in the range of reasonableness when compared to the maximum possible recovery."); *Maley, v. Del. Glob. Techs. Corp.,*, 186 F. Supp. 2d 358, 364 (S.D.N.Y. 2002) ("In assessing the Settlement, the Court should balance the benefits afforded to members of the Class and the immediacy and certainty of a substantial recovery for them against the continuing risks of litigation.").

Given the circumstances and litigation risk, the Settlement easily satisfies Rule 23(e)(2)(C) and *Grinnell* factors 1 and 4-9. *See Gross,* 2006 U.S. Dist. LEXIS 16975 at *15 ("With respect to the reasonableness of the settlement fund in light of the best possible recovery, the court may give credence to the opinions of experienced attorneys in assessing this comparison.").

---

[4] The Dodd Frank Act merged the Office of Thrift Supervision into the OCC, which placed the regulation of federal savings associations under the OCC.

### 3. The Settlement Treats Settlement Class Members Equitably (FED. R. CIV. P. 23(e)(2)(D))

The Settlement benefits will be distributed pursuant to a fair and equitable allocation plan. FED. R. CIV. P. 23(e)(2)(D). All Settlement Class Members who do not opt-out of the Settlement will be sent a settlement check, and the Settlement payments will be based on the unpaid escrow interest each of them is allegedly owed for the Settlement Class Periods. Specifically, each loan in the Settlement Class will receive: (a) a minimum payment of $5.00; plus (b) a portion of the remaining settlement payment funds—*i.e.*, most of the funds (the Net Cash Settlement Amount minus the minimum payments)—which will be allocated among the loans in the Settlement Class (on top of the minimum payment) in amounts directly proportionate to the alleged unpaid escrow interest for each loan. Agreement ¶98. The individual Settlement Class Member payments will be calculated by the Calculation Advisor based on loan data compiled and provided by Chase from its loan servicing platform. *Id.* ¶¶ 93-98. This allocation plan ensures that the most compensation will be provided to Settlement Class Members who incurred the most alleged harm. Moreover, in accordance with Rule 23, all Settlement Class Members have the right to exclude themselves (*i.e.* opt-out) from the Settlement or remain in the Settlement and file an objection to final approval. *Id.* ¶¶ 69, 74. Each of those rights and options are explained in the Short Form and Long Form Notices submitted to the Court for approval. ¶8; Exs. C, D (proposed Notices).

### 4. The Proposed Notices Comply with Rule 23(e)(1)(B) and Due Process

FED. R. CIV. P. 23(e)(1)(B) provides that: "The court must direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise." Here, the proposed Preliminary Approval Order directs sending the Short Form Notice to all Settlement Class Members via mail and also by email (if their email addresses are known) using the contact information from Chase's records, the posting of the Long Form Notice on a Settlement Website created and maintained by the Settlement Administrator and use of that

Settlement Website to provide the relevant litigation and Settlement documents, deadlines and forms to the Settlement Class and the public. Agreement ¶¶ 57-58, 61-62, 64; Agreement, Ex. A (proposed Preliminary Approval Order), Exs. C & D (proposed Notices). Accordingly, direct notice will be sent to each Settlement Class Member. Direct notice to all class members who can be reasonably identified is deemed to be the "best notice practicable under the circumstances" and in full compliance with all due process standards. *See* FED. R. CIV. P. 23(c)(2)(B); *Ann Reade-Alvarez*, 237 F.R.D. 26 at 34.

The proposed Notices are written in plain English and includes a description of the nature of the action, the definition of the Settlement Class, the Settlement terms, the claims made in this Action and the positions taken by the Parties, the Settlement Class Members' options to remain in the Settlement Class (even if they object to approval) or request exclusion, the procedure to object to opt-out, when the Court will hold the final approval and the binding effect of the releases and a final judgment on Settlement Class Members. *See* FED. R. CIV. P. 23(c)(2)(B). The Notices provide the address of the Settlement Website as well as a toll-free telephone number for Settlement Class Members to ask questions about the Settlement. Agreement Exs. C, D. Questions can also be submitted by email and through a link on the Settlement Website. Plaintiffs' counsel will assist the Administrator in answering inquires by the Settlement Class Members. The proposed Notices conform to Rules 23(c)(2)(B) and 23(e)(1)(B) and comply with due process. *See Ann Reade-Alvarez*, 237 F.R.D. 26 at 34 (citing and discussing *Weinberger v. Kendrick,* 698 F.2d 61, 70-71 (2d Cir. 1982)).

