UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------X
RACHEL CYMBALISTA and ARIEL
CYMBALISTA, *on behalf of themselves and
all others similarly situated*,

                           Plaintiffs,

      -against-

JPMORGAN CHASE BANK, N.A.,

                       Defendant.
-----------------------------------------------------X

**REPORT AND RECOMMENDATION**
**20 CV 456 (RPK)(LB)**

**BLOOM, United States Magistrate Judge:**

Plaintiffs bring this class action against JPMorgan Chase Bank, N.A. ("Chase") alleging breach of contract, unjust enrichment, violations of New York's General Obligation Law § 5-601, violations of New York's General Business Law § 349, and violations of various state consumer protection statutes. Am. Compl. ¶ 2, ECF No. 49. The parties have settled this matter and now move for preliminary approval of their settlement agreement. ECF No. 50. The Honorable Rachel Kovner referred the parties' motion for settlement approval to me for a Report and Recommendation pursuant to 28 U.S.C. § 636(b). For the reasons set forth below, it is respectfully recommended that the motion for preliminary settlement approval should be granted.

**BACKGROUND[1]**

Plaintiffs Rachel and Ariel Cymbalista were mortgagors on mortgages originating with Chase Bank in 2004 and 2011 in connection with their single-family home. Am. Compl. ¶ 7. During the mortgage period, Chase maintained an escrow account containing funds related to

---

[1] All facts are taken from plaintiffs' first amended complaint, ECF No. 49, and are undisputed for the purposes of this motion.

plaintiffs' mortgage. Id. The funds held in this account were collected to enable Chase to directly pay tax and property insurance fees. Id. ¶ 9. Plaintiffs allege that Chase was required to make interest payments on the funds held in escrow under both the mortgage agreement and New York law, but that Chase never made interest payments. Id. ¶ 7. The funds, although held in escrow, remained plaintiffs' money and so under New York's General Obligation Law, Chase was required to pay at least two-percent interest. Id. ¶ 10. Other jurisdictions, including Connecticut, Maryland, Minnesota, Rhode Island, and Wisconsin, have similar statutes which mandate payment of interest on these types of escrow accounts. Id. ¶ 11.

Plaintiffs original loan agreement, entered into with Chase in 2004, states that the "Mortgage is governed by Federal Law and the law that applies in the place that the Property is located." Id. ¶ 13. The terms of plaintiffs' subsequent loan, obtained in 2011, states in pertinent part that Chase "will not be required to pay any interest or earnings on the Escrow Funds *unless either* (1) Lender and I agree in writing that Lender will pay interest on the Escrow Funds, or (2) *Applicable Law requires Lender to pay interest on the Escrow Funds*." Id. ¶ 14. (Emphasis in original). "Applicable law" includes both federal and state law. Id. When plaintiffs consolidated their two loans, their agreement with Chase contained the same language regarding the payment of interest. Id. ¶ 15. Despite these provisions in each loan agreement, Chase never paid interest on the funds in plaintiffs' escrow account. Id. ¶ 17. Plaintiffs allege that the state statutes regarding payment of interest are not preempted by federal law. Id. ¶ 20.

## PROCEDURAL HISTORY

Plaintiffs commenced this class action on January 27, 2020 on behalf on themselves and a purported class of mortgagors in fourteen different states. Compl. ¶ 26, ECF No. 1. On March

20, 2020, Chase announced its intention to move to dismiss the complaint, ECF No. 17, and subsequently requested a stay of discovery, ECF No. 21. In light of the COVID-19 public health emergency, Magistrate Judge Gold, then the assigned Magistrate Judge, granted a stay of discovery to permit Chase to file its motion to dismiss. See Electronic Order dated Apr. 8, 2020. Chase filed its motion to dismiss, which plaintiffs opposed, and Magistrate Judge Gold continued the stay of discovery, except as agreed to by the parties. See Electronic Orders dated June 15, 2020, Oct. 2, 2020, Nov. 13, 2020, Dec. 12, 2020. The stay was further continued when the parties reported that they were engaged in productive settlement negotiations and, in light of the ongoing settlement discussions, the Court denied defendant's motion to dismiss without prejudice. See Electronic Order dated Dec. 23, 2020. Plaintiff subsequently filed an amended complaint which limited the class to mortgagors in six states – Connecticut, Maryland, Minnesota, New York, Rhode Island, and Wisconsin. Am Compl. ¶ 26. The parties then moved for preliminary approval of their agreement to resolve this class action. ECF No. 50. In support of their motion, the parties provided: a Memorandum of Law ("Mem. of Law") (ECF No. 50-1); the declaration of Joseph Tusa (Tusa Decl., ECF No. 50-2); their settlement agreement ("Settle. Agreement"), proposed releases, and proposed orders (ECF No. 50-3); the firm resume of Tusa P.C. (ECF No. 50-4); the declaration of Oren Giskan (Giskan Decl., ECF No. 50-5); and the declaration of Roger Heller (Heller Decl., ECF No. 50-6). The parties' settlement was reached with the assistance of retired federal Magistrate Judge Elizabeth LaPorte. Mem. of Law 1.

## SETTLEMENT AGREEMENT

### A. Class Members

The parties' agreement defines the settlement class as set forth in the amended complaint.

Compare Am. Compl. ¶ 26 with Settle. Agreement ¶ 40. In pertinent part, the class includes:

> All persons identified in Chase's mortgage-servicing records as holding a mortgage loan Serviced by Chase that was secured by real property in Connecticut, Maryland, Minnesota, New York, Rhode Island, or Wisconsin who, during the Class Period, would have been due interest on an escrow account maintained by Chase under the laws of Connecticut, Maryland, Minnesota, New York, Rhode Island, or Wisconsin, but were not paid such interest.

Settle. Agreement ¶ 40. The term "Serviced by Chase" refers to "a mortgage loan for which Chase maintained an escrow account for the mortgagor(s) to pay, among other things, property taxes, school taxes, and/or hazard insurance premiums." Id. ¶ 38. The "Class Period" differs depending upon the location of the real property which is the subject of the mortgage. Id. ¶ 9. The Class Period begins for mortgagors: (i) with loans secured by property in Rhode Island on January 1, 2010; (ii) with loans secured by property in Connecticut, Minnesota, New York, or Wisconsin on January 1, 2014; and (iii) with loans secured by property in Maryland on January 1, 2017. Id. The Class period ends on the Execution Date of the agreement, April 9, 2021. Id. ¶¶ 9, 14.

### B. Financial Terms

Under the agreement, Chase will pay $11.5 million into the Settlement Fund Account. Id. ¶¶ 44, 47. Distributions from the account will be made to each class member[2] in an amount determined using a formula set forth in the agreement. Id. ¶ 98. Funds from the settlement will also pay for attorney's fees and costs, service awards to plaintiffs Rachel and Ariel Cymbalista – up to $10,000 each, administrative costs, and applicable taxes and fees. Id. ¶¶ 47, 84, 87. Chase

---

[2] The parties' settlement agreement capitalizes the title "Class Member." The Court will style the term in lowercase.

also agrees to pay interest on class members' escrow accounts for three years following the preliminary approval of the parties' settlement. Id. ¶ 48. Chase may stop these future payments to class members in certain states in the event a state appellate court for that state, a federal Court of Appeals with jurisdiction over that state, or the United States Supreme Court rules that the state's interest-on-escrow laws are pre-empted by federal law. Id.

