**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| RACHEL CYMBALISTA and ARIEL CYMBALISTA, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>JPMORGAN CHASE BANK, N.A.,<br><br>Defendant. | Case No. 2:20-CV-00456<br><br>Hon. Rachel P. Kovner, USDJ<br>Hon Lois Bloom, USMJ |
|---|---|

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF CONSENT MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

# TABLE OF CONTENTS

INTRODUCTION ........ 1

PROCEDURAL HISTORY ........ 3

SUMMARY OF THE SETTLEMENT ........ 5

ARGUMENT ........ 6

I. THE NOTICE PROGRAM WAS COMPLETED AND COMPLIES WITH RULE 23 AND DUE PROCESS ........ 6

II. THE SETTLEMENT IS PROCEDURALLY FAIR ........ 9

III. THE SETTLEMENT IS SUBSTANTIVELY FAIR, REASONABLE AND ADEQUATE AND IN THE BEST INTEREST OF THE CLASS ........ 11

A. THE REACTION OF THE CLASS HAS BEEN OVERWHELMINGLY POSITIVE ........ 11

B. SATISFACTION OF THE OTHER *GRINNELL* FACTORS REMAINS TRUE ........ 13

1. Plaintiffs and Settlement Class Counsel Zealously Represented the ........ 13

2. The Settlement Represents a Strong Result for the Settlement Class, Particularly Given the Substantial Risk and Challenges They Face (FED. R. CIV. P. 23(e)(2)(C); Grinnell Factors 1 & 4-9) ........ 13

C. THE ADDITIONAL RULE 23(E) FACTORS SUPPORT FINAL APPROVAL ........ 15

IV. THE COURT SHOULD CONFIRM CERTIFICATION OF THE SETTLEMENT CLASS, THE APPOINTMENT OF PLAINTIFFS AS THE CLASS REPRESENTATIVES AND THE APPOINTMENT OF CLASS COUNSEL ........ 17

A. THE NUMEROSITY REQUIREMENT IS SATISFIED ........ 18

B. THE COMMONALITY REQUIREMENT IS SATISFIED ........ 18

C. PLAINTIFFS' CLAIMS ARE TYPICAL OF THE SETTLEMENT CLASS ........ 18

D. PLAINTIFFS AND CLASS COUNSEL WILL FAIRLY AND ADEQUATELY REPRESENT THE SETTLEMENT CLASS ........ 19

E. THE SETTLEMENT CLASS SATISFIES RULE 23(B)(3) PREDOMINANCE ........ 19

F. THE SETTLEMENT CLASS SATISFIES RULE 23(B)(3) SUPERIORITY ................................ 20

G. THE SETTLEMENT CLASS IS ASCERTAINABLE ................................................................. 20

CONCLUSION ........................................................................................................................... 20

**TABLE OF AUTHORITIES**

**CASES:**

*Amchem Products, Inc. v Windsor*,
521 U.S. 591 (1997) .....17, 19

*In re Cablevision Consumer Litig.*,
No. 10-cv-4992 JS AKT, 2014 U.S. Dist. LEXIS 44983 (E.D.N.Y. Mar. 31, 2014) .....17, 18

*City of Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974) .....11, 12, 13, 15

*Consolidated Rail Corp. v. Town of Hyde Park*,
47 F.3d 473 (2d Cir. 1995) .....17

*Cymbalista v. JPMorgan Chase Bank, N.A.*,
No. 20-cv-456 (RPK)(LB), 2021 U.S. Dist. LEXIS 99093 (E.D.N.Y. May 25, 2021) (Dkt. 51)
*adopted by Order Adopting Report and Recommendation* (E.D.N.Y. Nov. 11, 2021) ..... *passim*

*Dupler v. Costco Wholesale Corp.*,
705 F. Supp. 2d 231 (E.D.N.Y. 2010) .....9

*See In re Graña Y Montero S.A.A. Sec. Litig.*,
No. 17-cv-1105(LDH)(ST), 2021 U.S. Dist. LEXIS 153192 (E.D.N.Y. Aug. 13, 2021) .....9

*Hernandez v. Immortal Rise, Inc.*
306 F.R.D. 91 (E.D.N.Y. 2015) .....8, 9, 10

*In re Keurig Green Mt. Singleserve Coffee Antitrust Litig.*,
No. 14-md-02542 (VSB), 2021 U.S. Dist. LEXIS 107468 (S.D.N.Y. June 7, 2021) .....9

*Kindle v. Dejana*,
315 F.R.D. 7 (E.D.N.Y. 2016) .....18

*Kochilas v. Nat'l Merch. Servs.*,
*No.* 14-cv-311, 2015 U.S. Dist. LEXIS 135553 (E.D.N.Y. Oct. 2, 2015 .....8, 12

*Lusnak v. Bank of Am., N.A.*,
883 F.3d 1185 (9th Cir. 2018),
*rehearing and rehearing en banc denied* 2018 U.S. App. LEXIS 12745 (May 16, 2018),
*cert. denied* 139 S. Ct. 567 (2018) .....10

*Lusnak v. Bank of Am., N.A.*,
C.D. Cal. No. 14-cv-1855-GW(GJSx), Dkt. 117 (C.D. Cal. Jan. 30, 2020) .....10

*Malchman v. Davis*,
706 F.2d 426 (2d Cir. 1983) .....9

*Maley v. Del. Glob. Techs. Corp.*,,
186 F. Supp. 2d 358 (S.D.N.Y. 2002) .......... 14

*McShannock v. JPMorgan Chase Bank, N.A.*,
976 F.3d 881 (9th Cir. 2020) .......... 14, 15

*In re Metlife Demutualization Litig.*,
689 F. Supp. 2d 297 (E.D.N.Y. 2010) .......... 12

*In re Petrobras Sec. Litig.,*
862 F.3d 250 (2d Cir. 2017) .......... 20

*Reade-Alvarez v. Eltman, Eltman, & Cooper, P.C.*,
237 F.R.D. 26 (E.D.N.Y. 2006) .......... 9

*Robidoux v. Celani,*
987 F.2d 931 (2d Cir. 1993) .......... 18

*Rosario v. Valentine Ave., Disc. Store, Co.,*
No. 10-cv-5255(ERK)(LB), 2016 U.S. Dist. LEXIS 28266 (Mar. 3, 2016) .......... 12