The Court should approve the proposed Notice Program, including the proposed forms of notice and the proposed plan for dissemination of notice to the Settlement Class.

### 5. The Additional Rule 23(e) Factors Support Preliminary Approval

The proposed method of distributing the Settlement benefits is fair and reasonable. FED. R. CIV. P. 23(e)(2)(C)(ii) (court must consider "the effectiveness of any proposed method of

distributing relief to the class, including the method of processing class-member claims"). As described above, there is no claims process in this Settlement and all Settlement Class members who do not opt-out will automatically be mailed a check containing their Settlement payment.

Rule 23(e)(2)(C)(iii) also requires the Court to consider "the terms of any proposed award of attorney's fees, including timing of payment." Here, the agreement provides that Settlement Class Counsel will seek attorneys' fees and expenses in a total amount not to exceed one-third (1/3) of the $11.5 million Cash Settlement Amount, subject to Court approval. Agreement ¶89. A one-third percentage would be consistent with the range awarded in this Circuit.[5] Settlement Class Counsel will file a motion seeking the payment of attorneys' fees in advance of the deadline for Settlement Class Members to opt-out or object, and it will be available on the Settlement Website after it is filed. *Id.* ¶¶ 58(d), 60(b), 89.

Finally, there are no agreements between the Parties other than the Settlement. FED. R. CIV. P. 23(e)(3) ("the parties seeking approval must file a statement identifying any agreement made in connection with the proposal").

## II.     THE COURT SHOULD PROVISIONALLY CERTIFY THE CLASS

It is proper at preliminary approval for the court to provisionally certify a settlement class under Rule 23. Newberg, §11-26. Courts considering the "interest on escrow" cases have certified classes both for litigation and settlement. *See Kivett v. Flagstar Bank, FSB*, N.D. Cal. No. 18-cv-5131-WHA, Dkt. 120 (N.D. Cal. Nov. 20, 2019) (certifying litigation class); *Lusnak v. Bank of Am., N.A.* C.D. Cal. No. 14-cv-1855-GW(GJSx), Dkt. 117 (C.D. Cal. Jan. 30, 2020) (granting preliminary approval and provisionally certifying settlement class); *Id.* at Dkt. 130 (Aug. 10, 2020) (finally certifying settlement class).

---

[5] *See e.g., Springer v. Code Rebel Corp.*, No. 16-cv-3492(AJN), 2018 U.S. Dist. LEXIS 61155, at *14 (S.D.N.Y. Apr. 10, 2018) ("33.3% is within the range of fee awards typically awarded."); *Becher v. Long Island Lighting Co.*, 64 F. Supp. 2d 174, 182 (E.D.N.Y. 1999) (one-third fee "well within the range accepted by courts in this circuit") (citing cases)).

## A.   THE SETTLEMENT CLASS

The Parties agree to the certification of a "Settlement Class" for settlement, defined as:

> All persons identified in Chase's mortgage-servicing records as holding a mortgage loan Serviced by Chase that was secured by real property in Connecticut, Maryland, Minnesota, New York, Rhode Island, or Wisconsin who, during the Class Period, would have been due interest on an escrow account maintained by Chase under the laws of Connecticut, Maryland, Minnesota, New York, Rhode Island, or Wisconsin, but were not paid such interest.  Excluded from the Settlement Class are Chase; Chase's officers and directors at all relevant times, as well as members of their immediate families and their legal representatives, heirs, successors, or assigns; and any entity in which Chase has or had a controlling interest.  Also excluded from the Settlement Class are federal, state, and local governments and all agencies and subdivisions thereunder; and any judge to whom this Action is or has been assigned and any member of his or her immediate family.  Not included in the Settlement Class are persons having the following types of loans excluded by the applicable laws in Connecticut, Maryland, Minnesota, New York, Rhode Island, or Wisconsin:
>
> a.   In Connecticut, loans securing non-owner-occupied properties.
>
> b.   In Maryland, loans that are not the first mortgage on the property.
>
> c.   In Minnesota, (i) loans originated after July 1, 1996; (ii) loans securing non-owner-occupied properties; (iii) loans where the original loan amount is above 80% of the original appraised value of the property; and (iv) loans insured or guaranteed by the Department of Veterans Affairs or the Federal Housing Administration.
>
> d.   In New York, (i) loans securing non-owner-occupied properties and (ii) loans originated before July 1, 1974.
>
> e.   In Rhode Island, (i) loans securing non-owner-occupied properties; and (ii) loans insured by the Federal Housing Administration or the Department of Veterans' Affairs.
>
> f.   In Wisconsin, (i) loans securing non-owner-occupied properties; (ii) loans insured by Federal Housing Administration or the Department of Veterans Affairs; and (iii) loans originated after January 1, 2019.

Agreement ¶40.  Settlement Class Members may elect to exclude themselves from the Settlement Class after receiving notice.  ¶69.  This complies with due process.  *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985).

Settlement classes are often used to settle class litigation. "When a court has not yet entered a formal order determining that the action may be maintained as a class action, the parties may stipulate that it be maintained as a class action for the purpose of settlement only." Newberg, §11.27. The federal courts also approve of the use of settlement classes. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 619-20 (1997) (approving use of settlement classes)*; In re Toys "R" Us Antitrust Litig.*, 191 F.R.D. 347, 351 (E.D.N.Y. 2000) (citing *Amchem* for same). "The settlement class device has been recognized throughout the country as the best, most practical way to effectuate settlements involving large numbers of claims by relatively small claimants." *In re Prudential Sec. Inc. Ltd. Partnerships Litig.*, 163 F.R.D. 200, 205 (S.D.N.Y. 1995) (citations and quotation marks omitted).

**B.      THE SETTLEMENT SATISFIES THE CERTIFICATION REQUIREMENTS OF RULE 23**

A class will be certified where the four requirements of Federal Rule 23(a) are satisfied – numerosity, commonality, typicality and adequacy of representation – plus the requirements of any one of the sub-sections of Federal Rule 23(b). *See* FED. R. CIV. P. 23. The Parties seek settlement certification under Rule 23(b)(3). A class should also be objectively ascertainable, a "modest threshold" for certification. *In re Petrobras Sec. Litig.*, 862 F.3d 250, 269 (2d Cir. 2017). These certification requirements "should be 'given liberal rather than restrictive construction....'" *In re Cablevision Consumer Litig.*, No. 10-cv-4992 JS AKT, 2014 U.S. Dist. LEXIS 44983, at *14 (E.D.N.Y. Mar. 31, 2014) (quoting *Marisol A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir. 1997)).

The Parties have consented to a Settlement Class of mortgagors under the state laws in the 6 Class States. The nature of the claims for each Class State are materially identical—*i.e.*, all require the payment of IOE for mortgage loans included in the Settlement Class. Certification of classes, and especially settlement classes, applying multiple state laws is appropriate. *See Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 301-04 (3d Cir. 2011) (*en banc*) (affirming final approval of multi-state class settlement certification under statutory and/or common laws of 50 states; "state law variations are

largely irrelevant to certification of a settlement class." (citation omitted); *In re Restasis Antitrust Litig.*, 335 F.R.D. 1, 33-38 (E.D.N.Y. 2020) (certifying class under state laws of 31 states); *Reynolds v. Lifewatch, Inc.*, 136 F. Supp. 3d 503, 518 (S.D.N.Y. 2015) ("courts in the Second Circuit [] have recognized that '[w]hen a class action raises common issues of conduct that would establish liability under a number of states' laws, it is possible for those common issues to predominate and for class certification to be an appropriate mechanism for handling the dispute.'") (quoting *Steinberg v. Nationwide Mutual Ins. Co.*, 224 F.R.D. 67, 79 (E.D.N.Y. 2004)).