**C. Notice to Class Members**

Within fourteen days of preliminary approval of the settlement, Chase will provide the settlement Administrator with a list containing the names and other identifying information for class members. Id. ¶ 63. Within forty-five days of preliminary approval, the Administrator will send Class Notices to members of the class through a Notice Program. Id. ¶ 64. Short Form Notices will be sent by email where possible. Id. ¶ 64(a). The Short Form notice will also be mailed after the settlement Administrator verifies each class member's address using commercially available electronic databases. Id. ¶ 64(b). The notice states in pertinent part:

> You are receiving this notice because JPMorgan Chase Bank serviced an escrow account for your mortgage loan for property in Connecticut, Maryland, Minnesota, New York, Rhode Island, or Wisconsin. You may be eligible for payment from a class action settlement.

Id. Ex. C. The Short Form Notice also contains information about: (1) the background of this case; (2) who is included in the class; (3) the possible award to each class member; (4) each class members options, including objecting to the settlement and excluding themselves; (5) when an approval hearing will be held; (6) and information about class counsel. Id. If a notice is returned as undeliverable, the Administrator will use reasonable efforts to ascertain the affected class member's address. Id. ¶ 64(b). The settlement Administrator will also establish the Settlement website at least one day before the Short Form Notices are mailed or emailed, which will include a Long Form Notice. Id. ¶¶ 58(b), 60(b). The Long Form Notice provides more detailed

information about the settlement and the rights and options of class members. Id. Ex. D. Upon completion of the Notice Program, the Administrator will report completion to the parties. Id. ¶ 66.

**D. Opting Out of the Settlement and Objections**

The settlement agreement provides that any class member may opt-out of the settlement by providing the settlement Administrator with a statement declaring that they are opting out. Id. ¶ 70. The statement must be: post-marked no later than 45 days after the completion of the settlement's notice procedures; include the class member's name, address, and phone number; state that the class member wants to opt out of the settlement; and be signed and dated. Id. The settlement Administrator must provide a copy of the statement to the parties' counsel. Id. ¶ 71. Those class members who opt out of the settlement will not be entitled to receive a share of the settlement award. Id. ¶ 72.

Class members can object to any portion of the settlement, including attorney's fees and service awards. Id. ¶ 74. Objections must be filed with the Court – either electronically or by mail – and a copy sent to the parties' counsel. Id. An objection may be considered if it is filed by the Objection Deadline, which is forty-five days after the completion of the notice process. Id. Any objection must include – along with other information – the case name, the objector's name and contact information, and the grounds for the objection. Id. ¶ 75. An objection must conform to the terms specified in the agreement or the objecting class member may not be heard at the final approval hearing. Id. ¶ 76.

**E. Calculation of Settlement Awards and Award Distribution**

Chase will provide class counsel with sufficient data to permit the calculation of how much interest would have been owed on each class member's escrow account. Id. ¶ 93. A final

list of participating class members will be compiled after final settlement approval. Id. ¶ 96. As described more fully in the agreement, each award will be determined by: (1) calculating the amount of interest which would have been due on each class member's account; (2) determining the class member's share factor by dividing their unpaid interest by the total unpaid interest for all class members; (3) establishing a minimum payment of $5 for each class member; (4) calculating Additional Distribution Funds by subtracting all minimum payments from the total net cash settlement amount (the total amount paid by Chase minus service awards, fees and expenses, and administrative costs); (5) calculating the Additional Distribution Amount by multiplying each class member's share factor by the additional distribution funds amount; and (6) adding the Minimum Payment to the class member's Additional Distribution Amount. Id. ¶ 98. If the total amount of class member awards exceeds the net cash settlement amount, each award will be reduced *pro rata* until the net cash settlement amount is no longer exceeded. Id. ¶ 99.

As described more fully in the parties' settlement agreement, class member's settlement awards will be sent via check by the settlement administrator within sixty days of the settlement's Effective Date, as defined by the agreement. Id. ¶ 100. The Administrator will confirm the class members' addresses through the Settlement Website or commercial databases prior to mailing the checks. Id. ¶ 101. Each check shall be valid for 150 days and efforts will be made to locate class members if a check is returned. Id.

## F. Service Awards and Fees

Plaintiffs Ariel and Rachel Cymbalista will apply to the Court for an award of up to $10,000 each to be paid from the settlement fund. Id. ¶ 87. Class Counsel will apply for an award of attorney's fees not to exceed one-third of the settlement amount. Id. ¶ 89. In the event the

Court approves an award which is less than the amount requested by the lead plaintiffs or Class Counsel, that shall not be a basis for setting aside the parties' agreement. Id. ¶¶ 88, 90.

## G. Releases

On the Effective Date of the agreement, each class member who has not opted-out of the settlement, thereby becoming a Participating Class Member, agrees to release Chase from any claims brought, or which reasonably could have been brought, in this action. Id. ¶ 106. The parties agree that participation in this settlement will serve as a defense in any future lawsuit brought by a class member on grounds related to the claims in this case. Id. ¶ 108.

The parties agree that the Court will retain jurisdiction over this matter and the enforcement of their settlement agreement. Id. ¶ 133.

## DISCUSSION

## I. Legal Standard

Approval of a class action settlement occurs in two stages: (1) the preliminary approval stage where the Court makes an initial evaluation of the settlement's fairness before notifying the class and (2) the final approval stage when class members and the parties are given an opportunity to be heard before the Court approves the settlement. Mikhlin v. Oasmia Pharm. AB, No. 19-CV-4349(NGG)(RER), 2021 WL 1259559, at *2 (E.D.N.Y. Jan. 6, 2021) (quoting In Re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig., 330 F.R.D. 11, 27 (E.D.N.Y. 2019)). Class action settlement approval is governed by Federal Rule of Civil Procedure 23(e). At the preliminary approval stage, the Court must determine whether it "will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." In re GSE Bonds Antitrust Litig., 414 F. Supp. 3d 686, 692 (S.D.N.Y. 2019)

(quoting In Re Payment Card, 330 F.R.D. at 28). Settlement of class actions and complex litigation is strongly favored by public policy and the courts. Cohen v. J.P. Morgan Chase & Co., 262 F.R.D. 153, 157 (E.D.N.Y. 2009)). Nevertheless, "the Court's role … 'is demanding because the adversariness of litigation is often lost after the agreement to settle.'" In re GSE Bonds Antitrust Litig., 414 F. Supp. 3d at 692 (quoting Zink v. First Niagara Bank, N.A., 155 F. Supp. 3d 297, 308 (W.D.N.Y. 2016)). If the Court determines that it will likely be able to grant final approval of the settlement agreement and certify the class, then it must direct reasonable notice to all class members. Mikhlin, 2021 WL 1259559, at *2 (quoting FED. R. CIV. P. 23(e)(1)(B)).