*Shahriar v. Smith & Wollensky Rest. Grp., Inc.*,
659 F.3d 234 (2d Cir. 2011) .......... 18

*Sosna v. Iowa,*
419 U.S. 393 (1975) .......... 18

*Tyson Foods, Inc. v. Bouaphakeo*,
136 S. Ct. 1036 (2016) .......... 19

*In re U.S. Foodservice Inc. Pricing Litig.*,
729 F.3d 108, (2d Cir. 2013) .......... 19

*Walsh v. Northrop Grumman Corp.*,
No. 94-cv-5105 (TCP), 1999 U.S. Dist. LEXIS 3645 (E.D.N.Y. 1999) .......... 9

*Weil v. Long Island Sav. Bank*, FSB,
188 F. Supp. 2d 164 (E.D.N.Y. 2001) .......... 15

**STATUTES & RULES**

Fed. R. Civ. P. 23 .......... *passim*

Conn. Gen. Stat. §49-2a .......... 3

MD. Comm. Law Code Ann. §12-109 .......... 3

Minn. Stat. Ann. §47.20 subd. 9 .......... 3

New York General Obligations Law §5-601 .......... 3

New York General Business Law §349 .......... 3

R.I. Gen. Laws §19-9-2 .......... 3

Wis. Stat. §138.052 .......... 3

**MISCELLANEOUS:**

Herbert Newberg & Alba Conte, *Newberg on Class Actions* (4th Ed. 2002) .......... 12, 16

Brian Flood, *JPMorgan Chase Settles Mortgage Escrow Interest Class Action*, Bloomberg (May 26, 2021) .......... 8

Emile Ruscoe, *Chase Agrees to Pay $11.5M to End Escrow Interest Suit*, Law360 (April 12, 2021) .......... 8

Plaintiffs Rachel and Ariel Cymbalista ("Plaintiffs" and "Class Representatives"), by and through Settlement Class Counsel, respectfully submit this *Memorandum of Law* and the accompanying *Declaration of Gio Santiago* ("Santiago Decl."), Senior Project Manager with KCC Class Action Services, LLC ("KCC") and the *Declaration of Ryan Chabot, Esq.* of Wilmer Cutler Pickering Hale and Dorr LLP, counsel to defendant JPMorgan Chase Bank, N.A. ("Defendant" or "Chase") in support of their consent motion for final approval (the "Final Approval Motion") of the *Settlement Agreement and Release* (the "Settlement" or "Settlement Agreement") and entry of the proposed *Final Order and Judgment Approval* (annexed as **Exhibit A** to the Notice of Motion).

## INTRODUCTION

Perhaps the best indication of the fairness of a class action settlement is the reaction of the class. Here, the reaction has been overwhelmingly positive. The deadline for Settlement Class Members to opt-out or object (February 21, 2022) has now passed. Plaintiffs are pleased to report that there were no objections, and only 11 persons requested to be excluded.[1]

This follows an extensive Notice Program that included direct notice to the Settlement Class. Pursuant to that program, nearly all Settlement Class Members, totaling 293,419 current or former Chase mortgage borrowers, received the Court-approved notice by first class mail. Nearly 200,000 also received the notice by email. Notice was also published on a dedicated settlement website providing the Court-approved notices, documents and decisions in the case (including the pleadings, the Settlement Agreement and motion for preliminary approval submissions). After Settlement Class Counsel moved for the payment of attorneys' fees and expenses, and service awards for the two class representatives (Dkts. 57-59, the "Fee Motion"), those submissions were also promptly posted to the settlement website. As required by the Class Action Fairness Act, notice of the Settlement was also provided to the required federal and state authorities.

[1] Capitalized terms are defined in the Parties' Settlement Agreement.

The Settlement Class's favorable reaction to the Settlement confirms that the Settlement is fair, reasonable and adequate and in the best interests to the Settlement Class. Under the Settlement, Chase will fund a non-reversionary settlement fund of $11,500,000.00, which represents approximately 53% of the historical Interest on Escrow ("IOE") that Plaintiffs alleged was owed by Chase to the Settlement Class Members. In addition to the settlement fund, Chase will also pay three years of IOE payments to Settlement Class Members with active accounts under the applicable state IOE laws (unless the U.S. Court of Appeals encompassing any of the "Class States" defined below or the U.S. Supreme Court issues a decision establishing that federal banking law preempts state interest-on-escrow requirements). Settlement Class Counsel estimates that the full financial value of the Settlement, including the $11.5 million Settlement fund and the prospective IOE payments, is approximately $18.75 million. (Chase began paying 100% of IOE owed to Settlement Class Members who still hold their Chase mortgages beginning in June 2021 and will continue through December 2024). That $18.75 million represents a blended recovery of approximately 65% of the IOE that is allegedly owed to the Settlement Class during the applicable State statutes of limitations and through December 2024.[2]

The high percentage of IOE returned to the Settlement Class, especially in the face of the ongoing litigation risk—most notably the risk that the Second Circuit could issue an unfavorable preemption ruling in two similar IOE cases against another bank scheduled for oral argument later this year—underscores the fairness of the Settlement. The result here was reached through months of arms-length negotiation by experienced counsel for all Parties, assisted by JAMS mediator and retired federal magistrate judge Hon. Elizabeth D. LaPorte. The Parties' arms-length negotiations, under the supervision of Judge LaPorte, further support the fairness of the Settlement.

---

[2] Since the IOE laws in some of the Class States are based on a variable interest rate pegged to floating indicators, and because the number of loans owed IOE prospectively will fluctuate, the IOE owed in future years was estimated based on existing loan data provided by Chase to Settlement Class Counsel.

Settlement Class Counsel comprise three firms with extensive experience litigating and settling consumer class actions, including class actions against financial institutions like Chase, and including class actions involving IOE statutes and federal preemption issues.[3] Based upon their investigation, discovery obtained in the litigation and during settlement negotiations, the Parties' motion to dismiss briefing, and the extensive settlement negotiations, Settlement Class Counsel believe that the terms of the Settlement are fair, reasonable and adequate and in the best interests of the Settlement Class, and respectfully request that the Settlement be granted final approval.