## 1. The Numerosity Requirement Is Satisfied

Based on the loan records produced by Chase, there are approximately 294,000 loans in the Settlement Class. *See* Agreement at 2. Numerosity is presumed with 40 or more class members. *Consolidated Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995). Numerosity is easily satisfied here.

## 2. The Commonality Requirement is Satisfied

FED. R. CIV. P. 23(a)(2) requires only that there be one or more questions of law or fact common to the class. "A single common issue of law will satisfy the commonality requirement." *Weil v. Long Island Sav. Bank*, FSB, 200 F.R.D. 164, 169 (E.D.N.Y. 2001). "Commonality is satisfied where a single issue of law or fact is common to the class." *In re Cablevision Consumer Litig.*, 2014 U.S. Dist. LEXIS 44983, at *15 (emphasis in original) (citing *Wal–Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2556 (2011)). Commonality is a "minimal burden for a party to shoulder." *Kindle v. Dejana*, 315 F.R.D. 7, 11 (E.D.N.Y. 2016) (citation and quotation marks omitted).

Here, a common question comprises whether all Settlement Class members are due interest on their escrow accounts under Class State's IOE statutes. Moreover, Chase's argument that federal preemption applies presents a common defense applicable to the claims of all Settlement Class Members. *See Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1047 (2016). Commonality is satisfied.

### 3. Plaintiffs' Claims Are Typical of The Settlement Class

Rule 23(a)(3) requires that the "claims or defenses of the representative parties [be] typical of the claims or defenses of the class." FED. R. CIV. P. 23(a)(3). Typicality is satisfied "when each class member's claim arises from the same course of events and each Class member makes similar legal arguments to prove the defendant's liability." *Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 252 (2d Cir. 2011) (citations omitted); *see also Robidoux v. Celani,*, 987 F.2d 931, 937 (2d. Cir. 1993) (the typicality requirement is usually met "[w]hen it is alleged that the same unlawful conduct was directed at or affected both the named plaintiffs and the class sought to be represented….").

Plaintiffs and the Settlement Class were due interest on their mortgage loans serviced by Chase under the applicable Class States IOE statutes and were not paid that interest due to Chase's position that those statutes were preempted by federal law. *See* Dkt. 25 (Chase dismissal brief) at 3. Plaintiffs' loan agreements and statements, including the discovery produced in this action by Chase concerning Plaintiffs' loan, confirm that Plaintiffs were due IOE under their State IOE statute and their mortgage agreement but for Chase's assertion of federal preemption. Those facts underlie all of the Settlement Class Members' claims. Plaintiffs' and Settlement Classes' claims therefore satisfy the typicality requirement.

### 4. Plaintiffs and Settlement Class Counsel Will Fairly and Adequately Represent the Settlement Class

Federal Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This requirement is satisfied when the class representative's attorneys are qualified and the class representatives have no interests conflicting with the class. *Sosna v. Iowa*, 419 U.S. 393, 403 (1975); *In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 290 (2d Cir. 1992). These criteria are readily satisfied here.

Plaintiffs do not possess individual claims that are antagonistic to the Settlement Class. *See Omar v. 1 Front St. Grimaldi, Inc.*, No. 16-cv-5824, 2019 U.S. Dist. LEXIS 4242, at *29 (E.D.N.Y. Jan.

8, 2019). Further, the firms seeking to represent the Settlement Class are extensively qualified and experienced in representing consumers and borrowers in class actions. *See* Tusa Decl. at ¶¶ 15, 16 & Ex. 2; Giskan Decl. at ¶¶ 3, 4 & Ex. 1; Heller Decl. at ¶¶ 2-6 (providing hyperlink to firm resume).