## II. Preliminary Approval

In the Second Circuit, courts historically looked to the Grinnell factors when evaluating whether a proposed class action settlement was fair and reasonable. Wal-Mart Stores, Inc. v. Visa U.S.A., Inc., 396 F.3d 96, 117 (2d Cir. 2005) (citing City of Detroit v. Grinnell Corp., 495 F.2d 448, 463 (2d Cir. 1974); In Re Payment Card, 330 F.R.D. at 29. These factors include:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

Wal-Mart Stores, Inc., 396 F.3d at 117 (citing Grinnell Corp., 495 F.2d at 463). However, after the 2018 amendments to Federal Rule of Civil Procedure 23(e), Courts in this Circuit now look to the factors set forth in the Rule and then turn to the Grinnell factors to fill in any gaps and complete the analysis. See, e.g., Mikhlin, 2021 WL 1259559, at *2; In Re Payment Card, 330 F.R.D. at 29; In re GSE Bonds Antitrust Litig., 414 F. Supp. 3d at 692. Rule 23(e)(2) states that

in determining whether a settlement is "fair, reasonable, and adequate" the Court must consider whether:

> (A) the class representatives and class counsel have adequately represented the class;

> (B) the proposal was negotiated at arm's length;

> (C) the relief provided for the class is adequate, taking into account:

> (i) the costs, risks, and delay of trial and appeal;

> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and

> (iv) any agreement required to be identified under Rule 23(e)(3); and

> (D) the proposal treats class members equitably relative to each other.

After considering the Rule 23(e)(2) factors, Courts supplement their analysis with the Grinnell factors. Mikhlin, 2021 WL 1259559, at *3.

**A. The Proposed Settlement is Fair and Reasonable Under the Rule 23(e)(2)**

**1. Adequacy of Representation**

Rule 23(e)(2)(A) requires the Court to analyze "whether the class representatives and class counsel have adequately represented the class." In making this determination, the Court must consider two areas: "(1) the representative plaintiffs' attorneys must be qualified, experienced, and generally able to conduct the litigation, and (2) the plaintiffs' interests must not be antagonistic to those of the remainder of the class." Bourlas v. Davis Law Assocs., 237 F.R.D. 345, 352 (E.D.N.Y. 2006) (quoting Reade-Alvarez v. Eltman, Eltman & Cooper, P.C., 237 F.R.D. 26, 32 (E.D.N.Y. 2006)). Plaintiffs' interests are considered congruent with other class members when plaintiffs and class members have suffered the same injury because they share

the same "interest in vigorously pursuing the claims of the class." In re GSE Bonds Antitrust Litig., 414 F. Supp. 3d at 692 (internal quotation marks omitted) (quoting Denny v. Deutsche Bank AG, 443 F.3d 253, 268 (2d Cir. 2006)). Courts find class counsel qualified when they are experienced and "knowledge[able] in the area of complex class actions." In Re Payment Card, 330 F.R.D. at 33.

Here, both the class representatives and class counsel adequately represent the class. The class representatives, Rachel and Ariel Cymbalista, suffered the same injury and are seeking to recover the same damages as all of the members of the proposed class: unpaid interest on their escrow accounts maintained by defendant Chase. Am. Compl. ¶¶ 17, 26. Class counsel – Tusa P.C., Lieff Cabraser Heimann & Bernstain, LLP, and Giskan Solotaroff & Anderson LLP – have filed declarations which establish their qualifications and ability to manage this action. See Tusa Decl.; Heller Decl.; Giskan Decl. Each individual attorney has served as class counsel or settlement class counsel in several class actions. Tusa Decl. ¶ 16; Heller Decl. ¶ 5; Giskan Decl. ¶ 3. Accordingly, the adequacy of the representation in this case weighs in favor of settlement approval.

**2. The Proposal Was Negotiated at Arm's Length**

The Court must consider whether the parties' proposed settlement is the product of an arm's length negotiation. FED. R. CIV. P. 23(e)(2)(B). "[A] class action settlement enjoys a 'presumption of correctness' where it is the product of arm's-length negotiations conducted by experienced, capable counsel." In re Telik, Inc. Sec. Litig., 576 F. Supp. 2d 570, 575 (S.D.N.Y. 2008) (quoting In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig., 718 F. Supp. 1109, 1103 (S.D.N.Y. 1989)); see also, Mikhlin, 2021 WL 1259559, at *5 (quoting In re GSE Bonds Antitrust Litig., 414 F. Supp. 3d at 693). The participation of a former judicial officer as a

mediator lends credibility to the negotiation process and supports the assertion that a settlement was reached without collusion and at arm's length. In re Telik, Inc. Sec. Litig., 576 F. Supp. 2d at 576 (citing In re AMF Bowling Sec. Litig., 334 F. Supp. 2d 462, 465 (S.D.N.Y. 2004)).

Here, the record supports a finding that the proposed settlement is the product of arm's length negotiations. The settlement was negotiated over several months with the Hon. Elizabeth La Porte (Ret.), a retired federal Magistrate Judge, acting as a mediator. Mem. of Law 1; Tusa Decl. ¶ 4. Judge LaPorte's involvement allays any concerns about unfair negotiation practices and weighs in favor of settlement approval. Mikhlin, 2021 WL 1259559, at *5 (citing In re GSE Bonds Antitrust Litig., 414 F. Supp. 3d at 693) ("Involvement by a mediator in settlement negotiations also supports a finding of procedural fairness.").

**3. Adequate Relief for the Class**

The Federal Rules of Civil Procedure require the Court to consider whether the proposed settlement provides adequate relief for the class. FED. R. CIV. P. 23(e)(2)(C). This analysis focuses on:

> (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3).

Fed. R. Civ. P 23(e)(2)(C)(i)-(iv). This analysis is important because if the relief provided by the settlement is inadequate, then the class representatives fail in their duty to the class. In Re Payment Card, 330 F.R.D. at 36 (quoting Scott v. Weig, No. 15-CV-9691(RWS), 2018 WL 2254541, at *4 (S.D.N.Y. May 17, 2018)).

**a. The Costs, Risks, and Delay of Trial and Appeal**

The Court's consideration of the costs and risks of trial encompasses several of the Grinnell factors, including: (i) the complexity, expense and likely duration of the litigation; (ii)

the risks of establishing liability; (iii) the risks of establishing damages; (iv) and the risks of maintaining the class through trial. Id. The Court will have to examine the range of recovery and the likelihood of success were the case to proceed. Id. Settlement is favored when the alternative – litigating the case – will be long, complex, and expensive. In re GSE Bonds Antitrust Litig., 414 F. Supp. 3d at 693. The Court is aware that even "[a] relatively straightforward case becomes more complex when certified as a class action." Buchanan v. Pay-O-Matic Check Cashing Corp., No. 18-CV-885(FB)(SMG), 2020 WL 8642081, at *8 (E.D.N.Y. Oct. 8, 2020), Report and Recommendation adopted by 2021 WL 722412 (E.D.N.Y. Feb. 24, 2021).