**PROCEDURAL HISTORY**

The operative amended complaint in this action (Dkt. 49) alleges that Chase failed to pay IOE to borrowers with mortgage loans on homes in the six states that have enacted statutes requiring mortgage lending banks and/or loan servicers to pay IOE. Those states comprise Connecticut, Maryland, Minnesota, New York, Rhode Island and Wisconsin (the "Class States"). *See* Conn. Gen. Stat. §49-2a; MD. Comm. Law Code Ann. §12-109; Minn. Stat. Ann. §47.20 subd. 9; N.Y. GOL §5-601; R.I. Gen. Laws §19-9-2); and Wis. Stat. §138.052(5) (collectively the "State IOE Statutes"). Plaintiffs, on behalf of themselves and the Settlement Class, allege claims for breach of their loan agreements, violations of New York General Objections Law §5-601, violations of New York General Business Law §349 and the similar consumer protection laws in the Class States and unjust enrichment. Chase argued in this action that as a nationally-chartered bank, it is not obligated to pay IOE because the State IOE Statues are preempted by federal law.

The litigation history of this action was previously summarized in Settlement Class Counsel's declarations and memoranda of law in support of the motions for preliminary approval and the Fee Motion. *See* Dkts. 50-1, 50-2, 58, 59. Plaintiffs incorporate those submissions.

[3] Class Counsel's declarations and firm resumes have previously been submitted with Plaintiffs' motions for preliminary approval and request for attorneys' fees and reimbursement of expenses. *See* Dkts. 50-2, 50-5, 50-6, 59.

Plaintiffs filed their motion for preliminary approval of the Parties' executed Settlement Agreement on April 9, 2021. Dkt. 50. No party or non-party opposed that motion. After considering the Settlement Agreement and its exhibits (including the proposed short-form and long-form notices), on May 25, 2021, this Court entered a *Report and Recommendation* endorsing preliminary approval, conditionally certifying the Settlement Class, appointing Plaintiffs as Settlement Class representatives and their counsel as Settlement Class Counsel, approving the proposed Notice Program, including the proposed forms and methods of notice, and approving KCC as the Administrator to administer the Notice Program and other aspects of the Settlement. Dkt. 51 (*Cymbalista v. JPMorgan Chase Bank, N.A.*, No. 20-cv-456 (RPK)(LB), 2021 U.S. Dist. LEXIS 99093 (E.D.N.Y. May 25, 2021)). No party or non-party objected to the *Report and Recommendation.* On November 22, 2021, Judge Kovner adopted the *Report and Recommendation.* 11/22/21 *Order Adopting Report and Recommendation* ("I have reviewed Judge Bloom's R. & R. and, having found no clear error, adopt it in full. Accordingly, plaintiffs' consent motion for preliminary approval of a class action settlement agreement at [50] is granted.").

On November 29, 2021, Judge Kovner referred the Parties' forthcoming Final Approval Motion to Magistrate Judge Bloom. This Court thereafter issued an Order setting the final approval hearing, directing issuance of the Notice Program, and setting a February 21, 2021 deadline for Settlement Class Members to submit objections and requests for exclusion. *See* 12/2/21 Order. In advance of the objection and exclusion deadline, Settlement Class Counsel filed their Fee Motion and related papers (Dkts. 57-59). The Settlement Administrator promptly posted the Fee Motion submissions on the settlement website. *See* Santiago Decl. at ¶7.

On January 24 and 27, 2022, respectively, the Parties filed a stipulation and agreement pursuant to 28 U.S.C. §636(c) consenting to Magistrate Judge Bloom entering final adjudications of

the Final Approval and Fee Motions. Dkts. 60, 61. On January 31, 2022, Judge Kovner so ordered the Parties' stipulation under 28 U.S.C. §636(c). Dkt. 62.

## SUMMARY OF THE SETTLEMENT

The full Settlement Agreement was submitted to the Court (Dkt. 50-3) and has been posted publicly on the settlement website (www.interestonescrowsettlement.com) since January 5, 2022. *See* Santiago Decl. at ¶6. Plaintiffs and Settlement Class Counsel have previously summarized its material terms for the Court in their memoranda of law supporting the motions for preliminary approval (Dkt. 50-1) and the Fee Motion. *See* Dkt. 58. As explained by this Court's *Report and Recommendation* (Dkt. 51) endorsing preliminary approval:

> **A. Class Members**
>
> The parties' agreement defines the settlement class as set forth in the amended complaint. Compare Am. Compl. ¶ 26 with Settle. Agreement ¶ 40. In pertinent part, the class includes:
>
>> All persons identified in Chase's mortgage-servicing records as holding a mortgage loan Serviced by Chase that was secured by real property in Connecticut, Maryland, Minnesota, New York, Rhode Island, or Wisconsin who, during the Class Period, would have been due interest on an escrow account maintained by Chase under the laws of Connecticut, Maryland, Minnesota, New York, Rhode Island, or Wisconsin, but were not paid such interest.
>
> Settle. Agreement ¶ 40. The term "Serviced by Chase" refers to "a mortgage loan for which Chase maintained an escrow account for the mortgagor(s) to pay, among other things, property taxes, school taxes, and/or hazard insurance premiums." *Id.* ¶ 38. The "Class Period" differs depending upon the location of the real property which is the subject of the mortgage. *Id.* ¶ 9. The Class Period begins for mortgagors: (i) with loans secured by property in Rhode Island on January 1, 2010; (ii) with loans secured by property in Connecticut, Minnesota, New York, or Wisconsin on January 1, 2014; and (iii) with loans secured by property in Maryland on January 1, 2017. *Id.* The Class period ends on the Execution Date of the agreement, April 9, 2021. *Id.* ¶¶ 9, 14.
>
> **B. Financial Terms**
>
> Under the agreement, Chase will pay $11.5 million into the Settlement Fund Account. *Id.* ¶¶ 44, 47. Distributions from the account will be made to each class member in an amount determined using a formula set forth in the agreement. *Id.* ¶

> 98. Funds from the settlement will also pay for attorney's fees and costs, service awards to plaintiffs Rachel and Ariel Cymbalista — up to $10,000 each, administrative costs, and applicable taxes and fees. *Id.* ¶¶ 47, 84, 87. Chase also agrees to pay interest on class members' escrow accounts for three years following the preliminary approval of the parties' settlement. *Id.* ¶ 48. Chase may stop these future payments to class members in certain states in the event a state appellate court for that state, a federal Court of Appeals with jurisdiction over that state, or the United States Supreme Court rules that the state's interest-on-escrow laws are preempted by federal law. *Id.*

Dkt. 51 at 4-5. There have been no changes to the Settlement terms since being described by this Court's *Report and Recommendation.*