### 5.     The Settlement Class Satisfies Rule 23(b)(3) Predominance

To certify a Federal Rule 23(b)(3) class, common issues of law or fact should predominate over individual issues. *See Amchem*, 521 U.S. at 615; *In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 118 (2d Cir. 2013) (predominance satisfied if common issues "are more substantial the issues subject to only individualized proof."). Predominance is a test "readily met" in consumer class actions. *Amchem*, 521 U.S. at 624 (emphasis added); *Hasemann v. Gerber Prod. Co.*, 331 F.R.D. 239, 272 (E.D.N.Y. 2019) (same). The predominant issue in this case is the Settlement Classes' claims that the Class States' IOE statutes require payment of IOE. *Kivett*, Dkt. 120 at 8-11 ("In sum, this is a classic and textbook issue of the class action device. The law required interest to be paid but the savings association did not do so to its borrowers, all allegedly cheated by the savings association. … It is hard to imagine a case more worthy of class treatment."). Chase's preemption defense is another predominant common issue. *See Tyson Foods*, 136 S. Ct. at 1047 (defense applicable classwide can be a predominate issue); *In re US FoodService Pricing Litig.*, 729 F.3d at 119 (same).

Common issues of fact and law will predominate over any individual issues in this case.

### 6.     The Settlement Class Satisfies Rule 23(b)(3) Superiority

The superiority analysis normally requires that the Court examine whether the class action is superior to other methods of adjudication and directs the Court to consider, *inter alia*, any "management difficulties likely to be encountered in pursing the class action." FED. R. CIV. P. 23(b)(3). "Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems." *See Amchem*, 521 U.S. at 620. Here, the claims of approximately 294,000 mortgagors will be settled against Chase

in a single forum, and the amounts of their individual alleged damages (which average less than $100) are far too small to justify the expense of bringing individual litigation.  This class action is an efficient manner to resolve these claims, *see In re US FoodService Pricing Litig.*, 729 F.3d at 130, especially on the favorable terms proposed in the Settlement.

7.      **The Settlement Class is Ascertainable**

The Second Circuit requires only that a "'class be defined using objective criteria that establish a membership with definite boundaries ....'" *Hasemann*, 331 F.R.D. at 270 (quoting *In re Petrobras Sec. Litig.*, 862 F.3d at 264-65).  The definition of the Settlement Class satisfies that criteria. Moreover, Chase's loan records have already identified the Settlement Class Members, demonstrating that the Settlement Class is ascertainable.

## CONCLUSION

Therefore, for all the reasons stated above, Plaintiffs respectfully request that the Court grant preliminary approval to the proposed Agreement, provisionally certify the Settlement Class, appoint Plaintiffs as the representatives for the Settlement Class and their counsel as Settlement Class Counsel and enter the proposed Preliminary Approval Settlement Order.

DATED:  April 9, 2021

Respectfully submitted**,**

**TUSA P.C.**

By:  /s/ Joseph S. Tusa
Joseph S. Tusa
joseph.tusapc@gmail.com
55000 Main Road
P.O. Box 566
Southold, NY  11971
Tel. (631) 407-5100

**GISKAN SOLOTAROFF
& ANDERSON LLP**

By: */s/* Oren Giskan
Oren Giskan
ogiskan@gslawny.com
Michael Jaffe, Of Counsel
90 Broad Street, 10th Floor
New York, New York 10013
Tel. (646) 964-9644

**LIEFF, CABRASER, HEIMANN
& BERNSTEIN, LLP**
Roger Heller (*pro hac vice*)
rheller@lchb.com
275 Battery Street, 29th Fl.
San Francisco, CA  94111-3339
Tel. (415) 956-1000

- and -

Avery S. Halfon
ahalfon@lchb.com
250 Hudson Street, 8th Fl.
New York, NY 10013-1413
Tel. (212) 355-9500

*Attorneys for Plaintiffs
and proposed Settlement Class Counsel*