Plaintiffs assert that the $11.5 million cash settlement in this case is "approximately 53% of the Settlement Classes' (sic) damages." Mem. of Law 2. When combined with the future interest payments the settlement agreement requires defendant Chase to make, the value of the settlement increases to approximately $18.75 million, or approximately 65% of the class' potential damages. Id. This is a substantial recovery given that courts in this Circuit have approved class action settlements with settlement awards representing far smaller percentages of the total possible damages. In re GSE Bonds Antitrust Litig., 414 F. Supp. 3d at 697 (approving a settlement award which was only 13% to 17% of the possible recovery). Therefore, given the inherent risks and duration of litigation, the certainty of a substantial and speedy recovery in this case weighs in favor of settlement approval. See Mikhlin, 2021 WL 1259559, at *5 (quoting In re Glob. Crossing Sec. & ERISA Litig., 225 F.R.D. 436, 459 (S.D.N.Y. 2004)); Christine Asia Co. Ltd. v. Yun Ma, No. 15-MD-2631(CMA)(SDA), 2019 WL 5257534, at *11 (S.D.N.Y. Oct. 16, 2019).

As plaintiffs point out, the proposed settlement also avoids the risk that plaintiffs' claims could be dismissed were their causes of action found to be pre-empted by federal banking law.

Mem. Of Law. 2 (citing <u>Hymes v. Bank of Am., N.A.</u>, 408 F. Supp. 3d 171 (E.D.N.Y. 2019)).

That issue is currently pending before the Second Circuit. <u>Id.</u> Prior to settlement in this matter,

defendant Chase moved to dismiss the complaint and argued that the National Bank Act pre-

empted plaintiffs' claims. ECF No. 25. The parties fully briefed the issue, ECF Nos. 24-26, 31,

38, before the Court denied Chase's motion to dismiss without prejudice in light of the parties'

progress toward settlement, <u>see</u> Electronic Order dated Dec. 23, 2020. The proposed settlement

obviates plaintiffs' risk of an adverse ruling by the Circuit and of the delay inherent in

dispositive motion practice. <u>See</u> <u>Mikhlin</u>, 2021 WL 1259559, at *5 (discussing the burden the

plaintiffs would face were the parties to engage in dispositive motion practice). The costs, risks,

and duration of litigation in this case all could be substantial. This further supports approval of

the parties' proposed settlement.

**b.  The Effectiveness of any Proposed Method of Distributing Relief to the Class**

The Court must evaluate "the effectiveness of any proposed method of distributing relief

to the class, including the method of processing class-member claims." FED. R. CIV. P.

23(e)(2)(C)(ii). In considering the effectiveness of the proposed method of distributing the

settlement to class members, the Court must consider whether the proposed method will "'deter

or defeat unjustified claims' without imposing an undue demand on class members." <u>Mikhlin</u>,

2021 WL 1259559, at *6 (quoting FED. R. CIV. P. 23 advisory committee's note to 2018

amendment). The proposed distribution "formula need only have a reasonable rational basis,

particularly if recommended by experienced and competent class counsel." <u>In Re Payment Card</u>,

330 F.R.D. at 40 (internal quotation marks omitted) (quoting <u>In re WorldCom, Inc. Sec. Litig.</u>,

388 F. Supp. 2d 319, 344 (S.D.N.Y. 2005)). Distribution plans which distribute the settlement

award based on each class member's *pro rata* share, have been found to be fair and rational. <u>See</u>,

e.g., Rosenfeld v. Lenich, No. 18-CV-6720(NGG)(PK), 2021 WL 508339, at *6 (E.D.N.Y. Feb. 11, 2021); Mikhlin, 2021 WL 1259559, at *6; In re Namenda Direct Purchaser Antitrust Litig., 462 F. Supp. 3d 307, 316 (S.D.N.Y. 2020; In re GSE Bonds Antitrust Litig., 414 F. Supp. 3d at 695; In Re Payment Card, 330 F.R.D. at 41. However, the Court is mindful that in "a large class action the apportionment of a settlement can never be tailored to the rights of each plaintiff with mathematical precision" and an allocation plan "need not be perfect." In re LIBOR-Based Fin. Instrument Antitrust Litig., 327 F.R.D. 483, 496 (S.D.N.Y. 2018) (first quoting In re PainWebber Ltd. P'ships Litig., 171 F.R.D. 104, 133 (S.D.N.Y. 1997) aff'd 117 F.3d 721 (2d Cir. 1997); and then quoting Hart v. RCI Hosp. Holdings, Inc., No. 09 Civ. 3043(PAE), 2015 WL 5577713, at *12 (S.D.N.Y. Sept. 22, 2015)).

As explained more fully in the parties' settlement agreement, a class member's award is calculated by determining the class member's share factor: the member's unpaid interest divided by the total unpaid interest for all class members. Settle. Agreement ¶ 98(b). The data needed to calculate these amounts will be supplied by defendant Chase. Id. ¶ 93. The class member's share factor will be multiplied by the funds remaining after administrative costs, service awards, fees, and minimum payments are deducted from the total settlement amount. Id. ¶ 98(c)-(e). The result will then be added to the minimum payment, yielding the class member's individual award. Id. 98(f). In this way, the resulting individual award is correlated to the class member's share of the overall unpaid interest. This method of calculating each class member's award is fair and reasonable. See In re LIBOR-Based Fin. Instrument Antitrust Litig., 327 F.R.D. at 496.

**c. The Terms of Proposed Attorney's Fees**

Rule 23(e)(2)(C)(iii) requires the Court to examine "the terms of any proposed award of attorney's fees, including the timing of payment." The Court must ensure that class members'

interests are not placed below counsel's interests. Johnson v. Rausch, Sturm, Israel, Enerson & Hornik, LLP, 333 F.R.D. 314, 322 (S.D.N.Y. 2019). At the same time, the Court recognizes that attorney's fees paid from a common fund serve the important purpose of encouraging representation of a class and thereby "'discouraging future misconduct'" by defendants. In re Signet Jewelers Ltd. Sec. Litig., No. 16-CV-6728(CM)(SDA), 2020 WL 4196468, at *15 (S.D.N.Y. July 21, 2020) (quoting In re FLAG Telecom Holdings, Ltd. Sec. Litig., No. 02-CV-3400(CM)(PED), 2010 WL 4537550, at *23 (S.D.N.Y. Nov. 8, 2010)). Courts in this Circuit frequently find that requests for attorney's fees which are approximately one-third of a class action's settlement amount are reasonable. See, e.g., Rosenfeld, 2021 WL 508339, at *6 (collecting cases); Mikhlin, 2021 WL 1259559, at *7; In re GSE Bonds Antitrust Litig., 414 F. Supp. 3d at 695-96.