## ARGUMENT

### I. THE NOTICE PROGRAM WAS COMPLETED AND COMPLIES WITH RULE 23 AND DUE PROCESS

The Notice Program and the substance of the notices required by the Settlement Agreement were also summarized in the Court's *Report and Recommendation.* Dkt. 51 at 5-6. The *Report and Recommendation* applied the Rule 23(c) and (e) standards requiring that notice to a certified or settlement class be the "best notice practicable under the circumstances," and satisfy constitutional due process. *Id.* at 29-31; *see also* Dkt. 50-1 (*Plaintiffs' Memorandum of Law in Support of Preliminary Approval*) at 17-18 (discussing notice standards). Under those standards, class notice must fairly and adequately apprise the class of the terms of the settlement and their options, including the right to exclude themselves. Dkt. 51 at 5-6. This Court concluded that the parties' Notice Program, including the forms and methods of notice, "satisfies the requirements of Rule 23(c)(2)(B) and should be approved by the Court for use in this action." *Id.*

The Settlement Agreement required the Parties to retain an Administrator to administer the notice, distribute settlement payments, and perform other administrative tasks regarding the Settlement. *See* ¶¶ 2, 59-62. The Parties proposed, and the Court approved, KCC to serve as the Administrator. Chase thereafter performed a diligent search of its records and provided the Administrator, for purpose of providing notice, with a Settlement Class List that included the

following information for each Settlement Class Member: name, last known mailing address, last known email address (if available), and a unique identifying number for each account in the Settlement Class. Upon receipt, KCC ran all mailing addresses on the Settlement Class List through the United States Post Office National Change of Address database to identify any updated addresses and updated the list accordingly. *See* Santiago Decl. at ¶2. On January 6, 2022, KCC mailed the Court-approved short-form notice to 293,419 Settlement Class members by first class mail, and also emailed the Court-approved short-form notice to 199,970 Settlement Class members. *Id.* at ¶ 3-4.[4] KCC also took appropriate, industry standard steps to attempt to locate updated address information and re-send mailed notices that were returned as undeliverable. *Id.* at ¶ 5.

To supplement the direct notice program, KCC implemented a settlement website (www.interestonescrowsettlement.com). The settlement website went live on January 5, 2022, one day before the first direct notices were mailed and emailed, and will remain available to the public through distribution of the Net Cash Settlement Amount. *See* Settlement Agreement ¶62; Santiago Decl. ¶6. Among other information, the settlement website contains the full Settlement Agreement and Court-approved short-form and long-form notices in English and Spanish. It also includes the operative *First Amended Class Action Complaint*, submissions in support of Plaintiffs' motion for preliminary approval, the Court's *Report and Recommendation* endorsing preliminary approval and Judge Kovner's Order adopting the *Report and Recommendation*. After the Fee Motion was filed by Plaintiffs and Settlement Class Counsel on January 21, 2022, the filings in support of that motion were also promptly posted to the settlement website. In addition, the settlement website provided the date and time of the Final Approval Hearing, dial information for the Final Approval Hearing

[4] Chase identified a total of 300,063 Settlement Class accounts, but after de-duplication of the account holders and their contact information by KCC, notice was mailed to 293,419 Settlement Class Members. *Id.*

telephone conference, explanations as to how Settlement Class Members can opt-out or object to the Settlement, and deadlines for doing so.[5]

KCC reports that as of March 3, 2022, 10,315 persons visited the settlement website and 2,673 persons called the toll-free number, hosted by KCC, where Settlement Class Members can get answers to questions about the Settlement. *See* Santiago Decl. at ¶¶ 6, 8. Those Settlement Class Member visits underscore the strength of the Notice Program in this case.

The Notice Program set forth in the Settlement Agreement, which was diligently completed by KCC under the parties' supervision, constitutes the "best notice practicable under the circumstances," as required by Rule 23(c) and (e). That is nearly always true where, as here, direct notice is provided to class members, especially when supplemented by website and publication notice. *See Kochilas v. Nat'l Merch. Servs.*, No. 14-cv-311, 2015 U.S. Dist. LEXIS 135553, at *5-6, 17-18 (E.D.N.Y. Oct. 2, 2015) (Bloom, M.J.) (final approval granted; mailing notices approved by court to settlement class members describing the settlement and their rights satisfied Rule 23 and due process standards); *Hernandez v. Immortal Rise, Inc.* 306 F.R.D. 91, 99 (E.D.N.Y. 2015) (Bloom, M.J.) (same; noticed provided by mail and supplemented by publication in English and Spanish satisfied Rule 23 and due process).

In compliance with the Class Action Fairness Act, notice of the Settlement was also sent by Chase to the requisite federal and state authorities. *See* Chabot Decl. at ¶¶ 2-4.

The Court should conclude that notice was provided to the Settlement Class in conformity with Rule 23 and due process, and that notice was provided to federal and state regulators in compliance with the Class Action Fairness Act.

---

[5] In additional to direct and publication notice, the details of the Settlement were discussed in numerous news articles. *See e.g.*, Brian Flood, *JPMorgan Chase Settles Mortgage Escrow Interest Class Action*, Bloomberg (May 26, 2021); Emile Ruscoe, *Chase Agrees to Pay $11.5M to End Escrow Interest Suit*, Law360 (April 12, 2021).

## II. THE SETTLEMENT IS PROCEDURALLY FAIR

Prior to assessing the substantive fairness of a class action settlement, the Court should determine that it was negotiated in a procedurally fair manner. *See Malchman v. Davis*, 706 F.2d 426, 433 (2d Cir. 1983).

> There is "a presumption of [procedural] fairness, reasonableness, and adequacy as to the settlement where 'a class settlement [is] reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.'" *McReynolds v. Richards-Cantave*, 588 F.3d 790, 803 (2d Cir. 2009) (quoting *Wal-Mart Stores, Inc.* [*Inc. v. Visa US.A. Inc.*], 396 F.3d [96,] 116 [2d Cir. 2005] (internal quotations omitted)). This presumption "is consistent with the 'strong judicial policy in favor of settlements, particularly in the class action context.'" *Id.*

*Hernandez*, 306 F.R.D. at 99; *accord Dupler v. Costco Wholesale Corp.*, 705 F. Supp. 2d 231, 238 (E.D.N.Y. 2010) (same); *Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*, 237 F.R.D. 26, 33 (E.D.N.Y. 2006) (same); *Walsh v. Northrop Grumman Corp.*, 1999 WL 184654, at *3 (E.D.N.Y. Mar. 25, 1999) (same). A further presumption of fairness attaches to a class action settlement reached after meditation before an experienced jurist. *See In re Graña Y Montero S.A.A. Sec. Litig.*, No. 17-cv-1105(LDH)(ST), 2021 U.S. Dist. LEXIS 153192, at *29 (E.D.N.Y. Aug. 13, 2021); *In re Keurig Green Mt. Singleserve Coffee Antitrust Litig.*, No. 14-md-02542 (VSB), 2021 U.S. Dist. LEXIS 107468, at *22 (S.D.N.Y. June 7, 2021).