Courts disagree about the appropriateness of permitting an award of attorney's fees to be paid before class members receive their settlement awards – commonly known as a "quick-pay" provision. Mikhlin, 2021 WL 1259559, at *7 (comparing cases in which courts have rejected quick pay provisions with those that have approved them). Some courts find such provisions problematic and fear that approving a quick pay provision dilutes class counsel's incentive to continue fighting to protect the class members after fees are paid. Hart v. BHH, LLC, 334 F.R.D. 74, 77 (S.D.N.Y. 2020). Other courts have found that quick-pay provisions are innocuous because the timing of attorney's fees payment does not affect the size of the settlement fund and a quick payment might deter objections to settlement approval. Id. at 77-78. (first citing Pelzer v. Vassalle, 665 F. App'x 352, 365 (6th Cir. 2016); and then citing In re Whirlpool Corp., Front-loading Washer Prod. Liab. Litig., No. 08-WP-65000(CAB), 2016 WL 5338012, at *21 (N.D. Ohio Sept. 23, 2016)). However, quick pay provisions are of special concern to the Court when

the class action defendant may be or may become insolvent, and therefore the settlement amount

may not be paid in full. See Hernandez v. Between the Bread 55th Inc., 496 F. Supp. 3d 791, 808

(S.D.N.Y. 2020). Payment of attorney's fees prior to the payment of class member awards may

be acceptable when the class's interests are sufficiently protected. Mikhlin, 2021 WL 1259559,

at *7. The Court is also aware that some agreements propose a middle ground, providing that

half of the attorney's fees will be paid at the time of final approval and half will be paid once

class member awards have been paid in full. In re GSE Bonds Antitrust Litig., 414 F. Supp. 3d at

695.

The instant settlement agreement provides that class counsel may apply to the Court for a

fee award of no more than one-third of the $11.5 million settlement. Settle. Agreement ¶¶ 47, 89.

The parties will still be bound by the agreement even if the Court ultimately awards less than the

amount requested by class counsel. Id. ¶ 90. The agreement thereby vests the Court with

discretion over the final amount of the award. Should class counsel seek an award of one-third of

the settlement fund here, this amount would be in line with fees approved in other class actions

in the Second Circuit. See, e.g., Guevoura Fund Ltd. v. Sillerman, No. 2019 WL 6889901, at *15

(S.D.N.Y. Dec. 18, 2019) ("In this Circuit, courts routinely award attorneys' (sic) fees that run to

30% and even a little more of the amount of the common fund." (quoting In re Beacon Assocs.

Litig., No. 09 Civ. 777(CM), 2013 WL 2450960, at *5 (S.D.N.Y. May 9, 2013))). Although the

attorney's fee award will be paid before class members receive their portion of the settlement,

see Settle Agreement, ¶¶ 92, 100, the Court retains discretion over the final fee award and this

"quick pay" provision does not render the agreement unreasonable in and of itself. This

provision should not bar preliminary approval of the settlement agreement. See Mikhlin, 2021

WL 1259559, at *7; Buchanan, 2020 WL 8642081, at *8 (recommending preliminary approval

of a class action settlement and finding the proposed attorney's fees request reasonable because payment would occur only after final approval of the agreement). The Court herein does not have solvency concerns about the defendant that have given other courts pause.  See Hernandez, 496 F. Supp. 3d at 808. However, before granting final approval, the Court may wish to revisit this provision.[3]

### d. Any Agreement Required to be Identified under Rule 23(e)(3)

Under Rule 23(e)(2)(C)(iv), the Court must consider "any agreement required to be identified under Rule 23(e)(3) which in turn requires "the parties seeking approval…[to] file a statement identifying any agreement made in connection with the proposal. Here, plaintiffs' motion papers state "there are no agreements between the parties other than the Settlement." Mem. of Law 19. Therefore, this factor "has no bearing on the preliminary approval analysis." In re GSE Bonds Antitrust Litig., 414 F. Supp. 3d at 696.

### e. The Terms of A Proposed Service Award

Although the factors under Rule 23(e) do not expressly require the Court to evaluate a proposed service award to the class representatives, the Court will examine the proposed award to ensure the adequacy of the relief to the class members. Such awards are common in class actions in the Second Circuit and are intended to "compensate the Named Plaintiffs for their willingness to serve the Class, the service they rendered, risks they bore, and opportunities sacrificed to ensure a favorable class settlement." Henry v. Little Mint, Inc., No. 12 Civ. 3996(CM), 2014 WL 2199427, at *10 (S.D.N.Y. May 23, 2014). The amount of a service award, if any, is within the Court's discretion. Buchanan, 2020 WL 8642081, at *8 (quoting Gay v. Tri-

---

[3] "Cynically, money is the best way to keep lawyers engaged."  Hart v. BHH, LLC, 334 F.R.D. 74, 77 (S.D.N.Y. 2020).

Wire Eng'g Sols., Inc., No. 12-CV-2231(KAM)(JO), 2014 WL 28640, at *13 (E.D.N.Y. Jan 2, 2014)).

Here, the settlement agreement provides that plaintiffs Ariel and Rachel Cymbalista may apply for an award of up to $10,000 to be paid from the $11.5 million settlement amount. Settle. Agreement ¶ 87. The Court has discretion to set the service award amount and the parties will honor the agreement even if the Court approves an award less than the amount requested by plaintiffs. Id. ¶ 88. At this juncture, plaintiffs have not provided any information which would allow the Court to assess the extent of plaintiffs' service to the class. Nevertheless, given the size of the maximum service award allowable under the agreement and the Court's discretion in this area, this provision should not bar preliminary approval of the settlement. Buchanan, 2020 WL 8642081, at *9. Class counsel shall provide the necessary information to the Court for final approval of the class action settlement.

### 4. The Proposal Treats Class Members Equitably Relative to Each Other

Rule 23(e)(2)(D) requires the Court to consider "whether the proposal treats class members equitably relative to each other." In evaluating this factor, the Court may examine "whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of the relief." In Re Payment Card, 330 F.R.D. at 47 (quoting FED. R. CIV. P. 23 advisory committee's note to 2018 amendment). Pro rata distribution schemes are sufficiently equitable and satisfy the requirements of Rule 23(e)(2)(D). Rosenfeld, 2021 WL 508339, at *7; Mikhlin, 2021 WL 1259559, at *8; In Re Payment Card, 330 F.R.D. at 47 (citing Meredith Corp. v. SESAC, LLC, 87 F. Supp. 3d 650, 667 (S.D.N.Y. 2015)).

19

As discussed above, the settlement agreement provides for class member awards which are derived by calculating each class member's share of the total unpaid interest. Settle. Agreement ¶ 98. As plaintiffs state in their motion papers, [t]his allocation plan ensures that the most compensation will be provided to Settlement Class Members who incurred the most alleged harm. Mem. of Law 17. Therefore, this is an equitable distribution scheme because it distributes relief on the basis of each individual class member's claim. See Mikhlin, 2021 WL 1259559, at *8 (citing In Re Payment Card, 330 F.R.D. at 47). Further, the parties' proposed release applies equally to all class members and "does not appear to affect the apportionment of relief to class members." In Re Payment Card, 330 F.R.D. at 47. This factor supports preliminary approval of the settlement.