As detailed in Settlement Class Counsel's declarations in support of preliminary approval and the Fee Motion, Dkts. 50-2 (*Tusa Declaration*) and Dkt. 59 (*Joint Declaration*), the Parties negotiated for several months at arms-length, with the assistance of the Hon. Elizabeth LaPorte (Ret.) of JAMS as mediator. Settlement Class Counsel was well positioned to negotiate the Settlement here, having engaged in a pre-filing investigation of this case, conducted pertinent discovery during the litigation and mediation process, and given their backgrounds and experience litigating cases involving unpaid IOE and other complex class actions. In its *Report and Recommendation*, this Court found the Settlement to be procedurally fair:

> Here, the record supports a finding that the proposed settlement is the product of arm's length negotiations. The settlement was negotiated over several months with the Hon. Elizabeth La Porte (Ret.), a retired federal Magistrate Judge, acting as a mediator. Mem. of Law 1; Tusa Decl. ¶ 4. Judge LaPorte's involvement allays any concerns about unfair negotiation practices and weighs in favor of settlement approval. *Mikhlin*, 2021 U.S. Dist. LEXIS 66719, 2021 WL 1259559, at *5 (citing *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d at 693) ("Involvement by a mediator in settlement negotiations also supports a finding of procedural fairness.").

Dkt. 51 at 12.

Indeed, Settlement Class Counsel was well-positioned, based on their experience and investigative efforts in this case, to negotiate a favorable Settlement. Dkts. 50-2, 59. The Lieff Cabraser firm is among Settlement Class Counsel in this action and was co-lead counsel in the *Lusnak v. Bank of America* action, whose claims involving unpaid IOE were sustained by the Ninth Circuit Court of Appeals and which resulted in an approved class action settlement. *See Lusnak v. Bank of Am., N.A.*, 883 F.3d 1185 (9th Cir. 2018), *rehearing and rehearing en banc denied* 2018 U.S. App. LEXIS 12745 (May 16, 2018), *cert. denied* 139 S. Ct. 567 (2018); *Lusnak v. Bank of Am., N.A.* C.D. Cal. No. 14-cv-1855-GW(GJSx), Dkt. 130 (Aug. 10, 2020) (approving class settlement agreement). In addition, the Tusa P.C. and Giskan Solotaroff firms are counsel for the plaintiffs and putative classes in two related IOE class actions against Citibank pending in the Southern District of New York. Settlement Class Counsel's support for the Settlement, given their relevant experience, further supports a conclusion of procedural fairness. *See Hernandez*, 306 F.R.D. at 99 ("Absent fraud or collusion, the court should be hesitant to substitute its judgment for that of the parties who negotiated the settlement.") (quoting *In re EVCI Career Colleges Holding Corp. Sec. Litig.*, 05 CV 10240, 2007 U.S. Dist. LEXIS 57918 (S.D.N.Y. July 27, 2007)).

The Court should conclude the Settlement is procedurally fair, and therefore satisfies the third *Grinnell* factor, listed below.

## III. THE SETTLEMENT IS SUBSTANTIVELY FAIR, REASONABLE AND ADEQUATE AND IN THE BEST INTEREST OF THE CLASS

As explained in Plaintiffs' motion to preliminary approval, and in the Court's *Report and Recommendation* endorsing that motion, substantive fairness is determined by compliance with Rule 23(e). In this Circuit, compliance with Rule 23(e) is generally determined by evaluating a class action settlement under the criteria set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974) (the "*Grinnell* factors"). The *Grinnell* factors are:

> (1) [T]he complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation[.]

*Id.* at 463.

Except for "the reaction to the class to the settlement," which could not be analyzed until after notice was disseminated and the deadline for objections and opt-outs had passed, the Court considered and preliminarily determined that the Settlement complied with each of the *Grinnell* factors. Dkt. 51 at 9-15, 19-21. Notice has now been given and the reaction of the Settlement Class has been overwhelmingly positive, as discussed immediately below. The remaining *Grinnell* factors, previously evaluated by the Court, are also summarized below.

### A. THE REACTION OF THE CLASS HAS BEEN OVERWHELMINGLY POSITIVE

The deadline for Settlement Class Members to opt-out or object (February 21, 2022) has now passed. Only 11 Settlement Class members requested exclusion, and there were no objections.

Santiago Decl. ¶¶ 9, 10 and Santiago Ex. C (listing names and addresses of excluded Settlement Class members); [Proposed] *Final Order and Judgment*, Ex. 1 (same).[6]

The extremely positive reaction by the Settlement Class, following an extensive Notice Program, strongly supports the Settlement is fair, reasonable and adequate. *See Rosario v. Valentine Ave., Disc. Store, Co.,* No. 10-cv-5255(ERK)(LB), 2016 U.S. Dist. LEXIS 28266, at *16 (Mar. 3, 2016) (Bloom, M.J.) (finally approving settlement when none of class members objected or requested exclusion) (citing *Sakiko Fujiwara v. Sushi Yasuda Ltd.*, 58 F. Supp. 3d 424, 433 (S.D.N.Y. 2014) ("The fact that the vast majority of class members neither objected nor opted out is a strong indication that the proposed settlement is fair, reasonable, and adequate.")); *Kochilas*, 2015 U.S. LEXIS 135553 at *13-14 (Bloom, M.J.) (same; citing *Wright v. Stern*, 553 F. Supp. 2d 337, 344-45 (S.D.N.Y. 2008) (approving settlement where 13 out of 3,500 class members objected and 3 opted out) and *Willix v. Healthfirst, Inc.*, No. 07-cv-1143, 2011 U.S. Dist. LEXIS 21102 (E.D.N.Y. Feb. 18, 2011) (approving settlement where only 7 of 2,025 class member submitted timely objections and only 2 requested exclusion)); *accord Wal-Mart Stores*, 396 F.3d at 118 ("'If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement.'") (quoting Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* (4th ed. 2002), §11.41, at 108); *In re Metlife Demutualization Litig.*, 689 F. Supp. 2d 297, 333 (E.D.N.Y. 2010) (low numbers of objections and opt-outs endorse approval).