### 5. Ability of the Defendant to Withstand Greater Judgment

The seventh Grinnell factor, the defendant's ability to withstand a greater judgment, does not fit neatly within any of the factors enumerated in Rule 23(e)(2)(C) but adds value to the Court's analysis. A defendant's cooperation "tends to offset the fact that they would be able to withstand a larger judgment." In re GSE Bonds Antitrust Litig., 414 F. Supp. 3d at 696 (internal quotation marks omitted) (quoting In re Pressure Sensitive Labelstock Antitrust Litig., 584 F. Supp. 2d 697, 702 (M.D. Pa. 2008)). Further, when a defendant is a large corporation its capacity to withstand a greater judgment should not in and of itself undermine an otherwise reasonable settlement agreement. Id. (quoting In re Vitamin C Antitrust Litig., No. 06-MD-1738(BMC)(JO), 2012 WL 5289514, at *6 (E.D.N.Y. Oct. 23, 2012)).

In the instant matter, defendant Chase's ability to withstand a greater judgment does not weigh against preliminary approval of the settlement. In addition to agreeing to settle this matter, Chase will cooperate to identify class members and to provide data necessary to calculate

individual awards. Settle. Agreement. ¶ 93. Chase's status as a large corporation with assets far in excess of the settlement amount in this case does not on its own militate against preliminary approval of the parties' agreement.

**6. The Range of Reasonableness of the Settlement**

The final two <u>Grinnell</u> factors, the range of reasonableness of the settlement in light of the best possible recovery and all of the attendant risks of litigation, are often considered together. <u>In Re Payment Card</u>, 330 F.R.D. at 47-48 (collecting cases). These factors require an examination of what would constitute plaintiff's best possible recovery. <u>In re GSE Bonds Antitrust Litig.</u>, 414 F. Supp. 3d at 696. As discussed above, the total relief under the proposed settlement will be approximately 53% to 65% of plaintiffs' total damages. Mem. of Law 16. These factors weigh in favor of settlement approval.

Having considered Rule 23(e)(2) and the <u>Grinnell</u> factors, the Court will likely find the settlement agreement to be fair, reasonable and adequate when final approval is sought.

**III. Certification of the Settlement Class**

Prior to conditionally certifying a class for settlement purposes, the Court must find that the class meets the prerequisites of Federal Rule of Civil Procedure 23(a) and (b). <u>Cohen</u>, 262 F.R.D. at 157-58. Rule 23(a)'s requirements are "(1) numerosity ('the class is so numerous that joinder of all members is impracticable'), (2) commonality ('there are questions of law or fact common to the class'), (3) typicality ('the claims or defenses of the representative parties are typical of the claims or defenses of the class'), and (4) adequacy of representation ('the representative parties will fairly and adequately protect the interests of the class')". <u>In re Literary Works in Elec. Databases Copyright Litig.</u>, 654 F.3d 242, 249 (2d Cir. 2011) (quoting FED. R. CIV. P. 23(a)). In addition, the class must meet the requirement of "ascertainability." <u>In Re</u>

Payment Card, 330 F.R.D. at 50. Under Rule 23(b)(3), which the parties rely on here, the Court must also find "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

**A. Numerosity**

A class must be "so numerous that joinder of all members is impracticable." FED. R. CIV. P. 23(a)(1). "Numerosity is presumed for classes larger than forty members." Pa. Pub. Sch. Emps. Ret. Sys. v. Morgan Stanley & Co., Inc., 772 F.3d 111, 120 (2d Cir. 2014) (citing Consol. Rail. Corp. v. Town of Hyde Park, 47 F.3d 473, 483 (2d Cir. 1995). The parties' settlement agreement states that the proposed class contains approximately 294,000 members. Settle. Agreement 2. The numerosity requirement is therefore satisfied.

**B. Commonality**

The commonality element requires the Court to "ask[] if the named plaintiffs' 'grievances share a common question of law or of fact' with those of the proposed class…." In re Telik, Inc. Sec. Litig., 576 F. Supp. 2d at 582 (internal quotation marks omitted) (quoting Cromer Fin. Ltd. v. Berger, 205 F.R.D. 113, 122 (S.D.N.Y. 2001)). Commonality is present when the class members are alleged to have suffered the same injury. See Johnson v. Nextel Comm'ns Inc., 780 F.3d 128, 137 (2d Cir. 2015) (quoting Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 350 (2011)). Class members' claims do not have to be identical but "there must be issues whose resolution will affect all or a significant number of the putative class members." Id. (citing Joseph M. McLaughlin, McLaughlin on Class Actions § 4:7 (11th ed. 2014)). A common question is presented when defendant's same conduct forms the basis for all class members' claims. Id. at 137-38 (quoting Suchanek v. Sturm Foods, Inc., 764 F.3d 750, 756 (7th Cir. 2014)).

The commonality requirement is satisfied in this case because the class members' claims rest on the same question: whether defendant owes them unpaid interest on their escrow accounts. Am. Comp. ¶ 30. All class members seek to recover damages for the same injury inflicted by Chase, the failure to pay required interest. Further, Chase's assertion that the National Bank Act preempts the plaintiffs' state law causes of action is a question of law common to all claims. See ECF No. 25.

## C. Typicality

The commonality and typicality elements are closely linked. In re Telik, Inc. Sec. Litig., 576 F. Supp. 2d at 582. The typicality requirement is met where the "claims of the representative plaintiffs arise from the same course of conduct that gives rise to claims of the other class members, where the claims are based on the same legal theory, and where the class members have allegedly been injured by the same course of conduct as that which allegedly injured the proposed representatives." In re Glob. Crossing Sec. & ERISA Litig., 225 F.R.D. 436, 452 (S.D.N.Y. 2004) (quotation marks omitted) (quoting In re Oxford Health Plans, Inc., 191 F.R.D. 359, 375 (S.D.N.Y. 2000)). When a defendant's complained of conduct affected both the class representatives' and class members, typicality will not be defeated even if the facts behind the class representatives' and class members' claims differ slightly. Id. (quoting Robidoux v. Celani, 987 F.2d 931, 936-37 (2d Cir. 1993)).

Here, both the class representatives and class members claims arise from Chase's failure to pay interest owed on their escrow accounts. Am. Compl. ¶¶ 17, 26, 31. Therefore, the typicality requirement is satisfied.

**D. Adequacy of Representation**

Adequate representation requires class counsel to be qualified and capable of handling the case; it also requires no conflicts of interest between the class representatives and class members. Local 1180, Commc'n Workers of Am., AFL-CIO v. City of New York, 392 F. Supp. 3d 361, 374 (S.D.N.Y. 2019) (first citing Marisol A. v. Giuliani, 126 F.3d 372, 378 (2d Cir. 1997); and then citing Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc., 502 F.3d 91, 99 (2d Cir. 2007)). Courts should consider "whether the class representatives have any 'interests antagonistic to the interest of other class members' and 'whether the representatives 'have an interest in vigorously pursuing the claims of the class.'" In re Patriot Nat'l, Inc. Sec. Litig., 828 Fed. Appx. 760, 764 (2d Cir. 2020 (summary order) (quoting Denny v. Deutsche Bank AG, 443 F.3d 253, 268 (2d Cir. 2006)). Where class representatives share the same claims as the other class members, they will be "sufficiently motivated to recover as much as possible for each class member." Id.