---

[6] Two Settlement Class Members, Shahed Alapour (formerly Shahed Ashijari) and Nirvana Sayers, sent letters to the Court. Settlement Class Counsel spoke with Ms. Alapour concerning her letter (Dkt. 64), whereupon she clarified that she wanted to be excluded from the Settlement. The Parties have honored that request and she is included among the opt-outs listed in the [Proposed] *Final Order and Judgment*. Ms. Sayers is the executrix for her father's estate and submitted a letter (Dkt. 63) indicating a willingness to attend the Final Approval Hearing by telephone but did not articulate any objection. Settlement Class Counsel thereafter spoke with Ms. Sayers and seemingly resolved her questions.

## B. SATISFACTION OF THE OTHER *GRINNELL* FACTORS REMAINS TRUE

### 1. Plaintiffs and Settlement Class Counsel Zealously Represented the Settlement Class (FED. R. CIV. P. 23(e)(2)(A))

The adequate representation of the Settlement Class by Plaintiffs and Settlement Class Counsel is a required consideration in determining whether to approve a class settlement. FED. R. CIV. P. 23(a)(4) and 23(e)(2)(A). In granting preliminary approval of the Settlement, the Court found that Rachel and Ariel Cymbalista and their counsel have adequately represented the Settlement Class. Dkt. 51 at 11-12 ("Here, both the class representatives and class counsel adequately represent the class."). That was true then and has remained true since. *See* Dkt. 59 (Joint Decl.) at ¶¶ 6-20.

Plaintiffs and Settlement Class Counsel worked for months to investigate their individual and classwide claims and to prepare the case for filing. After the case was filed, Plaintiffs and their counsel opposed Chase's dismissal motion and efforts to stay discovery. They continued their zealous representation during months of Settlement negotiations and mediation. After the Parties' reached an agreement in principle, Settlement Class Counsel negotiated the terms of the Settlement Agreement, and the forms of notice and other exhibits, before endorsing it as fair, reasonable and adequate to resolve the Settlement Class's claims. *See* Dkt. 50-2 (Tusa Decl.) at ¶¶ 6-14; Dkt. 59 (Joint Decl.) at ¶¶ 10-20.

### 2. The Settlement Represents a Strong Result for the Settlement Class, Particularly Given the Substantial Risk and Challenges They Face (FED. R. CIV. P. 23(e)(2)(C); Grinnell Factors 1 & 4-9)

The Settlement provides a non-reversionary $11.5 million Cash Settlement Amount by Chase representing approximately 53% of the Settlement Classes' IOE damages through December 31, 2020. When combined with Chase's obligation (assuming no contrary appellate court decisions) to pay 100% of the IOE owed to Settlement Class members prospectively for three years, the financial value of the Settlement is estimated at approximately $18.75 million, recovering an

estimated 65% of the Settlement Class's IOE damages through December 2024. Under any metric, the Settlement provides a very strong recovery for the Settlement Class, especially considering the risks of continued litigation. This Court agreed in granting preliminary settlement approval:

> Plaintiffs assert that the $11.5 million cash settlement in this case is "approximately 53% of the Settlement Classes' (sic) damages." Mem. of Law 2. When combined with the future interest payments the settlement agreement requires defendant Chase to make, the value of the settlement increases to approximately $18.75 million, or approximately 65% of the class' potential damages. *Id.* This is a substantial recovery given that courts in this Circuit have approved class action settlements with settlement awards representing far smaller percentages of the total possible damages. *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d at 697 (approving a settlement award which was only 13% to 17% of the possible recovery). Therefore, given the inherent risks and duration of litigation, the certainty of a substantial and speedy recovery in this case weighs in favor of settlement approval. *See Mikhlin*, 2021 U.S. Dist. LEXIS 66719, 2021 WL 1259559, at *5 (quoting *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 459 (S.D.N.Y. 2004)); *Christine Asia Co. Ltd. v. Yun Ma*, No. 15-MD-2631(CMA)(SDA), 2019 U.S. Dist. LEXIS 179836, 2019 WL 5257534, at *11 (S.D.N.Y. Oct. 16, 2019).
>
> As plaintiffs point out, the proposed settlement also avoids the risk that plaintiffs' claims could be dismissed were their causes of action found to be pre-empted by federal banking law. Mem. Of Law. 2 (citing *Hymes v. Bank of Am., N.A.*, 408 F. Supp. 3d 171 (E.D.N.Y. 2019)). That issue is currently pending before the Second Circuit. *Id.* Prior to settlement in this matter, defendant Chase moved to dismiss the complaint and argued that the National Bank Act preempted plaintiffs' claims. ECF No. 25. The parties fully briefed the issue, ECF Nos. 24-26, 31, 38, before the Court denied Chase's motion to dismiss without prejudice in light of the parties' progress toward settlement, *see* Electronic Order dated Dec. 23, 2020. The proposed settlement obviates plaintiffs' risk of an adverse ruling by the Circuit and of the delay inherent in dispositive motion practice. *See Mikhlin*, 2021 U.S. Dist. LEXIS 66719, 2021 WL 1259559, at *5 (discussing the burden the plaintiffs would face were the parties to engage in dispositive motion practice). The costs, risks, and duration of litigation in this case all could be substantial. This further supports approval of the parties' proposed settlement.

Dkt. 51 at 12-14; *see also Maley v. Del. Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 364 (S.D.N.Y. 2002) ("In assessing the Settlement, the Court should balance the benefits afforded to members of the Class and the immediacy and certainty of a substantial recovery for them against the continuing risks of litigation.").