The class will be adequately represented in this matter. As previously discussed, proposed class counsel has extensive experience in class action litigation and are highly capable of handling the instant matter. See Tusa Decl. ¶ 16; Heller Decl. ¶ 5; Giskan Decl. ¶ 3. The proposed class representatives, Rachel and Ariel Cymbalista, assert claims which are substantially similar to those of other class members and plaintiffs can be expected to vigorously prosecute the case. Plaintiffs assert that there are not – and the Court is not aware of – any antagonistic claims or interests which would undermine the adequacy of the representation in this matter. Am. Compl. ¶ 32.

**E. Ascertainability**

A class is ascertainable when it is defined by "'objective criteria' and it is "administratively feasible' to identify class members" Belfiore v. Procter & Gamble Co., 311 F.R.D. 29, 65 (E.D.N.Y. 2015) (citing Charron v. Pinnacle Grp. N.Y. L.L.C., 269 F.R.D. 221, 229 (S.D.N.Y. 2010)). This requirement is intended to prevent the certification of a class, the extent of which can never be fully defined. Id. at 66 (quoting Ebin v. Kangadis Food Inc., 297 F.R.D. 561, 567 (S.D.N.Y. 2014)). A class is ascertainable when its membership is limited to a group of individuals injured in a specific way, during a specified time, in specific locations. Id. (quoting Mullins v. Direct Digital LLC, 795 F.3d 654, 661 (7th Cir. 2015)). As pertinent here, the ascertainability requirement is met when the class may be identified by a review of the defendant's records. Manley v. Midan Rest. Inc., No. 14 Civ. 1693(HBP), 2016 WL 1274577, at *5 (S.D.N.Y. Mar. 30, 2016) (finding a class sufficiently ascertainable when members could be identified through a review of defendant's payroll records).

The proposed class is sufficiently ascertainable. The parties' settlement agreement defines the injury suffered by the class members and places sufficient temporal and geographic limits on class membership. Settle. Agreement ¶¶ 9, 40. The Court is further assured of the class' ascertainability by the fact that membership in the class will be based upon Chase's records, id. ¶¶ 40, 93, and that the class has already been identified by plaintiffs. Mem. of Law 25; Settle. Agreement 2.

**F. Rule 23(b)(3)**

In addition to satisfying the requirements of Rule 23(a), class certification requires compliance with one of the prongs of Rule 23(b). In pertinent part, Rule 23(b)(3) provides that "a class action may be maintained if…the court finds that the questions of law or fact common to

class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

**1. Predominance**

"The predominance requirement is satisfied 'if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." In re U.S. Foodservice Inc. Pricing Litig., 729 F.3d 108, 117 (2d Cir. 2013) (quoting UFCW Local 1776 v. Eli Lilly & Co., 620 F.3d 121, 131 (2d Cir. 2010)). In considering the predominance prong, Courts must consider whether common issues can be adjudicated together or are at too great a risk of being "overwhelmed by individual issues." Johnson, 780 F.3d at 138. When plaintiffs bring a class action asserting injuries on behalf of the putative class under the laws of several states, this presents a predominance question under Rule 23(b)(3). Langan v. Johnson & Johnson Consumer Cos., Inc., 897 F.3d 88, 96 (2d Cir. 2018). "[T]he party seeking certification has the burden to demonstrate that any variations in relevant state laws do not predominate over similarities." Id. at 97 (citing Wal-Mart, 564 U.S. at 350). The district court must examine the various state laws at issue to ensure that any differences do not overwhelm their similarities. Id. (citing Sacred Heart Health Sys., Inc v. Humana Military Healthcare Servs., Inc., 601 F.3d 1159, 1180 (11th Cir. 2020)). "The crucial inquiry is not whether the laws of multiple jurisdictions are implicated, but whether those laws differ in a material manner that precludes the predominance of common issues. In re U.S. Foodservice, 729 F.3d at 127 (citing Walsh v. Ford Motor Co., 807 F.2d 1000, 1017 (D.C. Cir. 1986)).

26

Here, plaintiffs' overarching claim is Chase's failure to pay interest on certain escrow accounts. Although plaintiffs assert their own cause of action under New York law, they bring this action on behalf of a class of members with mortgaged real property in: Connecticut, Maryland, Minnesota, New York, Rhode Island, and Wisconsin.[4] Am. Compl. ¶ 11. The relevant statutes are: N.Y. Gen. Oblig. Law § 5-601; Conn. Gen Stat. § 49-2a; M.D. Comm. Law. Code Ann. § 12-109; Minn. Stat. Ann. § 47.20 subd. 9; R.I. Gen. Laws § 19-9-2; and Wis. Stat. § 138.052(5).[5]  In pertinent part, the statutes read as follows:

**N.Y. Gen. Oblig. Law § 5-601**

> Any mortgage investing institution which maintains an escrow account pursuant to any agreement executed in connection with a mortgage on any one to six family residence occupied by the owner or on any property owned by a cooperative apartment corporation…and located in this state shall, for each quarterly period in which such escrow account is established, credit the same with dividends or interest at a rate not less than two per centum per year based on the average of the sums so paid for the average length of time on deposit or the rate prescribed by the superintendent of financial services…whichever is higher.

**Conn. Gen Stat. § 49-2a**

> [E]ach state bank and trust company, national banking association, state or federally-chartered savings and loan association, savings bank, insurance company and other mortgage servicer holding funds of a mortgager in escrow for the payment of taxes and insurance premiums with respect to mortgaged property located in this state shall pay interest on such funds…at a rate of not less than the average rate paid…on savings deposits by insured commercial banks as published in the Federal Reserve Board Bulletin….

**M.D. Comm. Law. Code Ann. § 12-109(b)(1)**

> A lending institution which lends money secured by a first mortgage or first deed of trust on any interest in residential real property and creates or is the assignee of an escrow account in connection with that loan shall pay interest to the borrower on the funds in the

---

[4] In a class action, whether plaintiffs can pursue claims on behalf of class members in other states is a question of predominance under Rule 23(b)(3), not a question of Article III's standing requirement. Langan v. Johnson & Johnson Consumer Cos., 897 F.3d 88, 96 (2d Cir. 2018).

[5] Plaintiffs original complaint included claims regarding California, Iowa, Maine, Massachusetts, New Hampshire, Oregon, Utah, and Vermont. Compl. ¶ 11, ECF No. 1. However, claims regarding these states were omitted in the amended complaint for the purposes of settlement. Settle. Agreement 1.

escrow at an annual rate not less than the weekly average yield on United States Treasury securities….

**Minn. Stat. Ann. § 47.20 subd. 9(a)**

Each mortgagee requiring funds of a mortgagor to be paid into an escrow, agency or similar account for the payment of taxes or homeowner's insurance premiums with respect to a mortgaged one-to-four family, owner-occupied residence located in this state…shall calculate interest on such funds at a rate of not less than three percent per annum. Such interest shall be computed on the average monthly balance in such account…and shall be annually credited to the remaining principal balance on the mortgage, or at the election of the mortgagee, paid to the mortgagor….