In addition to preemption arguments presented in the *Hymes* appeal—which, alone, could

have resulted in the Settlement Class here getting nothing—Chase raised a number of other defenses in its motion to dismiss, which was pending when the parties reached the Settlement. Plaintiffs also expect that Chase would argue, as they did in the Ninth Circuit, that loans in the Settlement Class that are or were serviced by Chase, but originated by a federal savings association that was subject to the Home Owners Loan Act and legacy regulations issued by the Office of Thrift Supervision, are preempted under those federal laws and regulations. *See McShannock v. JPMorgan Chase Bank, N.A.*, 976 F.3d 881 (9th Cir. 2020). While Plaintiffs believe they would have prevailed in defeating Chase's dismissal motion, obtained certification of the class, defeated any summary judgment motions and prevailed at trial and appeal, those results are far from assured. *Weil v. Long Island Sav. Bank*, FSB, 188 F. Supp. 2d 164, 264 (E.D.N.Y. 2001) ("It is axiomatic that anything can happen at trial.").

Given the strength of the recovery and litigation risks, the Settlement readily satisfies Rule 23(e)(2)(C) and *Grinnell* factors 1 and 4-9.

### C. THE ADDITIONAL RULE 23(E) FACTORS SUPPORT FINAL APPROVAL

The Settlement benefits will be distributed pursuant to a fair and equitable allocation plan. FED. R. CIV. P. 23(e)(2)(D). All Settlement Class Members who did not opt-out of the Settlement will be sent a settlement check, and the Settlement payments will be based on the unpaid IOE each of them is allegedly owed for the Settlement Class Periods. Specifically, each loan in the Settlement Class will receive: (a) a minimum payment of $5.00; plus (b) a portion of the remaining settlement payment funds—*i.e.*, most of the funds (the Net Cash Settlement Amount minus the minimum payments)—which will be allocated among the loans in the Settlement Class (on top of the minimum payment) in amounts directly proportionate to the alleged unpaid IOE for each loan. Settlement Agreement ¶98. The individual settlement payments will be calculated by the Calculation Advisor based on loan data compiled and provided by Chase from its loan servicing platform. *Id.* ¶¶ 93-98. This allocation plan ensures that the most compensation will be provided to Settlement Class

Members who incurred the most alleged harm. To the extent residual funds remain in the settlement fund one year after the checks are first mailed to Settlement Class Members—*i.e.*, due to checks that are uncashed or that are returned undeliverable and where the Administrator is not able to identify an updated address—such residual amounts will be will be distributed to the Settlement Class as part of a second distribution if economically feasible, or alternatively (if a secondary distribution is not economically feasible) will be distributed *cy pres* to four charitable organizations that assist mortgage borrowers. *Id.* ¶105.[7] No funds will revert to Chase.

The proposed method of distributing the Settlement benefits is fair and reasonable. FED. R. CIV. P. 23(e)(2)(C)(ii) (court must consider "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims"). There is no claims process in this Settlement and all Settlement Class Members who did not opt-out will automatically be mailed a check containing their Settlement payment.

This Court previously reviewed the distribution plan in the Settlement and concluded: "This method of calculating each class member's award is fair and reasonable." Dkt. 51 at 15 (citing *In re LIBOR-Based Fin. Instrument Antitrust Litig*, 327 F.R.D. 483, 496 (S.D.N.Y. 2018). Notably, substantially the same distribution plan was used in the *Lusnak* IOE class action settlement, which received final approval from the district court.

Finally, there are no agreements between the Parties other than the Settlement. FED. R. CIV. P. 23(e)(3) ("the parties seeking approval must file a statement identifying any agreement made in connection with the proposal").

[7] The Parties agreed to 4 charitable organizations as potential *cy pres* recipients and identified them on the settlement website. Those organizations comprise: 1) Center for NYC Neighborhoods; 2) Legal Services Corporation; 3) National Housing Resource Center; and 4) Association for Neighborhood & Housing Development.

## IV. THE COURT SHOULD CONFIRM CERTIFICATION OF THE SETTLEMENT CLASS, THE APPOINTMENT OF PLAINTIFFS AS THE CLASS REPRESENTATIVES AND THE APPOINTMENT OF CLASS COUNSEL

Pursuant to the Settlement Agreement, the preliminary approval motion requested provisional certification of the Settlement Class for settlement purposes. Settlement Agreement ¶40. "When a court has not yet entered a formal order determining that the action may be maintained as a class action, the parties may stipulate that it be maintained as a class action for the purpose of settlement only." Newberg, §11.27. The federal courts also approve of the use of settlement classes. *See e.g., Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 619-20 (1997) (approving use of settlement classes).

The Court previously considered the proposed Settlement Class and conditionally certified it as complying with Rule 23(a)(1)-(4) and (b)(3), appointed Plaintiffs as the Settlement Class Representatives and appointed their counsel as Settlement Class Counsel. Dkt. 51 at 21-29; *see also* Dkt. 50-1 (*Plaintiffs' Memorandum of Law in Support of Preliminary Approval*) at 19-25 (discussing class certification standards and compliance). No party or non-party has since objected to class certification or the appointments of the class representatives or Settlement Class Counsel. The Court should confirm its class certification rulings in the *Final Order and Judgment.*

A class will be certified where the four requirements of Federal Rule 23(a) are satisfied – numerosity, commonality, typicality and adequacy of representation – plus the requirements of any one of the sub-sections of Federal Rule 23(b). *See* FED. R. CIV. P. 23. Plaintiffs seek certification of the Settlement Class under Rule 23(b)(3). The Rule 23 certification requirements "should be 'given liberal rather than restrictive construction....'" *In re Cablevision Consumer Litig.*, No. 10-cv-4992 JS AKT, 2014 U.S. Dist. LEXIS 44983, at *14 (E.D.N.Y. Mar. 31, 2014) (quoting *Marisol A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir. 1997)).

### A. THE NUMEROSITY REQUIREMENT IS SATISFIED

KCC reports that there are 293,419 members of the Settlement Class based on records provided by Chase. Santiago Decl. ¶2. Numerosity is presumed with 40 or more class members. *Consolidated Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995).

### B. THE COMMONALITY REQUIREMENT IS SATISFIED

FED. R. CIV. P. 23(a)(2) requires only that there be one or more questions of law or fact common between the claims of the Plaintiffs and the class. "Commonality is satisfied where a single issue of law or fact is common to the class." *In re Cablevision Consumer Litig.*, 2014 U.S. Dist. LEXIS 44983, at *15 (emphasis in original) (citing *Wal–Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2556 (2011)). Commonality is a "minimal burden for a party to shoulder." *Kindle v. Dejana*, 315 F.R.D. 7, 11 (E.D.N.Y. 2016) (citation and quotation marks omitted).