**R.I. Gen. Laws § 19-9-2(a)**

Every mortgagee holding funds of a mortgagor in escrow for the payment of taxes and insurance premiums with respect to mortgaged property located in this state shall pay or credit interest on those funds at a rate equal to the rate paid to the mortgagee on its regular savings account, if offered, and otherwise at a rate not less than the prevailing market rate of interest for regular savings accounts offered by local financial institution….

**Wis. Stat. § 138.052(5)(am)**

[A] bank, credit union, savings bank, savings and loan association or mortgage banker which originates a loan on or after January 1, 1994, and before April 18, 2018…and which requires an escrow to assure the payment of taxes or insurance shall pay interest on the outstanding principal balance of the escrow at the variable interest rate established under subd. 2.

These statutes all generally require that mortgagees pay interest on funds held in escrow. Although the statutes differ in some respects – like in the amount of interest due and the time frame for which interest is required – these are not material differences.[6] None of the statutes appear to require proof of a fact or occurrence which substantially differs from the other statutes implicated in this case. I find that issues of law or fact under one state's statute do not predominate over other issues in this case because the language of each statute is "effectively the

---

[6] Plaintiffs cite <u>Kivett v. Flagstar Bank, FSB</u>, 333 F.R.D 500 (N.D. Cal. 2019) in support of their argument that Rule 23(b)(3)'s predominance test is easily met in this case. Mem. of Law. 24. However, <u>Kivett</u> is not persuasive here because it involved a class of only "persons who…had mortgage loans serviced…in California." 333 F.R.D. at 503.

same." See In re Namenda Indirect Purchaser Antitrust Litig., No. 15-CV-6549(CM)(RWL),

2021 WL 509988, at *35 (S.D.N.Y. Feb. 11, 2021) (reviewing various state antitrust statutes and

determining that the differing state laws did not defeat the predominance requirement under Rule

23(b)(3)). Therefore, the predominance prong of Rule 23(b)(3) will likely be met.

**2. Superiority**

"[C]lass actions can be superior because they facilitate the redress of claims where the

costs of bringing individual actions outweigh the expected recovery." In re U.S. Foodservice

Inc., 729 F.3d at 130 (citing Amchem Products, Inc. v. Windsor, 521 U.S. 591, 617 (1997)).

When the number of class members is large and geographically diverse, the efficiency of a class

action in resolving common questions outweighs the interests of any one class member in

bringing a separate case. In re Giant Interactive Grp., Inc. Sec. Litig., 279 F.R.D. 151, 159

(S.D.N.Y. 2011) (quoting Cromer Fin. Ltd., 205 F.R.D. at 133).

The parties' settlement agreement acknowledges that the number of class members in this

case is approximately 294,000. Settle. Agreement 2. Plaintiffs assert that the average class

member's damages are less than $100, Mem. of Law 25, and their notice states that the average

settlement payment will be approximately $24, ECF No. 53-3, at 60. These facts demonstrate

that a class action will likely be superior for resolving the claims in this case.

**IV. Notice**

When the parties in a class action reach a settlement:

> The Court must direct notice in a reasonable manner to all class members who would be
> bound by the proposal if giving notice is justified by the parties' showing that the court
> will likely be able to (i) approve the proposal under Rule 23(e)(2) and (ii) certify the class
> for purposes of judgment on the proposal.

FED. R. CIV. P. 23(e)(1)(B). When the putative class will be certified under Rule 23(b)(3), "the

court must direct to class members the best notice that is practicable under the circumstances,

including individual notice to all members who can be identified through reasonable efforts." Id.

23(c)(2)(B). Notice may be given through "United States mail, electronic means, or other

appropriate means." Id.

> The notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Id. "Absent class members have a due process right to notice and an opportunity to opt out of

class litigation when the action is 'predominantly' for money damages." Hecht v. United

Collection Bureau, Inc., 691 F.3d 218, 222 (2d Cir. 2012) (citing Phillips Petroleum Co. v.

Shutts, 472 U.S. 797, 911-12 & n.3 (1985)). Due process requires that the notice be the best

possible and given in a manner which will well inform absent parties of their rights. Id. (quoting

Shutts, 472 U.S. at 812). A proposed settlement notice should be approved when it is reasonable

and will fairly inform class members of the terms of the settlement and their options. Mikhlin,

2021 WL 1259559, at *12 (quoting Wal-Mart Stores, Inc., 396 F.3d 96 at 113-14). Actual notice

to every class member is not required when counsel's selected means are reasonably likely to

inform the class. In re Adelphia Comm'ns Corp. Sec. Litig., 271 Fed. Appx. 41, 44 (2d Cir.

2008) (summary order) (quoting Weigner v. New York, 852 F.2d 646, 649 (2d Cir. 1988)).

The parties' settlement agreement establishes a Notice Program under which the

settlement Administrator will transmit notice to class members via email and regular mail. Settle.

Agreement ¶ 64. Chase will provide class members' names as well as email and mailing

addresses within fourteen days of the settlement's preliminary approval. Id. ¶ 63. The settlement

administrator will also maintain a website which will permit access to the complaint, the

settlement agreement, the preliminary approval order, and the proposed long-form notice. Id. ¶

60(b). These methods of providing notice are acceptable. <u>Mikhlin</u>, 2021 WL 1259559, at \*12 (approving a notice program under which notice was posted on the internet and mailed to class members as identified from the defendant's records).

The proposed notice is: easily understandable; explains the nature of this action; defines the class; provides information about the possible award; sets forth class members' options; and informs class members of the next steps in this case, including the date and location of the fairness hearing (which is left blank pending further order of the Court). Settle. Agreement, Ex. C-1. The notice also provides the address for the website which will contain further information about the action and give class members the opportunity to object to the settlement. <u>Id.</u> The notice satisfies the requirements of Rule 23(c)(2)(B) and should be approved by the Court for use in this action. <u>In re GSE Bonds Antitrust Litig.</u>, 414 F. Supp. 3d at 703 (approving a proposed notice when it met the terms specified under Rule 23(c)(2)(B)).

## CONCLUSION

The proposed settlement will likely be approved as "fair, reasonable, and adequate," under Rule 23(e)(2), and the class should be preliminarily certified for settlement. Accordingly, it is respectfully recommended that the Court should grant the instant motion for preliminary approval of the class action settlement in this case. The Court should schedule a fairness hearing to consider final approval of the settlement and should order the parties to utilize the proposed notice to notify the proposed class.

## FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure,

the parties shall have fourteen (14) days from service of this Report to file written objections. <u>See also</u> Fed. R. Civ. P. 6. Such objections (and any responses to objections) shall be filed with the Clerk of the Court. Any request for an extension of time to file objections must be made within the fourteen-day period. Failure to file a timely objection to this Report generally waives any further judicial review. <u>Marcella v. Capital Dist. Physician's Health Plan, Inc.</u>, 293 F.3d 42 (2d Cir. 2002); <u>Small v. Sec'y of Health & Human Servs.</u>, 892 F.2d 15 (2d Cir. 1989); <u>see Thomas v. Arn</u>, 474 U.S. 140 (1985).

SO ORDERED.

/S/

LOIS BLOOM<br>
United States Magistrate Judge

Dated: May 25, 2021<br>
      Brooklyn, New York