Here, whether all Plaintiffs and Settlement Class members possess claims based on Chase's failure to pay IOE in the six Class States is just such a common question. Dkt. 51 at 22-23 (the "commonality requirement is satisfied in this case because the class members' claims rest on the same question: whether defendant owes them unpaid interest on their escrow accounts.").

### C. PLAINTIFFS' CLAIMS ARE TYPICAL OF THE SETTLEMENT CLASS

Rule 23(a)(3) requires that the "claims or defenses of the representative parties [be] typical of the claims or defenses of the class." FED. R. CIV. P. 23(a)(3). Typicality is satisfied "when each class member's claim arises from the same course of events and each Class member makes similar legal arguments to prove the defendant's liability." *Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 252 (2d Cir. 2011) (citations omitted); *see also Robidoux v. Celani,*, 987 F.2d 931, 937 (2d. Cir. 1993) (the typicality requirement is usually met "[w]hen it is alleged that the same unlawful conduct was directed at or affected both the named plaintiffs and the class sought to be represented….").

Like commonality, which is closely linked to typicality, Plaintiffs' and the Settlement Class's claims all arise from the same course of Chase conduct resulting in the same legal claims. "Therefore, the typicality requirement is satisfied." Dkt. 51 at 23.

### D. PLAINTIFFS AND SETTLEMENT CLASS COUNSEL WILL FAIRLY AND ADEQUATELY REPRESENT THE SETTLEMENT CLASS

Federal Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This requirement is satisfied when the class representatives' attorneys are qualified and the class representatives have no interests conflicting with the class. *Sosna v. Iowa*, 419 U.S. 393, 403 (1975). The Court previously found that Plaintiffs and Class Counsel have and will adequately represent the Settlement Class. *See also* Dkt. 51 at 24 ("The class will be adequately represented in this matter. As previously discussed, proposed class counsel has extensive experience in class action litigation and are highly capable of handling the instant matter. *See* Dkt. 50-2 (Tusa Decl.) at ¶16; Dkt. 50-6 (Heller Decl.) at ¶5; Dkt. 50-5 (Giskan Decl.) at ¶3. The proposed class representatives, Rachel and Ariel Cymbalista, assert claims which are substantially similar to those of other class members and plaintiffs can be expected to vigorously prosecute the case.").

### E. THE SETTLEMENT CLASS SATISFIES RULE 23(B)(3) PREDOMINANCE

To certify a Federal Rule 23(b)(3) class, common issues of law or fact should predominate over individual issues. *See Amchem*, 521 U.S. at 615; *In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 118 (2d Cir. 2013) (predominance satisfied if common issues "are more substantial the issues subject to only individualized proof."). Predominance is a test "readily met" in consumer class actions. *Amchem*, 521 U.S. at 624. The predominant issue in this case is the Settlement Class's claims that the States' IOE Statutes require payment of IOE. This Court's *Report and Recommendation* concluded that "the predominance prong of Rule 23(b)(3) will likely be met." Dkt. 51 at 26-29 ("Here, plaintiffs' overarching claim is Chase's failure to pay interest on certain escrow accounts

[based on the laws of the six State IOE Statutes]. … I find that the issues of law or fact under one state's statute do not predominate over the other issues in this case because the language of each statute is 'effectively the same.'") (citation omitted).

Chase's preemption defense is another predominant, classwide issue satisfying 23(b)(3). *See Tyson Foods*, 136 S. Ct. at 1047 (defense applicable classwide can be a predominate issue); *In re US Food Service Pricing Litig.*, 729 F.3d at 119 (same).

**F. THE SETTLEMENT CLASS SATISFIES RULE 23(B)(3) SUPERIORITY**

'When the number of class members is large and geographically diverse, the efficiency of a class action in resolving common questions outweighs the interests of any one class member in bringing a separate case." Dkt. 51 at 29 (finding superiority satisfied). That is especially true when, as here, a settlement class is considered because "a district court need not inquire whether the case, if tried, would present intractable management problems." *Amchem*, 521 U.S. at 620.

**G. THE SETTLEMENT CLASS IS ASCERTAINABLE**

While not among the Rule 23 requirements, a class should also be objectively ascertainable. This is only a "modest threshold" for certification. *In re Petrobras Sec. Litig.,* 862 F.3d 250, 269 (2d Cir. 2017). Ascertainability presents no difficulties in this case. Chase's records were able to identify the members of the Settlement Class, whose identities were provided to KCC. Santiago Decl. at ¶2; *see also* Dkt. 51 at 25 (This Court concluding that the Settlement Class is "sufficiently ascertainable.").

**CONCLUSION**

For all the reasons stated above, Plaintiffs respectfully request that the Court grant final approval to the proposed Agreement; confirm the certification of the Settlement Class; confirm the appointment of Plaintiffs as the representatives for the Settlement Class and their counsel as Settlement Class Counsel; confirm that the completed Notice Plan satisfied Rule 23 and due process; direct the parties, Administrator and the Calculation Advisor to implement the Agreement according

to its terms, including distributing settlement payments to the Settlement Class Members and other disbursements from the Cash Settlement Amount as provided by the Agreement, and Chase's payment of the prospective escrow interest payments in accordance with the Agreement; and enter the proposed *Final Order and Judgment* annexed as **Exhibit A** to the Notice of Motion or such other final order and judgment adjudicating those same results.

DATED: March 7, 2022

Respectfully submitted,

**TUSA P.C.**

By: /s/ Joseph S. Tusa
Joseph S. Tusa
joseph.tusapc@gmail.com
55000 Main Road
P.O. Box 566
Southold, NY 11971
Tel. (631) 407-5100

**GISKAN SOLOTAROFF & ANDERSON LLP**

By: /s/ Oren Giskan
Oren Giskan
ogiskan@gslawny.com
Michael Jaffe, Of Counsel
90 Broad Street, 2d Floor
New York, New York 10004
Tel. (646) 964-9644

**LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP**
Roger Heller (*pro hac vice*)
rheller@lchb.com
275 Battery Street, 29th Fl.
San Francisco, CA 94111-3339
Tel. (415) 956-1000

- and -

Avery S. Halfon
ahalfon@lchb.com
250 Hudson Street, 8th Fl.
New York, NY 10013-1413
Tel. (212) 355-9500

***Attorneys for Plaintiffs***
***Settlement Class Counsel***